**No. 26-2085**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A VYNE DENTAL,

*Plaintiff-Appellant*,

v.

HENRY SCHEIN ONE, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court for the
District of Maryland
No. 1:25-cv-03246-MJM
Hon. Matthew James Maddox

---

**PLAINTIFF-APPELLANT'S MOTION FOR STAY PENDING APPEAL**

---

K. Nichole Nesbitt
Derek M. Stikeleather
GOODELL DEVRIES LEECH
& DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
410-783-4000
dstikeleather@gdldlaw.com
knn@gdldlaw.com

Vincent Levy
*Counsel of Record*
Jack L. Millman
Daniel Fahrenthold
Jessica Marder-Spiro
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Ave, 14th Floor
New York, New York
646-837-5151
vlevy@hsgllp.com

*COUNSEL FOR PLAINTIFF-APPELLANT*

**NATIONAL ELECTRONIC ATTACHMENT, INC.'S**
**CORPORATE DISCLOSURE STATEMENT**

I, the undersigned counsel of record for National Electronic Attachment, Inc., certify to the best of my knowledge and belief, the following:

National Electronic Attachment, Inc. is incorporated under the laws of Delaware and is wholly owned by TJC LP, a privately held limited partnership.

Dated: New York, New York
September 14, 2026

HOLWELL SHUSTER &
GOLDBERG LLP

By: /s/ *Vincent Levy*

Vincent Levy

425 Lexington Ave., 14th Floor
New York, New York 10017
T: 646-837-5151
E: vlevy@hsgllp.com

*Counsel for Plaintiff-Appellant National Electronic Attachment, Inc., d/b/a Vyne Dental*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 5

I. Factual Background ..... 5

II. Procedural Background ..... 6

ARGUMENT ..... 9

I. There Is At Least A Substantial Case on the Merits of Vyne's Appeal ..... 9

A. Vyne Trellis did not "access" HSOne's servers ..... 10

B. Designing and selling software is not "accessing" a computer ..... 13

C. Any access to the HSOne Cloud did not cause HSOne "damage" ..... 16

II. Absent a Stay, Vyne Will Suffer Substantial Harm ..... 17

III. A Stay Pending Appeal Will Not Cause Substantial Harm to HSOne ..... 19

IV. The Public Interest Favors a Stay ..... 20

V. The Court should also immediately grant an administrative stay. ..... 20

VI. Alternatively, the Court should expedite the appeal. ..... 21

CONCLUSION ..... 21

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*,
184 F.4th 1083 (9th Cir. 2026) ........................................................ *passim*

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)........................................................................14

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ...........................................................10

*In re Microsoft Corp. Antitrust Litig.*,
333 F.3d 517 (4th Cir. 2003) ............................................................17

*In re Revel AC, Inc.*,
802 F.3d 558, (3d Cir. 2015) ..............................................................9

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) ................................................................20

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ............................................................9

*MicroStrategy Inc. v. Motorola, Inc.*,
245 F.3d 335 (4th Cir. 2001) ............................................................18

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
22 F.3d 546 (4th Cir. 1994) ..............................................................19

*Nken v. Holder*,
556 U.S. 418 (2009)..........................................................................9

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 954 (N.D. Cal. 2014)................................................16

*NRA Grp., LLC v. Durenleau*,
154 F.4th 153 (3d Cir. 2025) .............................................................13

*Par Pharms., Inc. v. TWI Pharms., Inc.*,
2014 WL 3956024 (D. Md. Aug. 12, 2014)..........................................9

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
131 F.4th 205 (4th Cir. 2025) .......... 18, 19

*Salomon & Ludwin, LLC v. Winters*,
150 F.4th 268 (4th Cir. 2025) .......... 18

*Spirits v. Ragghianti*,
2024 WL 3177773 (3d Cir. June 26, 2024) .......... 16

*United States v. South Carolina*,
720 F.3d 518 (4th Cir. 2013) .......... 17

*United States v. Lanier*,
520 U.S. 259 (1997) .......... 12

*United States v. Texas*,
144 S. Ct. 797 (2024) .......... 20

*United States v. Valle*,
807 F.3d 508 (2d Cir. 2015) .......... 2, 10

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 10, 12, 13

*WEC Carolina Energy Sols. LLC v. Miller*,
687 F.3d 199 (4th Cir. 2012) .......... 13

