No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,

Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,

Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

# HENRY SCHEIN ONE, LLC'S RESPONSE IN OPPOSITION TO VYNE'S MOTION FOR STAY PENDING APPEAL

Michael Burshteyn
BURSHTEYN POLIN LLP
1212 Broadway Plaza, Suite 2100
Walnut Creek, CA 94596
(925) 238-3119
mike@burshteynpolin.com

Jennifer Bartlett
GREENBERG TRAURIG, LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 665-3729
Jennifer.Bartlett@gtlaw.com

Counsel for Henry Schein One, LLC

## TABLE OF CONTENTS


**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **4**

I. Vyne Accesses HSOne's Systems Without Authorization. .......... 4

II. The District Court Found That HSOne Was Likely to Prevail on Its CFAA Claim. .......... 5

**LEGAL STANDARD** .......... **6**

**ARGUMENT** .......... **7**

I. Vyne has not made a strong showing that it will prevail on appeal. .......... 8

A. Vyne accesses protected computers without authorization. .......... 8

B. The district court found that it was Vyne and not customers that intentionally accessed the protected computer. .......... 10

C. The court found the required connection between access, damage, and loss. .......... 11

D. The district court correctly distinguished *Perplexity*. .......... 12

E. Neither lenity nor the status quo justifies a stay. .......... 14

II. Vyne Has Not Shown That Compliance Will Cause It Irreparable Harm. .......... 15

III. A Stay Would Prolong the Harm to HSOne and Its Customers. .......... 17

IV. The Public Interest Favors Protecting Patient Data. .......... 20

V. No Additional Administrative Stay Is Warranted. .......... 21

VI. Vyne's own representations defeat its request to expedite the appeal. .......... 21

**CONCLUSION** .......... **22**

**CERTIFICATE OF COMPLIANCE** .......... **24**

## TABLE OF AUTHORITIES

### Cases

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026) ........ 3, 5, 12, 13, 18

*AssociationVoice, Inc. v. AtHomeNet, Inc.*, 2011 WL 63508 (D. Colo. Jan. 6, 2011) ........ 20

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) ........ 11

*dmarcian, Inc. v. dmarcian Europe BV*, 2021 WL 3561182 (W.D.N.C. Aug. 11, 2021) ........ 2, 16, 19

*Google LLC v. Starovikov*, 2021 WL 6754263 (S.D.N.Y. Dec. 16, 2021) ........ 20

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ........ 10

*In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517 (4th Cir. 2003) ........ 14, 15

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015) ........ 7

*In re Schweiger*, 578 B.R. 734 (Bankr. D. Md. 2017) ........ 7

*International Jensen Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 1993) ........ 20

*Kingfly Spirits v. Ragghianti*, 2024 WL 3177773 (3d Cir. June 26, 2024) ........ 12

*Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012) ........ 7

*MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335 (4th Cir. 2001) ........ 16

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 (4th Cir. 1994) ........ 17

*Nken v. Holder*, 556 U.S. 418 (2009) ........ 6, 7, 19, 21

*NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954 (N.D. Cal. 2014) ........ 12

*NRA Group, LLC v. Durenleau*, 154 F.4th 153 (3d Cir. 2025), cert. denied, No. 25-1033 (U.S. Mar. 30, 2026) ........ 10

*Oce N. Am., Inc. v. MCS Services, Inc.*, 748 F. Supp. 2d 481 (D. Md. 2010) ........ 9

*Par Pharms., Inc. v. TWI Pharms., Inc.*, 2014 WL 3956024 (D. Md. Aug. 12, 2014) ........ 7

*Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221 (D.P.R. 2016) ....................3, 9

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205 (4th Cir. 2025) .................... 17, 18, 20

*Ruiz v. Estelle*, 650 F.2d 555 (5th Cir. 1981)....................2

*Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268 (4th Cir. 2025)....................16

*Shular v. United States*, 589 U.S. 154 (2020)....................14

*The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) ....................7

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) ....................4, 9

*United States v. Lanier*, 520 U.S. 259 (1997)....................14

*United States v. Valle*, 807 F.3d 508 (2d Cir. 2015)....................10

*Van Buren v. United States*, 593 U.S. 374 (2021) .................... 1, 3, 9, 12

*WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012)....3, 9

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)....................17

**Statutes**

18 U.S.C. § 1030(a)(5)(C) ....................8

18 U.S.C. § 1030(e)(8)....................12

**Rules**

4th Cir. R. 12(c) ........................................................................................22
Fed. R. App. P. 8(a)(2)(B)(ii)–(iii) ..............................................................2, 19
Fed. R. App. P. 27(a)(2)(B) ..........................................................................2
Fed. R. App. P. 27(a)(3)(A) ......................................................................2, 19
Fed. R. App. P. 27(d)(1)(E) ........................................................................24
Fed. R. App. P. 27(d)(2)(A) ........................................................................24
Fed. R. App. P. 32(a)(5) .............................................................................24
Fed. R. App. P. 32(a)(6) .............................................................................24
Fed. R. App. P. 32(f) ..................................................................................24

## INTRODUCTION

This is a straightforward case involving unauthorized access to protected computers containing sensitive health care information. Vyne accesses these computers via hacking that includes (a) decrypting encrypted configuration files, (b) extracting and misappropriating secret administrator credentials, and (c) using those credentials to inject data *en masse* into databases operating on protected computers and synced to cloud infrastructure. PI Op. 80–83.[1] This is the prototypical situation *Van Buren* identifies where access gates are down. Vyne breaks through those gates with sophisticated technical measures designed to circumvent HSOne's security controls.[2]

The district court—after a three-day evidentiary hearing and testimony from seven witnesses, depositions of those witnesses, and hundreds of pages of briefing and evidence—found that HSOne was likely to succeed on its claims that Vyne violated the Computer Fraud and Abuse Act ("CFAA").[3]

---

[1] "PI Op." refers to D. Ct. ECF No. 189 (CA4 ECF No. 17-4); "Stay Order" to corrected D. Ct. ECF No. 216-1 (CA4 ECF No. 17-6); "Inj." to corrected D. Ct. ECF No. 190-1 (CA4 ECF No. 17-3); and "Mot." to CA4 ECF No. 17-1. "Tr." is the March 18 hearing transcript, D. Ct. ECF No. 163 (Ex. 1).

[2] Henry Schein One, LLC ("HSOne"). National Electronic Attachment, Inc. d/b/a Vyne Dental ("Vyne").

[3] *See* PI Op. 16, 77–84. The court noted evidence of reverse engineering or insider knowledge: Vyne's CTO, a former HSOne engineer, knew HSOne's cloud-synchronization technology, and Vyne's decryption method seemed to stem from "either reverse engineering or insider knowledge, such as knowledge of HSOne's source code." *Id.* at 80–82.

Because Vyne seeks to prolong its unauthorized access and develop new hacks, it requested a stay pending appeal from the district court.[4] That court, in a thoughtfully considered and narrow ruling, denied the motion based on Vyne's failure to satisfy any prong of the applicable standard: Vyne failed to make a showing of likely success or establish irreparable harm. The injunction preserved the printer driver Vyne claimed it needed for its core business. PI Op. 91–92. But providing Vyne with a stay and even more free rein to hack HSOne poses grave security risks to HSOne, dental practices, and patients. Stay Order 2, 6. Vyne's unrestrained hacking will result in further irreparable harm to HSOne, including by preventing HSOne from making routine upgrades—security and otherwise—to its systems. D. Ct. ECF No. 174-2 ¶ 7. In recent weeks, Vyne's escalated conduct has prevented HSOne from completing Dentrix updates on affected customer systems.[5]

There is nothing in Vyne's renewed request that the district court did not already consider. This is not a nuanced or novel case in a gray area of the CFAA.

---

[4] The Court can consider intervening events bearing on the harm a stay would prolong. Fed. R. App. P. 8(a)(2)(B)(ii)–(iii), 27(a)(2)(B), (a)(3)(A); *dmarcian, Inc. v. dmarcian Europe BV*, 2021 WL 3561182, at *3, *7 (W.D.N.C. Aug. 11, 2021); *Ruiz v. Estelle*, 650 F.2d 555, 572 (5th Cir. 1981). Multiple declarations demonstrate Vyne's escalating conduct under the cover of delay. *See, e.g.*, D. Ct. ECF Nos. 201-1, 203, and 211; *infra* Section III.