**Statutes**

18 U.S.C. § 1030 .......... 2, 10, 16

**Rules**

85 Fed. Reg. 25642 .......... 20

Fed. R. Civ. P. 65 .......... 8

## INTRODUCTION

This is a motion for the stay of a preliminary injunction pending appeal—and for an administrative stay of that injunction while the Court considers this motion. Because the injunction will go into effect as soon as September 24, 2026, Appellant respectfully requests relief before then. That is what the Ninth Circuit recently did in a case appealing a preliminary injunction raising essentially the same issues. And the Ninth Circuit ultimately rejected the same theory on which this injunction rests.

Appellant Vyne Dental sells software known as “Vyne Trellis” to third-party dental practices to help them communicate with patients and get paid, including by sending appointment reminders, billing patients, submitting claims to insurers, and tracking payments. Appellee HSOne sells software known as “Dentrix” to dental practices so they can store patients’ health information on the dentist’s computer; HSOne also sells software that competes directly with Vyne Trellis. After HSOne tried to steal Vyne’s customers by leveraging its software’s control over patient information to prevent Vyne Trellis from interoperating with Dentrix, Vyne sued HSOne. HSOne counterclaimed, arguing that certain Vyne Trellis functions that interoperate with Dentrix (also known as “VyneSync”) violate the Computer Fraud and Abuse Act (“CFAA”). In an unprecedented opinion, the district court agreed with HSOne and preliminarily enjoined Vyne from selling, distributing, or marketing software that writes data to Dentrix databases on dentists’ computers.

The relevant portion of the CFAA, which is a criminal statute, does not address the design or distribution of software, but rather prohibits hacking. It proscribes "intentionally access[ing] a protected computer without authorization, and[,] as a result of such conduct, caus[ing] damage and loss." 18 U.S.C. § 1030(a)(5)(C). This requires something akin to "breaking and entering." *United States v. Valle*, 807 F.3d 508, 525 (2d Cir. 2015).[1] Here, of course, dentists voluntarily license Vyne Trellis from Vyne to access data on their own computers.

Yet, the district court granted HSOne a preliminary injunction on the basis that Vyne likely "accessed" a "protected computer"—in this case, not the dentists' computers on which dentists operate Vyne Trellis, but rather HSOne's computer servers—due to the following attenuated chain of events: (1) Vyne sold Vyne Trellis to dental practices; (2) those practices installed and used Vyne Trellis locally; (3) some dentists used Vyne Trellis' VyneSync functions to write data on Dentrix software stored on their own computers (e.g., logging payments received via Vyne Trellis to their financial ledger that is stored locally on their Dentrix software); and (4) HSOne chose to have its "local installations sync with HSOne's servers through its cloud infrastructure." Dkt. 216 at 2 ("Stay-Op."); Dkt. 189 at 77–82 ("PI-Op.").

---

[1] Unless otherwise noted, all internal quotation marks, citations, and alterations have been omitted from quotations.

The Court should stay that injunction. Vyne is likely to succeed on its appeal because the district court's expansive and novel interpretation of the CFAA cannot be squared with text or caselaw. Indeed, the parties identified no case where a court enjoined the selling of software under the CFAA (let alone a post-*Van Buren* case), except a district-court decision that the Ninth Circuit reversed just weeks ago. *Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026).