[5] FTI's supplemental declaration describes Vyne's continuing development of write-back software. D. Ct. ECF No. 203 ¶¶ 20–27. In the last few weeks, HSOne's Chief Information Security Officer ("CISO") identified 43 failed updates caused by Vyne's unauthorized interactions with HSOne's configuration files—27.2% of the 158 failed updates. D. Ct. ECF No. 211 ¶¶ 3–9.

Vyne's conduct here is a clear violation of the statute. Extracting secret administrator credentials to access databases on protected computers is precisely the sort of unauthorized access that the Supreme Court and this Circuit have identified as unlawful. *Van Buren v. United States*, 593 U.S. 374, 389 (2021); *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012). The recent *Amazon.com Services, LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026), decision involving artificial intelligence powering browser agents has nothing to do with Vyne's blatant computer hacking. *Perplexity* did not exfiltrate encryption keys and use them to inject data into a database. Had it done so, that decision would have come down the same way as this one.

Vyne's arguments about cloud sync are a red herring. First, the district court was correct in finding that Vyne's unauthorized encryption key misappropriation that gives Vyne control over configuration files violates the CFAA. This is so because it permits Vyne access to the cloud infrastructure that sends data both ways back and forth from the Dentrix databases installed at dentists' offices to the cloud, without which Dentrix could not operate. PI Op. 77–82. Cloud access is fundamental to Vyne's hack. Second, the record and case law substantiate that the computers Vyne hacks at the dentist offices are also protected computers.[6] The trial

---

[6] *See, e.g.*, *Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 231 (D.P.R. 2016) (similar reasoning applied to MRI machines on-site);

court did not need to make this finding and issued a narrow ruling, but it is substantiated in the record. PI Op. 26. Vyne's interpretation of the CFAA would license hacks of any software deployed on customer computers. That is not the law.

Due to the urgent need to shut down Vyne's unauthorized write-back into Dentrix databases, as the district court recognized, Vyne's latest request seeking more time and cover for its hacking should be denied.

## BACKGROUND

### I. Vyne Accesses HSOne's Systems Without Authorization.

The district court reviewed the factual background, which involves Vyne's brazen unauthorized access to HSOne's Dentrix dental practice management software because Vyne refuses to integrate via HSOne's authorized API program. PI Op. 77–78.

Among other things, Vyne distributes a printer driver that reads and exports data. *Id.* at 74. It also distributes software capable of both reading from and writing into Dentrix databases. *Id.* at 80–81. The court found that Vyne does so by decrypting HSOne's secret administrator credentials hidden in its source code and derived from secrets that Vyne should not know about (and neither do its customers). *Id.* at 77–82. Vyne uses its access to insert and alter data, bypass Dentrix's controls,

---

*Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (no ownership requirement).

interfere with upgrades, and impair HSOne's ability to monitor and secure the system. PI Op. 82–86.

Vyne's unauthorized access to Dentrix creates significant security risks to patients' sensitive health information. *Id.* at 84–85.

## II. The District Court Found That HSOne Was Likely to Prevail on Its CFAA Claim.

After many rounds of briefing, oral argument, and live witness testimony, on July 31, 2026, the district court found HSOne showed likely success on the merits of its CFAA claim, irreparable non-compensable harm, and the public interest weighed in favor of enjoining Vyne's write back access. PI Op. 77, 84–88.

The injunction prohibits Vyne from marketing, selling, distributing, or supporting software capable of write access to databases on HSOne's servers or cloud system, or dental-practice computers connected to that cloud infrastructure. Inj. ¶ 8(a). It also prohibits HSOne from disabling Vyne's software and from denying Vyne printer-driver access to locally stored Dentrix databases. *Id.* ¶ 8(b).

Vyne moved for a stay in the district court on August 11. D. Ct. ECF Nos. 193-1, 201, 202. On September 8, the court denied a stay pending appeal after rejecting Vyne's arguments about access, causation, cloud connectivity, *Perplexity*, the nature of the injunction, and irreparable harm. Stay Order 2–7. The court also

stayed enforcement pending determination of the bond amount and granted an administrative stay through the bond hearing. *Id.* at 7.[7]

## LEGAL STANDARD

A stay pending appeal is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). It is instead "an exercise of judicial discretion" guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 433–34 (citation omitted). The stay factors substantially overlap with the factors governing preliminary injunctions because both address relief before the legality of the challenged conduct has been conclusively determined. *Id.* at 434.