If this Court affirmed the injunction here, it would create a conflict with the Ninth Circuit in *Perplexity*. That case concerns an AI tool (the "Assistant"), which third-party customers use to access data stored on Amazon's servers through Amazon's website via their "password-protected accounts." *Id.* at 1087. Amazon alleged that Perplexity violated the CFAA because Amazon did not authorize the access, and because the Assistant, which "run[s] locally on a user's machine," obtained information from Amazon's servers and "transmitted [it] to Perplexity's servers" at Perplexity's direction. *Id.* at 1087, 1089. The district court agreed, but the Ninth Circuit stayed and later reversed, holding that even though Perplexity "may communicate instructions to the Assistant," Perplexity did not "access" Amazon's servers, because "[i]t is the user who 'accesses' Amazon's computers, with the help of the Assistant." *Id.* at 1091. There is no meaningful distinction between *Perplexity* and this case; instead, the conduct here is more attenuated, as customers use Vyne Trellis to access databases stored on their own computers.

The other *Nken* stay factors also favor Vyne. The injunction requires Vyne to stop selling a core offering that it has sold for years. Absent a stay, Vyne will suffer irreparable harm to its customer base and reputation, including because it stands to irretrievably lose many of its customers to a competitor (likely HSOne). By contrast, a limited stay pending appeal will maintain the status quo that has existed for over five years (Vyne Trellis having patient-engagement or ledger write-back services), a status quo that has not resulted in any "major data security breach." PI-Op. 85.

In sum, this Court should stay the injunction pending appeal. In the interim, it should also immediately and administratively stay the injunction as it considers Vyne's motion, just as the court below did to consider Vyne's stay motion addressed to that court, and just as happened in *Perplexity*, 184 F.4th at 1088. The district court here took nine months to rule on HSOne's preliminary injunction without there being any TRO in effect, and, in denying the stay pending appeal, it acknowledged that no on-point case existed (erroneously distinguishing *Perplexity*), and that applying the CFAA "to Vyne's conduct might raise an admittedly difficult legal question." Stay-Op. 5. This Court should also have time to consider the merits of Vyne's strong appeal without an injunction in effect, particularly given the conflict between the decision below and *Perplexity*, as well as the equities.

## BACKGROUND

### I. Factual Background

As discussed in more detail in the district court's opinion—whose factual findings this motion presumes accurate—Vyne designs and distributes a suite of software solutions to help dental practices run their businesses. PI-Op. 3. Its primary product is "Vyne Trellis," a software program that, among other things, helps dentists submit claims to insurers and provides related services. *Id*. at 74.

HSOne designs and distributes software known as Dentrix that stores patients' electronic health information and other information (like the practice's financial ledger) on dentists' computers and allows dentists to perform other functions (like payment and patient engagement) including in competition with Vyne. PI-Op. 3, 81. To perform updates, HSOne employs cloud-based software stored on HSOne servers (the "HSOne Cloud") that communicates with customers' local installations. *Id*. at 77. HSOne initiates any such data exchanges. *Id*. at 80.

Given that dental practices store practice and patient data electronically in software systems such as Dentrix, Vyne has incorporated various interoperability features in Vyne Trellis, which have allowed practices to use their patient and practice data for decades. As relevant here, Vyne has incorporated software known as "VyneSync" into Vyne Trellis since 2021 to permit customers "to read data from the [Dentrix] database and write or alter data in the [Dentrix] database" stored on

their own computers (the "Dentrix Databases"). PI-Op. 80. As of the time of the injunction hearing, roughly 20%, or 1,400, of Vyne's customers who use Dentrix use this feature. Dkt. 132 at 186:16–25; Dkt. 134 at 276:19–21; 310:16–25. Those customers can, for example, (1) automatically record the receipt of payment obtained via Vyne Trellis' insurance-payment system on their own financial ledger (stored via Dentrix on their computers), and (2) automate schedules, appointment reminders, and payment reminders. Dkt. 132 at 82:17–85:13, 174:14–175:9.

Before March 2025, dental practices that were mutual customers of Vyne and HSOne used both products without incident. Roberts Decl. ¶¶ 6–7, 10–13, Dkt. 6-2. And "[t]here is no evidence that Vyne suffered or caused any data security breach during the relevant period, and HSOne was not aware of any such breach." PI-Op. 75. In March 2025, however, HSOne informed dental practices that it would update Dentrix to break interoperability with Vyne Trellis. *See* PI-Op. 5. HSOne did so at the same time as it launched a campaign to steal Vyne's customers, which the district court found likely constituted the tort of unfair competition. *Id.* at 73–77.