The first two factors—merits and irreparable harm—"are the most critical," and a mere possibility of success or irreparable injury is insufficient. *Nken*, 556 U.S. at 434–35. To meet the first requirement, Vyne must "clearly demonstrate that it

[7] HSOne's consolidated cross-appeal, No. 26-2196, challenges the injunction entered against it and the limits of the relief entered in its favor. This response addresses Vyne's stay request and the terms currently governing its asserted injury.

will likely succeed on the merits," rather than present a mere "grave or serious question for litigation."[8]

## ARGUMENT

Vyne fails to satisfy any of the elements, let alone the two "most critical" requirements for a stay: a "strong showing" of likely success and irreparable injury absent relief. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

Vyne cannot replace the required showing of likely success with an allegedly "substantial case."[9] *See In re Schweiger*, 578 B.R. 734, 737 (Bankr. D. Md. 2017) (rejecting a substantial-possibility standard below likelihood of success).

The district court rejected Vyne's premise that it merely sells software: "[T]his Court did not find that Vyne's selling of software constitutes 'access' within the meaning of the CFAA." Stay Order 3. It found Vyne intentionally deploys credential-decrypting functions to alter Dentrix databases and reach HSOne's cloud

---

[8] *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010); *see Nken*, 556 U.S. at 434–35; *In re Schweiger*, 578 B.R. 734, 737 (Bankr. D. Md. 2017).

[9] Vyne's "substantial case" authorities are distinguishable. *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) prevented a sale from extinguishing a tenant's lease and business. *Id.* at 572–73. *Lair v. Bullock*, 697 F.3d 1200, 1204, 1214–16 (9th Cir. 2012) found the state had made the "strong showing" that success on the merits was likely in the case, which involved binding precedent upholding the same statute and irreversible disruption of an imminent election. *Par Pharms., Inc. v. TWI Pharms., Inc.*, 2014 WL 3956024, at *2–5 (D. Md. Aug. 12, 2014), found irreversible market effects. The concrete injuries in those cases have no counterpart in the district court's findings here. Stay Order 6.

system. Vyne does so without even its customers' knowledge, resulting in unauthorized access beyond what the customers could do without Vyne's hacking harness.

## I. Vyne has not made a strong showing that it will prevail on appeal.

### A. Vyne accesses protected computers without authorization.

Vyne intentionally used secret administrator credentials to alter Dentrix databases and send those alterations into HSOne's protected cloud system. PI Op. 80–82; Stay Order 2–4. That conduct falls squarely within 18 U.S.C. § 1030(a)(5)(C), which reaches one who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." Vyne's attempt to separate the local database from the cloud ignores the connected system the court found it accessed. Mot. 10–11; PI Op. 77–82.

The district court applied the statute to Vyne's intentional deployment of "software functions that uncover and use administrator-level credentials to connect and write back to the Dentrix database" with knowledge that "the local installations sync with HSOne's servers through its cloud infrastructure." Stay Order 2–4 (citing PI Op. 77–82). The court found that Vyne had inserted and altered data in local installations that "was then synchronized and stored in the Dentrix cloud system—a protected computer controlled by HSOne that HSOne did not authorize Vyne to access." PI Op. 82. The sync is not academic—it is how Dentrix databases receive

updates from HSOne and share information to HSOne. D. Ct. ECF No. 62-1 ¶¶ 2–3, 8–9; PI Op. 77–78. Without Vyne's decryption key misappropriation and data injection into the database, this cloud sync would not work. The cloud sync is a core part of Vyne's unauthorized access software. D. Ct. ECF No. 62-1 ¶¶ 6–9; PI Op. 80–82. *See Van Buren*, 593 U.S. at 388 (CFAA addresses entry into a particular part of a computer system).

The Dentrix databases on customers' computers are also "protected computers" under the CFAA, which imposes no ownership requirement. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004); *Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 231 (D.P.R. 2016) (Internet-connected MRI computers); *see also Oce N. Am., Inc. v. MCS Services, Inc.*, 748 F. Supp. 2d 481, 487 (D. Md. 2010). The district court focused on cloud sync, but the record supports a finding that the access at dentists' offices alone violates the CFAA as well.