## II. Procedural Background

Vyne sued HSOne in September 2025 and moved for a preliminary injunction. Dkts. 1, 6. HSOne then counterclaimed and moved for a preliminary injunction itself, alleging, among other things, that Vyne Trellis' accessing Dentrix Databases on dentists' computers through VyneSync violated the CFAA. Dkts. 45, 46.

Over three months later, in February 2026, the district court held an evidentiary hearing on the parties' preliminary-injunction motions. Dkts. 125–127. More than five months after that, on July 31, 2026, the court issued an opinion and order that, as relevant here, found that "HSOne has made a clear showing it is likely to succeed on the merits of its CFAA counterclaim against Vyne." PI-Op. 77.[2] This decision was based on a number of conclusions, including:

a. The HSOne Cloud is a "protected computer under the CFAA." *Id*.

b. Vyne, "intentionally" and "without authorization," "accessed" the HSOne Cloud "when it caused its software to connect and integrate with the Dentrix [D]atabases installed on the computers of the parties' shared customers and those local installations synchronized with HSOne's cloud infrastructure." *Id*. at 78–80.

c. Vyne's "access" consisted of VyneSync software operating "in the Dentrix [D]atabase . . . to write or alter the data in the database" locally, *id*. at 80, but there was no finding that this altered data was shared back to the cloud.

d. Vyne's "access" "caused damage[]" by "disrupt[ing] referential integrity within the database, caus[ing] database performance issues, and

[2] As noted, the Court also enjoined HSOne for unfairly competing with Vyne "by blocking the parties' mutual customers' ability to use Vyne's software while, at the same time, promoting HSOne's own competing product." PI-Op. 73–74.

> interfer[ing] with HSOne's ability to disseminate upgrades to Dentrix software through its cloud infrastructure." *Id*. at 83.

Based on these findings, the court "enjoined [Vyne] from marketing software capable of write access to Dentrix [D]atabases stored or hosted on HSOne's cloud system and Dentrix [D]atabases that sync to HSOne's cloud infrastructure," *id*. at 94, and gave Vyne 45 days to comply, *id*. at 92.

Notably, the court failed to determine what security HSOne needed to post, *contra* Fed. R. Civ. P. 65(c), and instead set a bond hearing for September 16, Dkt. 195, which it later rescheduled to September 24, Dkt. 216.

A week after the order, Vyne timely appealed. Dkt. 191. Vyne also moved to stay the injunction pending appeal. Dkt. 193. The district court immediately entered an administrative stay while it considered Vyne's motion and expedited the time for HSOne to oppose the stay. Dkt. 197.

On September 8, the district court stayed the injunction until it determined a bond amount (and entered an administrative stay through September 24, 2026), but otherwise denied relief, despite acknowledging that (*Perplexity* aside) no "prior court decision … is on all-fours" and that "application of [the CFAA] to Vyne's conduct might raise an admittedly difficult legal question." Stay-Op. 5, 7.

## ARGUMENT

In deciding whether to stay an injunction pending appeal, courts consider: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits;" (2) "whether the applicant will be irreparably injured absent a stay;" (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding;" and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors . . . are the most critical." *Id.*

"The standard does not require the petitioners to show that it is more likely than not that they will win on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012); *In re Revel AC, Inc.*, 802 F.3d 558, 568–69 (3d Cir. 2015) (same); *Par Pharms., Inc. v. TWI Pharms., Inc.*, 2014 WL 3956024, at *2 (D. Md. Aug. 12, 2014) (movant need not demonstrate "a mathematical probability of success"). Rather, there must be a "substantial case for relief on the merits." *Lair*, 697 F.3d at 1204; *see also Par Pharms.*, 2014 WL 3956024, at *2 (same).