None of Vyne's cited cases help it. *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 204–07 (4th Cir. 2012) protects access to information the user is entitled to obtain. Dentist offices are not permitted to misappropriate HSOne's decryption keys and inject data into Dentrix. *Van Buren*, 593 U.S. at 388–90, distinguishes unauthorized access from improper use. Here, the access is without permission: Vyne misappropriates secret administrator credentials to hijack Dentrix

and write data into it. PI Op. 81–82. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198–99, 1201 (9th Cir. 2022) concerned public profiles with no authorization gate. *United States v. Valle*, 807 F.3d 508, 524–28 (2d Cir. 2015) concerned a police officer's improper purpose in obtaining permitted database information. *NRA Group, LLC v. Durenleau*, 154 F.4th 153, 167–70 (3d Cir. 2025), cert. denied, No. 25-1033 (U.S. Mar. 30, 2026) rejected workplace-policy claims against current employees entitled to access the information. None involved the unauthorized administrator and cloud access found here.

Vyne's software analogies also "omit the critical elements of intent and damage that this Court found likely to be present in Vyne's conduct." Stay Order 5. A user editing their own document through ordinary credentials does not reproduce Vyne's extraction of concealed administrator credentials, greater access, continuing activity after attempted removal, and impairment of the connected system.

### B. The district court found that it was Vyne and not customers that intentionally accessed the protected computer.

Vyne's software-sales argument, Mot. 13–15, ignores its "intentional deployment of software functions that decrypt, extract, and use secret administrator-level credentials and write back to the database." Stay Order 3. The district court held Vyne responsible for its own intentional use of software to obtain unauthorized

access. Stay Order 3–4.[10] Vyne obtains "a greater degree of access to the Dentrix system than what customers are permitted or equipped to achieve through their own credentials." Stay Order 4 (quoting PI Op. 81); *see* PI Op. 79–82.

As the court explained, "[t]he individual customer may install the software, but the software enables a level of access beyond what the customer is capable of through use of her own credentials, and it likely does so without the customer's understanding or awareness." Stay Order 4.

### C. The court found the required connection between access, damage, and loss.

Vyne's access and alterations impaired the integrity and availability of data in the connected Dentrix system. PI Op. 82–86. The court identified "impacts on HSOne's ability to monitor, control, and secure the Dentrix system through its cloud infrastructure." Stay Order 5. Those damaging effects resulted from the unauthorized access itself.

The court's finding rests on evidence that Vyne bypasses upgrade checks, injects data beyond customers' premises, and causes inaccurate information to flow to Dentrix servers, impairing decisions about upgrades and security. D. Ct. ECF No. 62-1 (Ex. 2) ¶¶ 7–9. The court's opinion described the same connected architecture,

---

[10] *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182, 191 (1994), addressed aiding-and-abetting liability and preserved liability for a defendant's own violation. Vyne is liable for its own unauthorized access.

citing HSOne's CISO's declaration. PI Op. 77–78. The court then tied the damaging effects to the same unauthorized access. *Id.* at 82–86.

Impaired data integrity or availability constitutes "damage." 18 U.S.C. § 1030(e)(8). These definitions target technological harm, *Van Buren*, 593 U.S. at 391–92—the corrupted data, impaired performance, and upgrade interference found here. PI Op. 82–84.

Vyne itself cites *NovelPoster* for the requirement of both damage and loss. Mot. 16. That decision supports HSOne here. *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954, 961–62 (N.D. Cal. 2014), required both damage and loss but rejected physical destruction as indispensable; impairment of availability suffices. Here the impairment supplies damage and the resulting response costs supply loss. Stay Order 2, 5. The court found those costs exceeded $5,000 in one year. PI Op. 84. *Kingfly Spirits v. Ragghianti*, 2024 WL 3177773, at *3 (3d Cir. June 26, 2024) (nonprecedential), affirmed dismissal of a complaint that never plausibly connected computer access to stolen property and lost sales. It supplies no answer to the technical causal sequence established here.