### I. There Is At Least A Substantial Case on the Merits of Vyne's Appeal

The finding of a likely CFAA violation here relates to HSOne's "cloud-based software system used to communicate and sync with its customers' local installations of Dentrix." PI-Op. 77. Specifically, the court held that, by licensing software with features that allow dental practices to access data stored on their own computers, "Vyne accessed the Dentrix cloud system controlled by HSOne 'without

authorization,'" and it "'caused damage and loss'" within the meaning of the CFAA, *id.* at 78, 82 (quoting 18 U.S.C. § 1030(a)(5)(C)); *see also* Stay-Op. 3.

This reflects at least three legal errors: *First*, that accessing a database stored locally on a computer can become unauthorized (criminal) access to a different computer owned by another company that chooses to sync data to or from that computer to a cloud server. *Second*, that a software publisher commits unauthorized (criminal) access to a computer when its customers use software it licenses. *Third*, that "damage" caused on a computer equates to damage to the cloud server.

### A. Vyne Trellis did not "access" HSOne's servers

Section 1030(a)(5)(C) criminalizes "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." "Access" has a "technical meaning," and refers to "the act of *entering a computer system itself* or a particular part of a computer system." *Van Buren v. United States*, 593 U.S. 374, 388 & nn.6 & 7 (2021). This "access" is akin to "forced entry" or "breaking and entering." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022); *accord Valle*, 807 F.3d at 525.

Here, the district court clearly erred in concluding that Vyne "accessed" the HSOne Cloud in violation of the CFAA, given that even Vyne's software, Vyne Trellis, never accessed it. No evidence showed, and the district court did not find, that Vyne Trellis (through VyneSync or otherwise) ever put data directly into the

HSOne Cloud, obtained data from the HSOne cloud, or otherwise "entered" the HSOne Cloud itself. Instead, the district court ruled that "Vyne accessed [the HSOne Cloud] when it caused its software to connect and integrate with the Dentrix [D]atabases installed on the computers of the parties' shared customers and those local installations synchronized with HSOne's cloud infrastructure." PI-Op. 78–79. The court so held even though it found that HSOne—not Vyne—"transmit[s] and synchronize[s] data between Dentrix [D]atabases stored on customers' computers and databases stored in HSOne's cloud system." PI-Op. 80. Moreover, although such a finding would not have cured the district court's error, the court made no finding about what data written by Vyne Trellis (if any) was even communicated between practices' computers and the HSOne Cloud.[3]

*Perplexity* confirms the district court's error. There, the Ninth Circuit agreed with Perplexity that it "never 'gain[ed] entry' to an Amazon computer because no Perplexity computer ever accessed Amazon's servers" and "any Amazon data was first transmitted to the user's computer and then to Perplexity's servers." *Perplexity*, 184 F.4th at 1089–91. There was no "'access' [to] Amazon's computers," the Ninth Circuit held, although Perplexity's Assistant obtained data stored only on Amazon's

[3] This lack of finding conformed to HSOne's counsel concession that the HSOne Cloud does not maintain copies of data stored locally. Dkt. 163 at 79:16–19.

servers, and although "Perplexity may receive screenshots of the user's browser and may communicate instructions to the Assistant" on customers' local computers. *Id.* at 1091. These actions on its customers' computers, the court held, "do not mean that Perplexity has 'accessed' (gained entry) to Amazon's servers." *Id.*

The district court's "access" findings here were far more attenuated, given that all data-writing occurred locally on customer premises—not on HSOne's servers—and it was HSOne's software, not Vyne Trellis, that caused communications between local computers and the cloud. Moreover, the court's attempt to distinguish *Perplexity* fails. It pointed to its finding that Vyne obtained "secret administrator-level credentials," Stay-Op. 3, but that finding about the means of Vyne Trellis accessing software on dental practices' computers says nothing about whether Vyne Trellis accessed a separate computer—HSOne's Cloud—due to syncing. The court's finding about Vyne's intent was similarly inapt: Perplexity expressly designed—and thus intended—its Assistant to obtain data from Amazon's servers, but that was not enough, and neither is it here. *See Perplexity*, 184 F.4th at 1089–91; *cf. Van Buren*, 593 U.S. at 378 (CFAA "does not cover those [with] improper motives for obtaining information that is otherwise available to them").