### D. The district court correctly distinguished *Perplexity*.

Vyne's overreading of *Perplexity* does not create a conflict with established law in the Fourth Circuit or the district court's ruling. *Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026). The Ninth Circuit expressly

noted that it may have come down a different way with different facts, which the district court observed are precisely the differences that exist here. The court declined to decide "whether, on a different record or new facts, *Perplexity* may exercise control over the Assistant in such a way as to gain entry to Amazon's servers." *Id.* at 1091. *See* Stay Order 3–5 & n.2. There, users accessed Amazon through the browser assistant to carry out particular shopping tasks. *Perplexity*, 184 F.4th at 1091. Here, Vyne even went so far as to continue accessing and corrupting Dentrix after customers attempted removal. Stay Order 4. Had *Perplexity* decompiled Amazon's source code, exfiltrated decryption keys by combining disparate secret values hidden in the code, and then decrypted encrypted configuration files to directly inject data in Amazon's databases, the Ninth Circuit would have upheld the injunction and there would not have been any stay.

The court below correctly observed that software is "a tool, not a person for statutory purposes." *Id.* (quoting *Perplexity*, 184 F.4th at 1091). It then answered the question *Perplexity* required: "the person using the tool to achieve unauthorized access is not the individual customer; it is Vyne." Stay Order 4. The facts here, the court found, "would have produced a different result." *Id.* at 5.

Running software on a customer's computer does not immunize the provider's intentional unauthorized access. Stay Order 3–4; PI Op. 81–82; *Perplexity*, 184 F.4th at 1091–92. Vyne's rule would have an absurd result—it would place CFAA

liability on its own customer for an intrusion Vyne designed and controlled, even when the customer lacks both the credentials to obtain that access and any knowledge that Vyne's software is obtaining it. Stay Order 4.

### E. Neither lenity nor the status quo justifies a stay.

The district court applied the statutory language in a precise and proper way. It found "no ambiguity or lack of clarity in the statute for the rule of lenity to resolve." Stay Order 2. Lenity applies only after the ordinary tools of construction leave ambiguity; a disputed application does not create ambiguity. *Shular v. United States*, 589 U.S. 154, 165 (2020). Nor does the absence of a fact-identical decision create the missing ambiguity. *United States v. Lanier*, 520 U.S. 259, 266–67, 268–70 (1997), recognizes fair-warning protections while rejecting a demand for a prior decision on similar facts.

The injunction preserves the "last uncontested status between the parties" preceding the controversy. Stay Order 5 (quoting PI Op. 89–90). It prohibits future distribution and support of unauthorized write-access software. Inj. ¶ 8(a). Years of challenged conduct do not make that prohibition mandatory. Stay Order 5.

*In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525–27 (4th Cir. 2003), requires interim relief to preserve meaningful final relief; it does not protect challenged conduct merely because that conduct predates suit. The injunction vacated there compelled distribution of a rival's product to address speculative harm

in a different market. *Microsoft*, 333 F.3d at 527, 531–32. Unlike here, the court found no acquiescence in the damaging security circumvention and write-back at issue. PI Op. 90.

Whether the legal question here is difficult (and it is not) does not justify a stay: serious questions alone do not establish the required merits showing or overcome the other adverse stay factors. Stay Order 5–6.

## II. Vyne Has Not Shown That Compliance Will Cause It Irreparable Harm.

Vyne sought the injunction it received. It represented repeatedly to the trial court that all it needed was printer driver read-access to Dentrix. It claimed that it was already deprecating the write-back functionality. Now that the ruling has come down, Vyne backpedals and claims its business will be irreparably harmed should it be required to stop the thing it purported not to be focused on or doing. Tr. 16:2–17:3; PI Op. 82, 91; Mot. 18. Further, Vyne, like any other HSOne partner, can pursue an authorized technology integration or commercial agreement with HSOne. PI Op. 91–92. The injunction bars unauthorized write-back only. Inj. ¶ 8(a)–(b).

The district court also gave Vyne relief. Its order restrains HSOne from disabling Vyne's printer driver or denying printer-driver access to Dentrix databases on dental practices' computers. Vyne itself represented to the court below that restricting read-write capabilities "would not affect the printer driver." Tr. 16:2–10. The court replied, "if you say it's technically feasible, I'm going to take you at your

word." *Id.* at 16:18–17:1. Vyne confirmed: "they're different parts of the product and it's technically feasible." *Id.* at 17:2–3. The court found that "Vyne admits that providing such services is not its core business, *see* Roberts 183:1–5, and these services are only utilized by a small minority of the customers it shares with HSOne, *see* Am. Compl. ¶ 58; Roberts 186:4–187:8; Nix 292:1–8." PI Op. 91. Vyne cannot equate loss of these separable services with loss of its business. *See dmarcian*, 2021 WL 3561182, at *6 (denying a stay where the movant could not "explain how abiding by its own proposed restraint will cause it to go out of business").