To the extent there is an ambiguity, and there is none, the "canon of strict construction of criminal statutes" required the district court to "resolv[e] ambiguity in [the CFAA] as to apply it only to conduct clearly covered." *United States v.*

*Lanier*, 520 U.S. 259, 266 (1997); *see also WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012) (applying the "rule of lenity" when interpreting the CFAA in a civil suit). The CFAA acutely raises this concern, because "dramatic changes in technology [have] swept virtually all internet-connected devices within the statute's reach." *NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 166 (3d Cir. 2025), *cert. denied*, 146 S. Ct. 1856 (2026).

The implications of the ruling below are profound: An incredible number of computers run software programs that, like HSOne's, synchronize with local installations to perform updates or store information to a cloud, including Microsoft's ubiquitous OneDrive function or storage systems like Google Drive. According to the court's ruling, this synchronization means that if the software publisher objects, editing files locally constitutes criminal "access" to the publisher's servers. This is not the sort of "access" that the CFAA proscribes. *Van Buren*, 593 U.S. at 388; *id.* at 393 (rejecting CFAA interpretation that "would attach criminal penalties to a breathtaking amount of commonplace computer activity"); *Perplexity*, 184 F.4th at 1091–92 (declining to "transform[] whole categories of otherwise innocuous behavior into federal crimes simply because a computer is involved").

**B. Designing and selling software is not "accessing" a computer**

The court separately erred by enjoining software sales, based on finding that Vyne violated the CFAA through the "intentional deployment of software functions"

to customers who in turn used the software to write their own patient and practice data, on their own Dentrix Databases, on their own computers. Stay-Op. 4.

The statute prohibits "access," not the design or sale of software, even when sales are made with the intent that this third-party engages in allegedly illegal access. *Cf. Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994) ("[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors."). Here, it is Vyne's customers—not Vyne—who install the software and use its read and write functionality, and they do this to write their own data onto databases stored on their own computers containing, e.g., their own financial ledgers. Thus, if Vyne ceased to exist tomorrow, dental practices that had Vyne Trellis could continue to use VyneSync, and VyneSync would still "access" Dentrix.

Again, that part of the decision below conflicts with *Perplexity*. *Perplexity* explained that "the CFAA contemplates access by a person," and a software program "is a tool, not a person for statutory purposes." 184 F.4th at 1091. Thus, only the user of a software program, and not its publisher, can access a protected computer by using software. *Id.* Applying these principles, the Ninth Circuit held that Perplexity the entity did not "access" Amazon's servers when its customers used Perplexity's Assistant to access data on Amazon's servers—although Perplexity

"may communicate instructions to the Assistant." *Id.* As that court explained, "[i]t is the user who 'accesses' Amazon's computers, with the help of the Assistant to carry out specific acts on Amazon.com." *Id.* Much the same may be said here.

Indeed, the district court here relied on findings far more attenuated than in *Perplexity*. Unlike in *Perplexity*, there was no finding that Vyne directs Vyne Trellis, as dentists use it to access their own data on their own computers. Unlike in *Perplexity*—where Perplexity's Assistant obtained data stored only on Amazon's cloud, *id.*—here, the data was stored locally on dentists' computers. And unlike in *Perplexity*—where Perplexity communicated with Perplexity's Assistant to obtain Amazon's data, *id.*—here it was HSOne, not Vyne, that directed communications between its own cloud systems and its customers' systems.

In that regard, the district court was wrong to distinguish *Perplexity* on the basis that only "the browser user [there] 'direct[ed]' the 'AI Assistant.'" Stay-Op. 4. The very page of the Ninth Circuit's opinion that the district court cited shows that the Perplexity Assistant "relie[d] on direction from the user *and instructions from Perplexity's servers*." *Perplexity*, 184 F.4th at 1087; *see also id.* at 1091 (holding that "communicat[ing] instructions to the Assistant" to help users obtain information

from Amazon's servers is not "access" "to Amazon's servers"). So the fact that Vyne designed (or maintained) Vyne Trellis' functions to help users is insufficient.[4]