The injunction would "restrict the manner in which Vyne provides certain patient engagement services to its customers and prevent it from providing these services in the unsecure and uncoordinated manner it has provided them." Stay Order 6 (quoting PI Op. 91). But "this harm does not go to Vyne's core business," and "it is likely compensable." *Id.* Vyne's prediction of customer losses from restricting services used by its customers establishes neither actual departures nor unmeasurable loss, and the record belies Vyne's overstated speculative claims about lost customers. D. Ct. ECF No. 187 at 28–29; Roberts 181:1–19, 182:2–16.

The customer-loss cases Vyne cites require concrete evidence. *See Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 278–79 & n.7 (4th Cir. 2025) (449 lost accounts and millions transferred supported goodwill injury); *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 & n.3 (4th Cir. 2001) (contrasting general

assertions with specific affidavits); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551–52 (4th Cir. 1994), abrogated on other grounds by *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (supported findings of customer loss and difficult-to-measure subscription losses). Vyne must establish such injury despite the protected printer driver and the court's findings concerning its ancillary services.

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 239–40 (4th Cir. 2025), involved service disruptions and threatened business loss without a viable substitute. Replacing automated access would have required 450 new employees. Here, the injunction preserves Vyne's electronic claims business: "write-back is not a necessary component of Vyne's electronic claims submission workflow." PI Op. 91 & n.13.

**III. A Stay Would Prolong the Harm to HSOne and Its Customers.**

Vyne's conduct risks catastrophic data breach, interferes with HSOne's ability to control, monitor, and secure its software, and causes data corruption. PI Op. 82–86. Speculative harm to Vyne, which it itself disclaimed, was outweighed by "the damage, loss, and irreparable harm its unsecure integration with Dentrix is likely to cause HSOne." Stay Order 6.

The court found: "The Court cannot rely upon Vyne to cease its injurious conduct without an injunction." PI Op. 86. That finding rests on Vyne's continued operation after customers attempted removal. *Id.* at 84–85.

As the court observed, "it cannot be the case that a litigant must suffer such a catastrophic breach before it is entitled to an injunction against conduct that places data security at substantial risk." PI Op. 85. The injunction prevents "potentially catastrophic harms to dental practices and patients." Stay Order 6.

*Real Time* does not change the outcome. The court there rejected vague assertions about bots circumventing CAPTCHAs where the defendant failed to identify a specific security threat. 131 F.4th at 236–38. The court here found specific unauthorized administrator access, data corruption, interference with upgrades, and impaired monitoring and security. PI Op. 77–86. FTI noted that Vyne's conduct is in the top 25th percentile of unauthorized access incidents that its expert had reviewed. PI Op. 90 n.12 (placing the conduct in the 75th–100th percentile of cybersecurity incidents; citing Youssef 458:10–459:9, 403:22–404:7).

*Perplexity*'s attenuated shopping concerns and limited security evidence, 184 F.4th at 1093–94, were minimal alleged damages in contrast with actual data corruption and upgrade interference in Dentrix. PI Op. 82–86; Stay Order 6.

**Vyne's interference since July 31 confirms the need to deny a stay.** This Court can consider Vyne's recent new hacks and preparations for circumventing the

injunction in considering its stay request. The stay inquiry assesses the circumstances of the particular case and can incorporate sworn statements. *Nken*, 556 U.S. at 433–34; Fed. R. App. P. 8(a)(2)(B)(ii)–(iii), 27(a)(3)(A). This Court may consider post-hearing events bearing on the harm a stay would cause. *dmarcian*, 2021 WL 3561182, at *3, *7. Since July 31, Vyne built and tested a "Vyne Writeback Assistant" that reaches for HSOne's encrypted credential file with write rights from Vyne-controlled developer machines. D. Ct. ECF No. 201-1 ¶¶ 8–16; D. Ct. ECF No. 203 ¶¶ 20–27. Vyne's software generated more than 8.2 million access events in the seven days ending August 24. D. Ct. ECF No. 203 ¶¶ 17, 22. Worse, Vyne is preventing HSOne from completing Dentrix updates on affected customer systems. HSOne's CISO found that Vyne's unauthorized interactions with HSOne's configuration files caused 43 of 158 failed updates (27.2%). D. Ct. ECF No. 211 ¶¶ 2–9. The failures leave affected practices unable to run Dentrix. *Id.* ¶¶ 2, 9.