### C. Any access to the HSOne Cloud did not cause HSOne "damage"

Under the CFAA, there must also be "damage and loss" that is "a result of" the wrongful "access." 18 U.S.C. § 1030(a)(5)(C). The text indeed requires a causal connection between the "access" and the "damage and loss." *Spirits v. Ragghianti*, 2024 WL 3177773, at *3 (3d Cir. June 26, 2024). HSOne "must show … [Vyne's] violation of section 1030(a)(5)(C) caused both 'damage and loss.'" *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954, 961 (N.D. Cal. 2014) (quoting 18 U.S.C. § 1030(a)(5)(C)). And "damage" means "impairment to the integrity or availability of data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(8).

Here, the district court found data "damage" that related only to purported issues with dentists' data on dentists' own computers; there was no finding of data corruption on the HSOne Cloud and no causal relation between the "damage" and the finding of "access" by Vyne Trellis to the HSOne Cloud (as opposed to the dentists' computers). *See* PI-Op. 82–84. Said differently, the data "damage" here

---

[4] Although the district court's stay ruling brushed aside the notion that it found liability for "selling of software," Stay-Op. 3, the district court's injunction shows otherwise. It does not order Vyne to cease accessing computers, but requires Vyne to "not market, sell, or distribute" software tools, Dkt. 190-1 ¶ 8(a), an acknowledgement that "market[ing], sell[ing], [and] distributing" software is what Vyne does.

occurred on practices' computers and does not turn on whether that data or any other was copied to HSOne's servers. *See id.* Moreover, although the district court found that VyneSync likely "interfered with HSOne's ability to disseminate upgrades to Dentrix software through its cloud infrastructure," *id.* at 83, this is not statutory "damage" to "data, a program, a system, or information" on HSOne's Cloud; it also occurred on dentists' computers and was caused only by Vyne Trellis' access to those computers, not to the HSOne Cloud. Though HSOne may have suffered "losses," HSOne is not the "victim" of any claimed "damage."

The district court's refusal to stay its injunction only highlighted its error. It reasoned that the "damage" here consisted of impacts to "HSOne's ability to monitor, control, and secure the Dentrix system through its cloud infrastructure." Stay-Op. 5. But that is not CFAA "damage" even if it causes monetary losses, and it was also not caused by any claimed CFAA "access" to the HSOne Cloud.

## II. Absent a Stay, Vyne Will Suffer Substantial Harm

Absent a stay, it will be impossible to return Vyne to the pre-injunction status quo, even if Vyne prevails here, as compliance will irreparably harm its customer base and reputation. Indeed, this injunction does far more than "preserv[ing] the court's ability to render a meaningful judgment on the merits," as it will materially alter the status quo. *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013); *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003),

*abrogated on other grounds by eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).

As the district court acknowledged, the injunction "will restrict the manner in which Vyne provides certain patient engagement services to its customers and prevent it from providing these services," which may "harm . . . Vyne's legitimate business." PI-Op. 91. Today, approximately 1,400 dental practices use VyneSync to read and write data on their local Dentrix Databases. Dkt. 132 at 186:16-25. If Vyne cannot sell, distribute, or market these services, customers are likely to go elsewhere. This is irreparable harm, even if lost customers are a minority of Vyne's business. *See Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 239 (4th Cir. 2025) ("[I]irreparable harm can include . . . erosion of [a company's] customer base."); *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 274, 278 n.7 (4th Cir. 2025) (loss of 30% of customers showed irreparable harm).

Being forced to take these actions after HSOne's year-long campaign of unfair competition would also cause irreparable harm to Vyne's reputation and goodwill. *See Real Time Med. Sys.*, 131 F.4th at 239 (recognizing that "actual and imminent loss of good will" can cause irreparable harm); *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 340 & n.3 (4th Cir. 2001) (noting that a party opposing an injunction has "demonstrated that it will suffer more from a grant of an injunction than [the proponent] will from its denial" when it will suffer a loss of "its reputation and good

will within the industry”). The main competitor likely to win here is, unsurprisingly, HSOne. PI-Op. 73–76 (describing HSOne’s efforts to target Vyne’s product “through deceptive and otherwise unfair means” while “continuing to target the same customers with promotion of HSOne’s competing product”). This further supports a stay. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (describing “permanent loss of customers to a competitor or the loss of goodwill” as irreparable), *abrogated in part on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