Although the district court did not need or rely on these declarations to deny a stay, these events confirm the heightened risk of security breach envisioned by the district court in denying the stay and confirm why an injunction is necessary to prevent Vyne's injurious conduct. PI Op. at 86.

## IV. The Public Interest Favors Protecting Patient Data.

The public interest weighs heavily in favor of enforcing the injunction. Enjoining unauthorized computer access and enforcing the CFAA serve that interest. *See AssociationVoice, Inc. v. AtHomeNet, Inc.*, 2011 WL 63508, at *13 (D. Colo. Jan. 6, 2011); *Google LLC v. Starovikov*, 2021 WL 6754263, at *4 (S.D.N.Y. Dec. 16, 2021).

*International Jensen Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993), affirmed a consumer-choice conclusion that rested on the absence of likely infringement. It does not require preserving a method of access found likely unlawful and damaging. The Cures Act does not apply here, but in any event, the Cures Act principles discussed in *Real Time* do not dispense with a prohibition of unauthorized computer hacking, whether it occurs, or its effect on system security. *Real Time* indeed recognizes regulatory exceptions directed to health-IT performance and particular security risks. 131 F.4th at 235–38.

The public interests in "the integrity, confidentiality, and security of patient data" weigh against a stay, Stay Order 6, and the injunction protects patient access expressly: "nothing in this injunction would preclude dental practices in their use of EHI stored in Dentrix." PI Op. 88 n.11.

## V. No Additional Administrative Stay Is Warranted.

The district court has already granted an administrative stay through September 24 and separately stayed the injunction until it sets a bond amount. Stay Order 7. Vyne's failure to satisfy *Nken* supplies no basis for further delay. The substantive stay request presented here briefs the same issues resolved below, supported principally by the same record. Vyne has already been protected from enforcement while seeking appellate relief. The Court should resolve this matter on that record and deny the request.

## VI. Vyne's own representations defeat its request to expedite the appeal.

Vyne has had months to prepare for the injunction it now invokes as an emergency. It filed this action on September 30, 2025; HSOne moved for an injunction the next month; and the court announced its intention to grant relief in March. PI Op. 15–16. By the February hearing, Vyne claimed to have deprecated VyneSync's billing-statement use. *Id.* at 82. It then represented that the printer driver could operate independently of write-back, and the injunction preserved that access. Tr. 16:2–17:3; Inj. ¶ 8(b). Vyne received the protection it said its business required.

Vyne has also received a stay through the bond determination and an administrative stay through September 24 to seek appellate relief. Stay Order 7.

Vyne's demand for more time to continue the enjoined conduct supplies no reason to displace the appellate schedule.

Vyne answered "No" when asked on August 25 whether expedited disposition was necessary. CA4 ECF No. 7 at 2. The Court set the cross-appeal schedule on September 1, with Vyne's opening brief and the joint appendix due October 13. CA4 ECF No. 14 at 1. The same preserved printer-driver access, separable write-back functions, and compensable ancillary-service losses defeat both its claimed stay emergency and its demand for accelerated review. Stay Order 6. Vyne identifies no independent reason for expedition and does not address the record and oral-argument factors in Local Rule 12(c). The Court should deny both requests.

## CONCLUSION

The Court should decline Vyne's latest request to prolong its CFAA violations and deny Vyne's motion for a stay pending appeal, its request for an additional administrative stay, and its alternative request to expedite the appeal.

Dated September 21, 2026

Respectfully submitted,

*/s/ Michael Burshteyn*
Michael Burshteyn
BURSHTEYN POLIN LLP
1212 Broadway Plaza, Suite 2100
Walnut Creek, CA 94596
(925) 238-3119
mike@burshteynpolin.com

Jennifer Bartlett
GREENBERG TRAURIG, LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 665-3729
Jennifer.Bartlett@gtlaw.com

*Counsel for Henry Schein One, LLC*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,177 words, excluding the parts exempted by Rule 32(f). It complies with Rules 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Michael Burshteyn

Michael Burshteyn