**III. A Stay Pending Appeal Will Not Cause Substantial Harm to HSOne**

While an injunction will inflict significant harm on Vyne, a limited stay pending appeal will not cause HSOne any substantial harm. In that regard, consider again that, since 2021, Vyne has been selling software that the injunction now proscribes, Dkt. 134 at 310:16–25, including over almost *eleven months* since HSOne moved for preliminary relief, *see supra* 7. HSOne below pointed to the “increased risk of a data security breach,” but there has been no actual incident over those many years. PI-Op. 84; *see also Real Time Med. Sys.*, 131 F.4th at 240 (rejecting “broad-strokes evidence that bots pose a risk to [defendant’s] systems”); *Perplexity*, 184 F.4th at 1093 (“Amazon’s cyber-risk harm argument is also weak.”). And HSOne has already been navigating any purported “loss of control over the

Dentrix system." Stay-Op. 6. The court below took the time necessary to consider HSOne's CFAA claim without an injunction in place, and so should this Court.

## IV. The Public Interest Favors a Stay

A stay would support the public interest because allowing Vyne to continue operating in the marketplace supports competition and consumer choice by enabling a competitor to HSOne to continue to operate. *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) (affirming denial of injunction that would have "depriv[ed] consumers of a choice of products").

Moreover, a stay also fosters continued "access, exchange, and use of electronic health information (EHI)," consistent with the Cures Act. 85 Fed. Reg. 25642, 25651; *see* PI-Op. 87–88. Requiring Vyne to eliminate its integrations with Dentrix—and thus their joint customers' access to their *own* data stored on their own computers—would cause substantial disruption to dental practices' workflows and undermine the Cures Act's purpose. *Cf.* PI-Op. 87–88; 85 Fed. Reg. at 25651.

## V. The Court Should Also Immediately Grant an Administrative Stay

The Court should immediately enter an administrative stay to preserve the status quo while it considers this motion, HSOne's response, and Vyne's reply. *See United States v. Texas*, 144 S. Ct. 797, 798–99 (2024) (Barrett, J., concurring). The district court recognized the propriety of that approach by entering an administrative stay below to consider Vyne's stay motion there (Dkt. 197), and then by pausing the

effective date of the injunction until at least September 24, 2026. Stay-Op. 7. This Court should extend the stay so that it can hear from the parties and consider whether to enter a stay pending appeal—for these and all the reasons noted above.

## VI. Alternatively, the Court Should Expedite the Appeal

Vyne is prepared to prosecute this appeal on an expedited schedule as a condition to any stay (as happened in *Perplexity*), although HSOne has stated previously it opposes expedition even if a stay is granted (undermining HSOne's suggestion that a stay would cause it harm). If the Court denies the stay, however, Vyne requests an expedited appeal, for the reasons stated above.

## CONCLUSION

The Court should enter an administrative stay while it considers Vyne's motion for a stay pending appeal, and then it should enter a stay pending appeal. If a stay is denied, the Court should expedite this appeal. [5]

---

[5] Vyne asked HSOne for its position on Vyne's request for a stay and an administrative stay, and, as of the time of filing, HSOne has not responded. HSOne opposed a request for a stay in the district court.

Dated: September 14, 2026

Respectfully submitted,

/s/ Vincent Levy

K. Nichole Nesbitt
Derek M. Stikeleather
GOODELL DEVRIES LEECH
& DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
410-783-4000
dstikeleather@gdldlaw.com
knn@gdldlaw.com

Vincent Levy
*Counsel of Record*
Jack L. Millman
Daniel Fahrenthold
Jessica Marder-Spiro
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Ave, 14th Floor
New York, New York
646-837-5151
vlevy@hsgllp.com

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,979 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

Dated: New York, New York
September 14, 2026

By: /s/ *Vincent Levy*

Vincent Levy