No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

# EXHIBITS TO THE DECLARATION OF MICHAEL BURSHTEYN IN SUPPORT OF HENRY SCHEIN ONE, LLC'S RESPONSE IN OPPOSITION TO VYNE'S MOTION FOR STAY PENDING APPEAL

Michael Burshteyn
BURSHTEYN POLIN LLP
1212 Broadway Plaza, Suite 2100
Walnut Creek, CA 94596
(925) 238-3119
mike@burshteynpolin.com
Counsel for Henry Schein One, LLC

## INDEX OF EXHIBITS

**Exhibit 1**

March 18, 2026 motions hearing transcript. ECF 163.
Original transcript pages 1, 15-18, and 125 (reporter certificate).

**Exhibit 2**

Kenton McDaniel declaration - November 5, 2025. ECF 62-1.
Complete declaration, original pages 1-4; filed November 5, 2025.

**Exhibit 3**

Kenton McDaniel declaration - April 24, 2026. ECF 174-2.
Complete declaration, original pages 1-5; filed April 24, 2026.

**Exhibit 4**

Kenton McDaniel declaration - August 18, 2026. ECF 201-1.
Complete declaration, original pages 1-9; filed August 20, 2026.

# INDEX OF EXHIBITS

**Exhibit 5**

David Youssef declaration - August 26, 2026. ECF 203.
Complete declaration, original pages 1-11; filed August 26, 2026.

**Exhibit 6**

Kenton McDaniel declaration - September 1, 2026. ECF 211 - REDACTED.
Complete redacted declaration, original pages 1-4; filed September 1, 2026.

**Exhibit 7**

February 10, 2026 evidentiary hearing transcript. ECF 132.
Original transcript pages 1, 181-183, and 198 (reporter certificate); filed February 24, 2026.

**Exhibit 8**

HSOne post-hearing memorandum - public redacted version. ECF 187.
Title page and original pages 27-31, including the signature page; public redacted version filed June 3, 2026.

No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**EXHIBIT 1**

March 18, 2026 motions hearing transcript

ECF 163

Original transcript pages 1, 15-18, and 125 (reporter certificate).

**EXCERPTS**

Original page and line numbers preserved.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL,
Plaintiff,

vs.

HENRY SCHEIN ONE, LLC,
Defendant.

CIVIL CASE NO. 1:25-cv-03246-MJM

Baltimore, Maryland
Courtroom 5C

WEDNESDAY, MARCH 18, 2026
TRANSCRIPT OF PROCEEDINGS
MOTIONS HEARING
BEFORE THE HONORABLE MATTHEW J. MADDOX

For the Plaintiff:

Vincent Levy, Esquire
Charlotte Baigent, Esquire
James Campbell, Esquire
Torrell E. Mills, Esquire
Holwell Shuster & Goldberg, LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017

Kristen Nesbitt, Esquire
Goodell DeVries Leech and Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202

For the Defendant:

Michael Burshteyn, Esquire
Marcelo Barros, Esquire
Jennifer C. Bartlett, Esquire
Shirin Afsous, Esquire
Christopher Warner, Esquire
Catherine Galea, Esquire
Sydney L. Parks, Esquire
Brad M. Rostolsky, Esquire
Greenberg Traurig, P.A.
101 Second Street, Suite 2200
San Francisco, CA 94105

(Computer-aided Transcription of Stenotype Notes)

THE COURT: Do you need to do -- for certain functions of the printer driver or something else?

MR. LEVY: Something else. So the printer driver is still being used for purposes of accessing now claims and billing -- and all information, really, as their read function, and there's a separate product that allows patient engagement and ledger write-back for -- it's an optional module that's used by 20 percent of dentists, and that is still being used and it's not in the process of deprecating. We think it's legitimate.

THE COURT: Is that part of the injunction that you're asking for is protection of that function?

MR. LEVY: No. It was not part of the injunction we're asking for. They are asking to stop that. And I suppose if they try in the future to block that, we may be back before the Court but it's not part of the affirmative relief we're seeking.

THE COURT: Are you opposed to an injunction against that?

MR. LEVY: Yes, Your Honor.

THE COURT: Okay. But if I -- okay. I understand.

MR. LEVY: And there's several reasons for that I can get into, but one is it doesn't state a claim under any of the causes of action that they've asked for, and it does dovetail on the equities and get into the argument with the Cures Act as

well because it is about accessing EHI.

THE COURT: But it is a practically feasible injunction that they're asking for if I was -- I think they're asking for more than that, but if I was to grant an injunction against the read-write capabilities, that's something that you can do that would not affect your printer driver?

MR. LEVY: It would not affect the printer driver. It would affect the workflows of about 20 percent of our customers and other functions that they have Vyne do, but it is a separate function.

In other words, the Court could grant an injunction -- in theory, the Court could grant an injunction on the print driver, on them blocking the print driver, an injunction against us using ODBC integration, and those two injunctions could be entered.

THE COURT: Right, okay. Let me from Mr. --

MR. LEVY: And we would oppose that.

THE COURT: All right. Yeah, I understand your position. I just wanted to see what was technically feasible because I think that one of the key factual disputes here is the extent to which these functions are interwoven with each other.

You made the point that they're separate. They tried to argue and present evidence that they're not. But, you know, it's your technology, so if you say it's technically feasible,

I'm going to take you at your word.

MR. LEVY: Yeah, they're different parts of the product and it's technically feasible.

THE COURT: Okay. Let me hear from Mr. Burshteyn on those questions that I asked.

MR. BURSHTEYN: Thank you, Your Honor, and I'll try to limit it to the facts. We'll have a lot of things to say on the legal issues on all these topics.

But the first question, what did HSOne discover. So HSOne discovered, starting towards the end of 2024 and then into early 2025, customer complaints about database malfunctions.

Then HSOne deployed telemetry to try to understand what's going on. That uncovered that Vyne was accessing the dtx.config file, decrypting it, taking keys. And so that was sort of the big discovery in early 2025 that then caused --

THE COURT: But that telemetry went hand in hand with you putting them on a hostile printer driver list, correct, you disabling the printer driver?

MR. BURSHTEYN: It was -- exactly, yeah.

So then in response to this discovery then started to implement controls, right, started to flag it for customers. Hey, this particular -- it appears it's a printer driver, but we know it's actually much more, and so we're going to label it.

We told -- HSOne told Vyne stop doing it. HSOne started

talking to Vyne about it. Hey, we got to clean this up, this unauthorized access has to stop. So that is the second question. Between that time and September it was the discussion, it was the putting on notice, it was the attempts to come out with a commercial agreement, offers to Vyne to give them the data that they wanted in other ways.

And then in September, you know, we dispute that there was something that HSOne did in September. There's actually -- and I don't want to get into it now, but there's a big dispute on our end about whether Vyne sat on its hands or not.

Vyne is trying to say that the thing that happened was one particular security control, that if Vyne in its malicious form was running next to Dentrix that it would stop it.

As it came out in the hearing, that was rolled out in a limited way. HSOne rolls things out in concentric circles. Vyne worked around it and it doesn't work. And it hasn't been rolled out additionally since then, and there's no dispute about that. So that was what they say happened in September that they say is -- justifies the delay.

THE COURT: There wasn't a targeting of software that had the Vyne certificate?

MR. BURSHTEYN: It was -- the scale of it is important, right? When HSOne rolls out their updates, they do it in concentric circles. So they start very small, a few customers, see how it goes, expand, expand, expand. That's

THE COURT: All right. Well, thank you all. I appreciate -- again, let me just say, you know, this matter is -- obviously you've put a lot of work into what you've done here, and you had to in order to give me even a beginning of an understanding about it, so I want to commend you for your work in that regard and thank you for it.

We'll reconvene in April.

MR. BURSHTEYN: Thank you, Your Honor.

MR. LEVY: Thank you.

(The proceedings concluded at 5:16 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Amanda L. Longmore, Registered Professional Reporter and Federal Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 28th day of March 2026

-S-

AMANDA L. LONGMORE, RPR, CRR, FCRR
FEDERAL OFFICIAL COURT REPORTER

No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**EXHIBIT 2**

Kenton McDaniel declaration - November 5, 2025

ECF 62-1

Complete declaration, original pages 1-4; filed November 5, 2025.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>Plaintiff and Counter-Defendant,<br><br>- against -<br><br>HENRY SCHEIN ONE, LLC,<br><br>Defendant and Counter-Claimant. | Case No. 1:25-cv-03246-MJM |

**DECLARATION OF KENTON MCDANIEL IN SUPPORT OF HENRY SCHEIN ONE, LLC'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Kenton McDaniel, declare under penalty of perjury:

1. I am the Chief Information Security Officer (CISO) at HSOne. I submit this declaration in support of Henry Schein One, LLC's ("HSOne") reply in support of its motion for a temporary restraining order and preliminary injunction against National Electronic Attachment, Inc. d/b/a Vyne Dental ("Vyne"). Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and if asked to testify as to these facts, I would be competent to do so.

**A. Vyne Accesses HSOne-hosted Software and Servers in Cloud Infrastructure Based on its Exploits and Credential Misappropriation at the Customer Sites.**

2. HSOne's Dentrix software installed on its customers' premises is part of a system of software applications and services. These include the Dentrix application, the database that the application communicates with to read and write data, as well as other software operating on servers hosted by HSOne in a cloud infrastructure environment.

3. The component of software that operates on servers hosted by HSOne in a cloud infrastructure environment forms a part of the overall Dentrix application. This cloud infrastructure component is how HSOne upgrades the Dentrix software installed on customer environments. It sends software security upgrades and other software and data to the customer environment for updating the Dentrix software. The Dentrix application also can communicate and send data to the component of the system that is hosted by HSOne in a cloud infrastructure environment.

4. The component hosted by HSOne in a cloud infrastructure environment on a server is a protected computer. It is not accessible to the public. The other component, installed at the customer's environment, uses the customer's credentials to access this cloud infrastructure component.

5. Vyne does not have authorization to access the HSOne-hosted cloud infrastructure component of the Dentrix software application. HSOne invests resources in technical measures to secure the cloud infrastructure component. These measures include the measures HSOne deploys to secure the other components, including the application and the database that the customer installs. This is because the application can access the cloud infrastructure component using the customers' credentials.

6. Vyne's techniques to misappropriate credentials, including secrets for decryption, allow it to access the component of the Dentrix software HSOne hosts in its cloud infrastructure environment without authorization.

7. Vyne modifies the Dentrix software locally by using backend usernames and passwords on the Dentrix application at the customers' premises, which causes the Dentrix software to bypass routine upgrade checks. Vyne has the ability to turn the upgrade feature on or

off. Vyne can press any button or select any feature (or block any feature) it wants. Essentially, Vyne puts itself in the driver's seat of its customers' systems.

8. As the customers' Dentrix applications are running, they are sending information and data to Dentrix's software. Vyne can and does therefore inject data into Dentrix's software module outside of the customers' premises. Vyne's interference also prevents Dentrix software from installing upgrades to the Dentrix application at the customers' premises.

9. Because Vyne is writing to the database, it can inject data directly into HSOne's servers bypassing controls and business logic. This data flows up to Dentrix servers. HSOne uses the data in its servers to make decisions regarding upgrades and security needs based on the data in its servers. When Vyne writes data directly into HSOne's server, it prevents HSOne from having accurate data which HSOne would use to make decisions about its software updates.

10. When customers install the Dentrix application and database in their dental offices, they are not necessarily installed on bare metal machines in that office. Many HSOne customers use cloud infrastructure environments and virtualized environments as well.

11. HSOne customers agree to contracts, of which Vyne is aware, that contain multiple provisions prohibiting HSOne customers from permitting third-party access without authorization to HSOne's software systems.

**B. Vyne's Exploits Are Continuing to Cause HSOne Irreparable Harm.**

12. HSOne has received more than 500 complaints from customers about data integrity issues that HSOne's investigation shows are caused by Vyne's unauthorized access to HSOne's application and database, due to Vyne's improper writeback capability.

13. The nature of security risks is that attackers can persist in systems for periods of time before they execute their attack or before they are detected. This is why HSOne invests resources in mitigating vulnerabilities and continuously improving its security posture. Because

attacks are inevitable, building resilient secure systems is critical. Vyne's conduct interferes with HSOne's ability to secure its software systems.

**C. HSOne Protects its Systems and Does Not Target Vyne.**

14. HSOne has not deployed any virus against Vyne. HSOne exercises restraint and takes care to deploy security controls that do not disrupt valid applications. Because Vyne modified its application to attack HSOne's software systems, HSOne had no choice but to stop the application from doing so. This was not meant to target Vyne but rather to stop malicious attacks on HSOne's software.

15. HSOne's investigation shows that Vyne deployed workarounds even to this security control and continued to access HSOne's systems without authorization in recent weeks, since HSOne filed its TRO and PI motion.

16. HSOne is consequently not expanding deployment of the particular security control of which Vyne complains because HSOne believes that Vyne has already developed workarounds.

I declare under penalty of perjury of the laws of the United States that the foregoing facts and allegations are true and correct to the best of my knowledge, information and belief. Executed on this 5th day of November, 2025, in Highland, Utah.

Respectfully submitted,

Kenton McDaniel

No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**EXHIBIT 3**

Kenton McDaniel declaration - April 24, 2026

ECF 174-2

Complete declaration, original pages 1-5; filed April 24, 2026.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL

Plaintiff and Counter-Defendant,

- against -

HENRY SCHEIN ONE, LLC,

Defendant and Counter-Claimant.

Case No. 1:25-cv-03246-MJM

**DECLARATION OF KENTON MCDANIEL**

I, Kenton McDaniel, declare under penalty of perjury:

1. I am the Chief Information Security Officer (CISO) at HSOne. I submit this declaration in support of Henry Schein One, LLC's ("HSOne") Post Hearing Submission Re: Technical Feasibility, Compliance Period, and Bond. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and if asked to testify as to these facts, I would be competent to do so.

2. The Court has identified a distinction between Vyne's write access to Dentrix databases, which the Court indicated it intends to prohibit, and Vyne's read access, which the Court indicated it does not intend to prohibit. From a technical standpoint, that distinction does not hold for Vyne's methods of gaining illicit access to Dentrix. Read and write are not separable in Vyne's access model.

3. When any client registers an API key within Dentrix, Dentrix generates a local user account on that system. That is a write operation. *The read access Vyne obtains through the API exists only because of that prior write*. Vyne completed this key registration process without authorization from HSOne.

4. There is no form of Vyne's API access that does not originate in an unauthorized write to the Dentrix database. Similarly whenever HSOne files are decrypted, memory is dumped, applications are scraped, or any of the myriad methods through which Vyne accesses HSOne applications and infrastructure there are records generated in the database constituting write back.

5. Because HSOne did not authorize Vyne's hostile injections, HSOne has no record of the keys Vyne generated, the systems they are deployed on, or the other backdoors and workarounds left in HSOne's systems.

6. HSOne cannot selectively preserve Vyne's access while maintaining its own systems, because HSOne does not know where Vyne's keys are, what backdoors Vyne has left unsecured, and where Vyne's illicit credentials are. But HSOne should not be required to know that information because Vyne is not an authorized integration partner. The Court's proposed injunction would put that responsibility on HSOne to determine the extent and details regarding Vyne's actions, which could be difficult if not impossible.

7. As noted, the API is also not Vyne's only access pathway into HSOne's systems. HSOne has documented a broad set of unauthorized methods Vyne has used to access and manipulate its systems, including extracting credentials from HSOne configuration files, manipulating Dentrix binaries and core components, impersonating legitimate Dentrix processes, and actively blocking HSOne from delivering security updates to its own software. These are not isolated incidents. They reflect a deliberate and sustained effort to maintain unauthorized access

through whatever technical means are available. When HSOne has taken steps to close one vector, Vyne has developed another. That pattern continued during this litigation.

8. An injunction that prohibits HSOne from disabling illicit intrusions into HSOne's systems by any hostile actor without explicitly preserving HSOne's ability to perform normal security hygiene and maintenance on its own systems does not keep things as they are or preserve the status quo. It subordinates HSOne's security program to illicit actors' unauthorized access across every method Vyne has used or may develop.

9. Security operations are not static. They require ongoing maintenance, and that maintenance cannot be conditioned on whether it happens to affect an integration HSOne never agreed to support and has no obligation to preserve.

10. Requiring HSOne to hold its security posture in place to protect access Vyne was never entitled to hold is not a compliance obligation. It is an affirmative requirement to leave HSOne's systems in a degraded and vulnerable state for Vyne's benefit.

11. For continued print driver functionality, a carve out of the injunction against Vyne could be worded as follows:

> No Vyne-related code, binary, installer, process, or other function may read, write, or interact with the Dentrix platform, any HSOne database, configuration file, binary, registry key, process memory, stored HSOne secret, or any other HSOne system or component. The sole permitted exception is receipt of a print payload transmitted through the Windows print spooler from a user-initiated print action within Dentrix's native print interface inside of the Dentrix Office manager and no other modules, functions, or code. Vyne may not hold the default printer position on any Dentrix customer system.
>
> "Human initiated" within Dentrix's native print interface means the print comes from Dentrix and is a user-initiated print action manually executed within the Dentrix Office Manager application. Vyne may not hold the default printer position. Holding that position routes jobs to Vyne without a deliberate user choice. As stated by Vyne, a user should make the choice to print to Vyne and it should be a manually executed print action initiated by a user within the Dentrix application.

12. The actual claim print workflow would function as follows:



*Fig. 1 Claim selected in batch processor*



*Fig. 2 User selects file – print. Deliberate action Required*



*Fig. 3 Windows routes through the print spooler to the selected driver. Data flows from Dentrix to spooler to driver. No other HSOne component is involved*

I declare under penalty of perjury of the laws of the United States that the foregoing facts and allegations are true and correct to the best of my knowledge, information and belief. Executed on this 24th day of April, 2026, in Highland, Utah.

Respectfully submitted,

Kenton McDaniel

Kenton McDaniel

No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**EXHIBIT 4**

Kenton McDaniel declaration - August 18, 2026

ECF 201-1

Complete declaration, original pages 1-9; filed August 20, 2026.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>Plaintiff / Counter-Defendant,<br><br>- against -<br><br>HENRY SCHEIN ONE, LLC,<br><br>Defendant / Counter-Plaintiff. | Case No. 1:25-cv-03246-MJM |

**DECLARATION OF KENTON MCDANIEL**

I, Kenton McDaniel, declare under penalty of perjury:

1. I am the Chief Information Security Officer (CISO) at HSOne. I submit this declaration in support of Henry Schein One, LLC's ("HSOne") Opposition in Response to National Electronic Attachment, Inc., d/b/a Vyne Dental's ("Vyne") Motion to Stay Injunction Pending Appeal and Request for Clarification of the Court's Injunctive Order ("Motion to Stay"). Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and if asked to testify as to these facts, I would be competent to do so.

2. I submit this declaration to present new evidence, uncovered in the last week, that Vyne is developing software to misappropriate HSOne's Dentrix encryption keys and write back to the Dentrix cloud-synced databases. This declaration also highlights the concrete harm Vyne's RPA scheme will cause HSOne.

**Vyne Is Developing a New Writeback Application that Misappropriates Encryption Keys Using a Misappropriated Dentrix Installation on Vyne's Systems**

3. As is standard in the software industry,[1] HSOne's Dentrix software generates telemetry that records access events on each installation.

4. Telemetry is a tool that automatically collects and transmits data from remote sources for monitoring and analysis. It is a standard data collection system for retrieving and analyzing information to gain insights into a system's performance. Software providers and other businesses use telemetry to monitor and analyze data for decision-making and performance optimization.[2]

5. HSOne uses Splunk. Splunk is a logging system that allows a company to ingest telemetry, logs, artifacts, and then run a number of different analyses of said logs. Splunk is an industry standard log aggregation tool that operates in the Cloud. A company feeds it its log files, and Splunk analyzes the data and generates detailed reports quickly.

6. Every Dentrix installation is associated with a serial number, which allows HSOne to identify the licensee or, alternatively, the unlicensed user using Dentrix without authorization. Each Splunk record identifies the file involved, the executable that requested it, the access rights requested, the machine using the software, the Dentrix version, and the serial number of the Dentrix installation. The attached screenshots are true and correct copies of Dentrix's telemetry output.

7. Vyne does not have any right to access Dentrix on its systems, or otherwise, because Vyne has not been granted access to any part of Dentrix by HSOne.

[1] *Telemetry 101: An Introduction to Telemetry*, Splunk, https://www.splunk.com/en_us/blog/learn/what-is-telemetry.html ("[T]elemetry systems are vital for any business…").
[2] *What is Telemetry?*, Proofpoint, https://www.proofpoint.com/us/threat-reference/telemetry.

8. A Dentrix installation cannot be completed unless the installing user accepts HSOne's Terms and Conditions. Dentrix Terms and Conditions authorize HSOne to collect telemetry data from any user of Dentrix. Based on telemetry data received by HSOne, Vyne appears to have installed Dentrix on machines Vyne owns or controls. Those installations run under a serial number HSOne has identified as Vyne's developer serial number.

9. On August 6, 2026, HSOne's telemetry recorded the event shown below. On a machine named "CHADR," running Dentrix version 25.25.2.48904 under serial number 079022-DFE85W91, an executable named vyne.wa.app.exe requested access to a file named **dtx.config**.

10. The executable ran from: C:\Users\chad.ruppert\Projects\worktrees\RPA\GG-301\src\Vyne.RPA.App\bin\Debug\net8.0-windows10.0.17763.0\Vyne.WA.App.exe. That path identifies what the program is. Read left to right, it runs through a developer's working directory named "RPA"; a subfolder named "GG-301," which is consistent with an internal work-item or ticket identifier; a source project named "Vyne.RPA.App," and finally "bin\Debug," the folder into which a compiler places a debug build. HSOne believes RPA refers to the term used in the industry for robotic process automation.

11. Both the working directory and the software project was named after Vyne. The path therefore shows a robotic process automation program, written by Vyne, under active development designed to access Dentrix, on a Vyne developer's own machine.




12. Dtx.config is HSOne's **encrypted Dentrix configuration file**. It holds the credential material Dentrix uses to derive the administrative credentials for a practice's database. An application cannot obtain those credentials without first reading that file. No Vyne product has been granted access to Dentrix by HSOne, and no Vyne product has any legitimate need to open dtx.config.

13. The screenshot below is a further record of the same executable running from the same path. HSOne's monitoring flags it as associated with a threat actor. That is a classification HSOne's detection tooling applies to executables that access protected Dentrix resources.




14. On August 14, 2026, HSOne ran the telemetry summary (screenshot below), which reports activity from Dentrix installations using Vyne's developer serial number. It shows vyne.wa.app.exe running from two directories on two different Vyne machines. The RPA naming appears on both machines. Vyne is developing this program on at least two machines at once.

15. The screenshot below shows the full name of the executable vyne.wa.app.exe Vyne is creating. It is called Vyne Writeback Assistant, with a directory path C:\ProgramData\Vyne\Vyne Writeback Assistant\current\Vyne.WA.App.exe. The WA appears to stand for "Writeback Assistant."



| | | |
|---|---|---|
| vyne.wa.app.exe | 25.25.2.48904 | C:\ProgramData\Vyne\Vyne Writeback Assistant\current\Vyne.WA.App.exe |

16. Writeback is the operation of writing data into the Dentrix database. Based on the name Vyne has given this application, the access to HSOne's encrypted credential file, the development activity recorded the exhibits and telemetry, it is my assessment that Vyne is building a tool to write data into the Dentrix database.

17. Vyne has not sought or obtained authorization from HSOne to access Dentrix, to read dtx.config, or to write to the Dentrix database.

**<u>Vyne's RPA Plans Will Cause HSOne Harm</u>**

18. Vyne has indicated that it wants to freely use Robotic Process Automation ("RPA") to access Dentrix. RPA would be a form of writeback that would create additional risks and vulnerabilities, including changing or deleting data (even unintentionally) and slowing Dentrix to the point it is no longer useful.

19. Although the unauthorized use of application programming interfaces ("API") can cause problems, the unauthorized use of RPA would be even more harmful than the unauthorized use of APIs.

20. A properly authorized and engineered API operates through a tunnel HSOne built and maintains. HSOne engineered the tunnel: it requires authentication at the entry point and it validates the input against the schema, enforces referential-integrity rules, and logs the transaction,

and rate-limits queries to protect performance. Vyne's unauthorized use of the API tunnel creates problems with these checks and validations.

21. RPA is like an unregulated construction: automation built on top of HSOne's user interface, outside any engineered pathway, without proper controls. The use of unauthorized API is like a trespasser using an existent road, refusing to pay the toll, and creating problems because of the uncontrolled usage. RPA is like a trespasser bulldozing their way through private property to reach a destination on the other side. RPA bypasses every one of HSOne's controls.

22. RPA does not authenticate anything: no schema validation, generation of auditable entries or logs, and it has the potential to work at rates far beyond the limitations imposed by APIs.

23. RPA bypasses Dentrix's application-layer form validators by injecting input at the Windows message level, skipping the focus and validation events those controls depend on. Required fields can be submitted empty, referential integrity checks can be completely bypassed, and the resulting records are indistinguishable from legitimate entries. HSOne has no mechanism to identify which records RPA corrupted versus which a practitioner created, which means there is no remediation path short of a full audit of every affected practice's database. RPA could, for example, modify a patient's prescription dosage without triggering the verification prompt the user interface requires of human users—without leaving any technical trace that the change came from automation rather than a human. Worse, the patient's medical record would show a dosage change attributed to whoever was logged in last. HSOne would have no way to identify the entry as automated.

24. Dentrix ties every write operation to the Dentrix user account active at the time of the operation. But RPA operations are logged identically to practitioner actions with no marker distinguishing a machine-generated entry from a human one. If Vyne's RPA modifies a clinical

note, alters a prescription, or clears a medical alert, the audit log attributes that action to whichever Dentrix user was logged in at the time. This destroys the evidentiary value of the audit trail for HIPAA compliance purposes, and means a practitioner can be held responsible for record alterations they did not make and have no way to disprove. HSOne and practitioners rely on the audit trail. Practitioners rely on the audits for not only resolving potential problems with the system but also for independent litigation purposes and for their own liability purposes.

25. Dentrix's user interface ("UI") event handlers—pieces of software that track user actions like clicks, key presses, and focus changes—are built around human-paced interaction. RPA injects input at machine speed, driving state transitions before prior states are resolved—that is, RPA injects input at machine speed, faster than the application's processing capabilities, which assume human speed and behavior. This causes race conditions in the message queue and will trigger application crashes, unresponsive states, and data entered into the wrong patient context when focus state is corrupted mid-sequence. Dentrix's load sequencing, which staggers module initialization to manage resource consumption, would be bypassed entirely. The result is widespread application failures across every endpoint running the automation, with no way for HSOne to distinguish RPA-induced crashes from ordinary support issues.

26. One potential scenario: the RPA enters a patient's name to open a record and immediately begins entering clinical information before the application has finished loading the intended patient's record which would lead to depositing the information into the *wrong* patient's chart. This error will not be visible, and an audit trail will point to the last Dentrix user, not an automation-generated error. Vyne's conduct will result in widespread application failures across every endpoint running the automation, and HSOne will have no way of distinguishing RPA-induced crashes from ordinary support issues.

27. RPA operates through Windows' built-in UIAutomation accessibility stack. HSOne cannot block UIAutomation without disabling legitimate accessibility functions of the operating system. Unlike prior Vyne access vectors where HSOne had a discrete technical control to deploy, there is no surgical way to block RPA access to Dentrix without blocking the application entirely. This means once Vyne deploys RPA at scale, HSOne has no remediation short of asking the Court to act.

28. RPA targets specific UI elements by position, label, or control identifier. Any User Interface (UI) or User Experience (UX) change HSOne makes for legitimate product reasons, such as reordering buttons, renaming fields, or restructuring a workflow, can cause Vyne's automation to act against the wrong interface. To illustrate, if HSOne changed the relative position of the buttons for prescriptions and appointments, Vyne's RPA would not know the difference—and if the RPA intended to interact with the appointment button, it would instead be interacting with the prescription button. The result would be the issuance of a prescription where the practitioner intended only for a scheduling update, generating a clinical action that was unintended and never authorized by anyone.

29. HSOne should have no obligation to freeze its UI to accommodate Vyne's tooling. HSOne has no way to predict how a given change will interact with automation scripts it has never seen. The result is that normal Dentrix product development becomes a source of unpredictable data entry errors that HSOne cannot anticipate or remediate. From the customer perspective, this will be an HSOne failure and will lead to loss of confidence and increased support burden.

30. Each of these harms compounds if other third parties follow Vyne's example. A single unauthorized RPA actor will cause corruption, race condition problems, audit-trail destruction, remediation problems, and customer reputation erosion described above. But *multiple*

unauthorized RPA actors, each operating against the same Dentrix interface without coordination, will only multiply those harms, and add new ones. Concurrent RPA scripts competing for the same UI elements will generate collisions and undefined behavior that HSOne cannot debug because it has no visibility into any of the scripts. The audit trail, already destroyed by a single RPA actor, becomes uninterpretable and worthless when several anonymous actors are injecting themselves simultaneously in automated fashion. And HSOne cannot block any one third party's RPA without disabling the same Windows accessibility infrastructure that all of them use, including legitimate accessibility software. The result is a Dentrix platform that is unauditable, unstable, and structurally compromised.

I declare under penalty of perjury of the laws of the United States that the foregoing facts and allegations are true and correct to the best of my knowledge, information and belief. Executed on this 18th of August, 2026, in Highland, Utah.

Respectfully submitted,

Kenton McDaniel

No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**EXHIBIT 5**

David Youssef declaration - August 26, 2026

ECF 203

Complete declaration, original pages 1-11; filed August 26, 2026.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>Plaintiffs,<br><br>- against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>Defendant. | Case No. 1:25-cv-03246-MJM |

**DECLARATION OF DAVID YOUSSEF IN SUPPORT OF HENRY SCHEIN ONE, LLC'S MOTION FOR PRELIMINARY INJUNCTION**

I, David Youssef, declare as follows:

1. I, David Youssef, submit this supplemental declaration to bring to the Court's attention:
   a. Ongoing and future risks to HSOne through Vyne's planned Robotic Process Automation ("RPA"); and
   b. Evolving tactics employed by Vyne to gain persistent, unauthorized access to HSOne's Dentrix system and the underlying data through newly implemented writeback techniques.
2. The facts set forth herein are within my personal knowledge and professional expert analysis.
3. **Robotic Process Automation.** In the July 31, 2026 ruling, the Court stated, referring to VyneSync, "the software continued to connect to the Dentrix system and maintained write-back functionality."[1] In noting damage and loss, the Court stated that Vyne "likely

[1] Document 189; p. 82

impaired the integrity and availability of data stored in the Dentrix system."[2] As I previously testified, data integrity and availability issues in the health delivery context can have severe negative impacts and can lead to negative patient outcomes.

4. In its August 11, 2026 Memorandum Of Law In Support Of Plaintiff's Motion For A Stay Pending Appeal And For Clarification," Vyne asks that Robotic Process Automation ("RPA") be excluded from the injunction. Based on my understanding of Vyne's continued attempts to circumvent HSOne's data protection controls, Vyne's use of RPA in this implementation would simply be another form of write-back, achieving the same desired outcome as with VyneSync and introducing the same, if not more severe, cybersecurity risks, including data integrity and availability.

5. RPA is a category of software technology that automates repetitive, rule-based tasks by programmatically interacting with application User Interfaces ("UIs"), attempting to mimic human-like behavior. RPA tools do not communicate with applications through published Application Programming Interfaces ("APIs") and mimic human operator actions, such as keystrokes and mouse events.

6. Write-back functionality in the context of a management system such as Dentrix refers to the capability of a software process, whether an RPA agent or other automated mechanism, to insert, modify, or delete data within an application's underlying database.

7. When RPA is used to perform write-back operations, it does so by driving an application's UI to navigate to a record, populate fields, and submit forms. This is unlike a properly authorized API, which would operate through a controlled pathway that requires authentication, validates input against defined schema, enforces referential

[2] Ibid.

integrity rules, logs transactions with metadata, and rate-limits queries (2026.08.18 [00200-001] Declaration of K. McDaniel, p. 5). RPA bypasses these controls.

8. In an appropriate, developmentally healthy environment implementing RPA, the RPA developer stays in lock-step with the UI and database changes made by the application team. Any changes made to the UI or database structure are communicated in advance and tested, with relevant updates then made to the RPA component. But in the case of Vyne, they would be developing RPA processes based on their own observations and assumptions, and are essentially asking that HSOne be forced to trust Vyne's RPA implementation to be error-proof. This is highly unlikely.

9. Consider the potential scenario based on real health data entry UI changes: HSOne updates its demographics forms related to the multiple fields for "legal sex" and "sex assigned at birth" in accordance with the changing guidelines set forth by USCDI.[3] Without proper testing and input validation, HSOne can only hope that Vyne updates its RPA capabilities to not input the wrong data into these now-modified fields. Or worse yet, it is forced to proactively communicate changes it is making to its own software to a third party such as Vyne.

10. The record established that Vyne has indicated its intent to use RPA to access the Dentrix database, which would constitute a form of write-back (2026.08.18 [00200-001] Declaration of K. McDaniel, p. 5). Vyne has described its proposed RPA as operating "through Dentrix itself, acting in the place of the Dentrix user on the same user interface, using all of Dentrix's existing rails." (2026.08.11 [00193-001] Memorandum in Support

[3] United States Core Data for Interoperability

of Motion to Stay, p. 26). While this description is not technically inaccurate, it understates the severity of the risks.

11. RPA injects input at the Window message level, bypassing Dentrix application-layer form validators by skipping focus and validation events. As a result, required fields can be submitted with no content, referential integrity checks can be bypassed, and the resulting database records would be indistinguishable from legitimate entries created by a human operator (2026.08.18 [00200-001] Declaration of K. McDaniel, p. 6). This is an inherent architectural consequence of how RPA interacts with Window-based applications.

12. In addition to bypassing application-layer validation controls, RPA can create race conditions and application crashes. This is because Dentrix's UI event handlers are designed around human-paced interaction. RPA injects input at machine speed, faster than the application's processing capabilities. This causes race conditions in the message queue and can trigger application crashes, unresponsive states, and unintended data modifications (2026.08.18 [00200-001] Declaration of K. McDaniel, p. 7).

13. The record documents concrete harms caused by Vyne's prior write-back activity through VyneSync, including race conditions and ledger errors, insertion of the string "911911911" into database fields causing QuickBill accounts to stop working, disruption of referential integrity, database performance degradation, and interference with HSOne's ability to disseminate software upgrades (2026.07.31 [00189-000] MEMORANDUM OPINION, pp. 82–83). HSOne's opposition summarized these findings as encompassing "actual overwrites, balance errors, referential-integrity problems, QuickBill interference, held-open connections, performance degradation, upgrade complications, and a persistent

write-capable connection." (2026.08.18 [00200-000] Response in Opposition to Motion to Stay, p. 14).

14. The Court recognized that the harm at issue is not limited to any specific technical pathway. At the April 14, 2026 hearing, the Court stated: "the harm . . . is broader than that. It's writing back in general because that's what the evidence showed caused data integrity issues and interferes with the functionality of HSOne's systems." (2026.08.18 [00200-000] Response in Opposition to Motion to Stay, p. 28). I agree with that characterization. The harm is a function of the uncoordinated write-back operation itself, not the specific mechanism by which it is accomplished.

15. Vyne's request is essentially a distinction without a difference in that they are continuing to rely on HSOne's ability to rectify database errors that are created and to deal with frustrated dental offices that call their customer help desk when the RPA process breaks.

16. But a significant problem here is that in these cases, HSOne would not have the ability to properly determine whether it is an actual human user error or an RPA-driven failure. Dentrix ties every write operation to the user account active at the time of the operation; however, RPA operations are logged identically to practitioner actions, with no marker distinguishing a machine-generated entry from a human one (2026.08.18 [00200-001] Declaration of K. McDaniel, p. 7). This destroys the evidentiary value of the audit trail, and as a result, Vyne's RPA technology will render the eventual errors created substantially more difficult to audit.

17. As I will detail below, HSOne's telemetry exports demonstrate that Vyne's existing applications have already generated more than 8.2 million access events against Dentrix

systems, and implementing RPA at this scale could result in significant harm to HSOne (Vyne Applications_2026-08-24 at 12.17.44-0600_Splunk.csv).

18. **Vyne's Continued Evolving Techniques for Write-Back.** Throughout this matter, and similar to my prior investigations of Advanced Persistent Threat ("APT") actor groups, I have continued to work with HSOne's security team to obtain relevant telemetry data to understand how Vyne is continuing in its efforts to maintain the ability to perform unauthorized write-back operations to Dentrix. Understanding the hacking techniques that Vyne continues to employ helps put into context the true risk of their RPA request.

19. HSOne leverages certain telemetry capabilities in its Dentrix deployments. As I have previously noted, this is standard practice among software providers. Telemetry aids software providers in detecting and diagnosing technical issues with their software, helps facilitate remediation when customers report issues, provides relevant data on application and feature usage, and helps in detecting fraud through identifying unlicensed installations. In this case specifically, HSOne obtains telemetry data on a nightly basis from the various deployments of Dentrix to HSOne's Splunk[4] environment for monitoring and investigation.

20. **Attribution to Vyne via Machine Serial Numbers.** HSOne's Dentrix telemetry specifically includes the monitoring of local access to the most sensitive Dentrix files and DLLs, notably dtx.config. This monitoring allows HSOne to identify whether there are instances of unauthorized tampering to the sensitive components of its software that could cause security incidents, breaches, and data integrity issues for its customers.

[4] Splunk is an industry standard log aggregation tool that operates in the cloud. Each Splunk record captures the following forensic data points for every access event: the file involved, the executable that requested access, the access rights requested, the machine using the software, the Dentrix version, and the serial number of the Dentrix installation.

Through continued monitoring of this telemetry, I understand that HSOne identified anomalous activity on what appears to be an instance of Dentrix running on Vyne development servers. HSOne identified this activity through the logged TenantID, which shows the serial number of the tenant. In this case, HSOne identified instances of Dentrix operating on a TenantID previously associated with Vyne systems, through their previous partnerships and information sharing.

| TenantID (Serial) | MachineID | LatestReport | MachineName |
|---|---|---|---|
| 079022-DFE85W91 | 04ae4b13-5d8e-4a9d-9ac9-fabc2b21dde3 | Aug 24, 2026 @ 07:49:10.091 | DIL-MPORTER |
| 079022-DFE85W91 | 6b42868d-5f5a-4c38-b4a3-4f0cf1323cd7 | Aug 24, 2026 @ 06:44:03.247 | DESKTOP-0U0I076 |
| 079022-DFE85W91 | 13255fc2-1a68-4a17-9f5b-f7e975f7d699 | Aug 24, 2026 @ 05:40:53.173 | EC2AMAZ-P817JMQ |
| 079022-DFE85W91 | 46c37033-21b0-437a-b723-25f933471ddc | Aug 24, 2026 @ 04:05:24.342 | EC2AMAZ-1PL1IIL |
| 079022-DFE85W91 | 4832ea77-1522-4712-b60b-ea2de0c3ccd8 | Aug 24, 2026 @ 02:25:00.355 | LR-TARIK-XPS |
| 079022-DFE85W91 | 1a5a940e-5ed4-478f-a8c7-61cc7828936b | Aug 24, 2026 @ 01:51:09.076 | LRS-SABRIJA-01 |
| 079022-DFE85W91 | 0ce3e2c1-af5e-4542-8f34-dd068c0ca335 | Aug 24, 2026 @ 00:05:06.436 | EC2AMAZ-8C69ID0 |
| 079022-DFE85W91 | 347f81de-0a92-45f1-9196-b6c6e50723e4 | Aug 23, 2026 @ 23:15:08.169 | EC2AMAZ-K1R28P0 |
| 079022-DFE85W91 | d188d7af-8ba3-4b13-ba11-a31c4a398370 | Aug 23, 2026 @ 23:10:07.095 | stage-test-05 |
| 079022-DFE85W91 | a56cdd57-8fe3-45a3-9301-36c9115a1ef8 | Aug 23, 2026 @ 22:49:04.005 | stage-test-02 |
| 079022-DFE85W91 | 6ae0783b-5038-4450-9e5c-a60782f77c20 | Aug 23, 2026 @ 22:23:04.030 | stage-test-01 |
| 079022-DFE85W91 | 3ecec9be-a59e-4606-a546-5cbac76a36f3 | Aug 23, 2026 @ 20:55:02.588 | EC2AMAZ-1OT2JMB |
| 079022-DFE85W91 | 30e17505-61c9-42af-8ac4-3df1d15d9df2 | Aug 19, 2026 @ 23:54:37.204 | Goran |
| 079022-DFE85W91 | 535f6a16-a7ce-4da1-ba94-095913950c02 | Aug 19, 2026 @ 10:19:59.254 | Brooks-Dragonfly |
| 079022-DFE85W91 | 0839ad4e-c296-4eb2-94c7-7683b9ba9302 | Aug 18, 2026 @ 22:10:03.719 | CHADR |

*Vyne Tenant Machines Short Summary.csv*

21. These serial numbers remain associated with Vyne-controlled machines and appear in the telemetry data when those machines access Dentrix components. The serial number identified as Vyne's developer serial number is 079022-DFE85W91 (Vyne-Developer-Serial-Number-Activity.csv). Access events recorded under this serial number are attributable to Vyne-controlled machines.

22. **Unauthorized Vyne Developer Activity.** I requested newly available telemetry data from HSOne for analysis, and received summary data from HSOne's Splunk tenant, an aggregate summary (requestor_file_matrix_revised.csv) and application data covering a

period of seven days prior to and including August 24, 2026 ( Vyne Applications_2026-08-24 at 12.17.44-0600_Splunk.csv).

23. I applied filters to the summarized data based on the MachineName field for machines that are associated with Vyne developers as opposed to HSOne dental office customers.

24. There are two specific items that drew my attention immediately:

   a. A previously undisclosed requestor process, Vyne.WA.App.exe, that is hitting the dtx.config file with file write permissions and appears to be related to ongoing RPA development within Vyne; and

   b. This previously undisclosed process, Vyne.WA.App.exe, is appearing on multiple machines that are not associated with legitimate Dentrix customers but with Vyne developer systems.

<table>
<tr><th>Requestor</th><th>RequestorExe</th><th>File</th><th>Events</th><th>WriteInter</th><th>AccessMasks</th><th>AccessRights</th><th>Disposi</th><th>Machines</th><th>FirstSeen</th></tr>
<tr><td>C:\Users\chad.ruppert\Projects\worktrees\RPA\GG-<br>226\src\Vyne.RPA.App\bin\Debug\net8.0-</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>18</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>CHADR</td><td>7/1/2026 21:39</td></tr>
<tr><td>C:\ProgramData\Vyne\Vyne Writeback Assistant\current\Vyne.WA.App.exe</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>17</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>STAGE-TEST-02</td><td>8/14/2026 9:18</td></tr>
<tr><td>C:\Users\chad.ruppert\AppData\Local\Vyne.WA\current\Vyne.WA.App.exe</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>11</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>CHADR</td><td>7/23/2026 18:37</td></tr>
<tr><td>C:\Users\chad.ruppert\Projects\RPA\dtx_automation\src\Vyne.RPA.App\bi<br>n\Debug\net8.0-windows10.0.17763.0\Vyne.WA.App.exe</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>11</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>CHADR</td><td>7/23/2026 18:08</td></tr>
<tr><td>C:\Users\chad.ruppert\Projects\worktrees\RPA\telemetry-<br>x601\src\Vyne.RPA.App\bin\Debug\net8.0-</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>10</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>CHADR</td><td>7/31/2026 14:41</td></tr>
<tr><td>C:\Users\chad.ruppert\Projects\worktrees\RPA\telemetry-<br>x1001\src\Vyne.RPA.App\bin\Debug\net8.0-</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>9</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>CHADR</td><td>8/4/2026 19:22</td></tr>
<tr><td>C:\Users\chad.ruppert\Projects\worktrees\RPA\GG-<br>301\src\Vyne.RPA.App\bin\Debug\net8.0-</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>9</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>CHADR</td><td>8/6/2026 20:25</td></tr>
<tr><td>C:\Users\chad.ruppert\Projects\worktrees\RPA\GG-<br>304\src\Vyne.RPA.App\bin\Debug\net8.0-</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>9</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>CHADR</td><td>8/3/2026 16:25</td></tr>
<tr><td>C:\Users\SabrijaGolic\source\repos\dtx_automation\src\Vyne.RPA.App\bi<br>\Debug\net8.0-windows10.0.17763.0\Vyne.WA.App.exe</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>7</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>LRS-SABRIJA-01</td><td>6/30/2026 13:22</td></tr>
<tr><td>C:\Users\hasan\source\repos\vd\rpa\dtx_automation\src\Vyne.RPA.App\b<br>n\Debug\net8.0-windows10.0.17763.0\Vyne.WA.App.exe</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>5</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>LR-TARIK-XPS</td><td>7/16/2026 9:35</td></tr>
<tr><td>C:\Users\chad.ruppert\Projects\worktrees\RPA\telemetry-<br>x1002\src\Vyne.RPA.App\bin\Debug\net8.0-</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>4</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>CHADR</td><td>8/13/2026 13:15</td></tr>
<tr><td>C:\Users\hasan\AppData\Local\Vyne.WA\current\Vyne.WA.App.exe</td><td>Vyne.WA.App.exe</td><td>dtx.config</td><td>3</td><td>0</td><td>0x120089</td><td>FILE_WRITE_DATA|FILE_WRITE_ATTRIBUTES|||</td><td>OPEN</td><td>LR-TARIK-XPS</td><td>7/22/2026 9:05</td></tr>
</table>

*Requestor_file_matrix_revised.csv*

25. **Harm Analysis: RPA and Write-Back Functionality.** Evidence shows that Vyne.WA.App.exe, which sits under a RPA sub-folder on the developers' systems, appears to be Vyne's RPA application under development. We suspect the WA stands for "Write-back Assistant." On these developer systems, the unauthorized application has been accessing, or attempting to access, dtx.config with FILE_WRITE_DATA | FILE_WRITE_ATTRIBUTES access rights across multiple machines, indicating that the application is designed to open and interacted with the encrypted credential file in a manner that includes write capability (requestor_file_matrix_revised.csv).

26. Analysis of the telemetry data reveals a pattern across all Vyne-attributable access events, specifically the access rights FILE_WRITE_DATA | FILE_WRITE_ATTRIBUTES when accessing dtx.config (requestor_file_matrix_revised.csv). This is significant because it reflects that Vyne's executables are requesting write access, not just read access, to Dentrix's encrypted credential file. An application which needed only to read dtx.config in order to decrypt and use the credentials would not need to request FILE_WRITE_DATA access rights.

27. I also reviewed evidence of Vyne's in-development RPA project and validated that Vyne is developing an RPA application designed to access Dentrix. The RPA executable, Vyne.WA.App.exe, present on machines, including CHADR, LR-TARIK-XPS within directories with naming conventions that make it obvious that they are related to Vyne's ongoing RPA development. Furthermore, the source project is named Vyne.RPA.App, again supporting that this executable is related to the RPA project. The fact that Vyne's RPA application under active development attempted to access dtx.config on its first

recorded interaction with the Dentrix system is consistent with the application being designed to harvest administrative credentials as a precondition to performing write-back operations. This is the same credential-harvesting pattern that the Court found in connection with VyneSync's prior unauthorized access (2026.07.31 [00189-000] MEMORANDUM OPINION, p. 81).

28. This activity aligns not with a technology company attempting to implement software integration best practices, but with Advanced Persistent Threat ("APT") actor activity, forcing HSOne into a continuous cat-and-mouse game to protect its critical underlying systems from unauthorized activity and the negative impacts that could be caused to its customers as a result of that unauthorized activity.

29. I reserve the right to supplement this declaration as forensic analysis of this investigation continues.

30. I declare under penalty of perjury under the laws of the United States that the above declaration is true and correct.

Executed on August 26, 2026, in Staten Island, NY.

David J. Youssef

Managing Director, Head of Incident Response, Americas

FTI Consulting, Inc.

No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**EXHIBIT 6**

Kenton McDaniel declaration - September 1, 2026

ECF 211 - REDACTED

Complete redacted declaration, original pages 1-4; filed September 1, 2026.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL

Plaintiff / Counter-Defendant,

- against -

HENRY SCHEIN ONE, LLC,

Defendant / Counter-Plaintiff.

Case No. 1:25-cv-03246-MJM

**FILED UNDER SEAL**

**DECLARATION OF KENTON MCDANIEL**

I, Kenton McDaniel, declare under penalty of perjury:

1. I am the Chief Information Security Officer (CISO) at Defendant/Counter-Plaintiff Henry Schein One, LLC ("HSOne"). I submit this declaration to bring to the Court's attention the information described below. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and if asked to testify as to these facts, I would be competent to do so.

2. I submit this declaration to present new evidence, uncovered in the last week, that Plaintiff/Counter-Defendant National Electronic Attachment, Inc., d/b/a Vyne Dental's ("Vyne") software harvesting HSOne data is causing issues with Dentrix upgrades that are preventing Dentrix from running completely. This Declaration also highlights the concrete harm Vyne's RPA scheme will cause HSOne.

**Vyne Is Preventing Dentrix Installation Using a Misappropriated Dentrix Installation on Vyne's Systems.**

3. HSOne recently issued an update to Dentrix version 26.15.3 to upgrade its Faircom

configuration to improve performance of Dentrix. The update was not a security update. As part of this update, it required that the Dentrix installer remove stale Faircom working files from the protected database folder so that Faircom can rebuild cleanly, as well as deleting all top-level files in that folder except three keep-files required for rebuild parity. This update also requires that a configuration file called ctsrvr.set be reverted to a previous version and another file called ctsrvr.cfg be updated.

4. These changes are not related to authentication, authorization, encryption, or logging. They are performance changes to help Dentrix take better advantage of local resources.

5. HSOne encountered 158 unexpected failures when updating Dentrix to version 26.15.3.

6. HSOne analyzed telemetry regarding the failed updates to determine if the failures were the result of Vyne software. One serial number was not parseable and another forty-four serial numbers contained no telemetry present.

7. HSOne analyzed the telemetry for the remaining 113 failed updates by looking at whether any installed application, vendor, or print driver on the "Insecure App Details" sheet contained "Vyne." This captures Vyne Sync, Vyne Dental Plugin, Vyne Trellis Core, and applications published by Vyne (which includes PMS Dental Plugin, Remote Lite, Screen Capture Utility, and Claim Sync).

8. HSOne determined that 43 of the failed updates (27.2%) were for customers who had installed Vyne software. HSOne's investigation shows that the presence of Vyne on the machine caused Dentrix to fail when HSOne issued its performance update to its system, due to Vyne's unauthorized interactions with HSOne's configuration files.

9. There could be more customers impacted by Vyne's unauthorized integration with Dentrix causing the upgrade to result in Dentrix being completely unusable, due to the lack of available telemetry on over 44 other systems with failed updates.

**Vyne's Interference With Updates Will Cause HSOne Harm.**

10. [redacted]

11. [redacted]

12. [redacted]

13. From the customer perspective, this risks being an HSOne failure and will lead to loss of confidence and increased support burden. HSOne has already received numerous customer complaints and expects to receive orders of magnitude more.

14. [redacted]

[redacted]

| [redacted] | [redacted] |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

15. I declare under penalty of perjury of the laws of the United States that the above Declaration is true and correct.

Executed on this September 1, 2026, in Highland, Utah.



Kenton McDaniel

No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**EXHIBIT 7**

February 10, 2026 evidentiary hearing transcript

ECF 132

Original transcript pages 1, 181-183, and 198 (reporter certificate); filed February 24, 2026.

**EXCERPTS**

Original page and line numbers preserved.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL,
Plaintiff,

vs.

HENRY SCHEIN ONE, LLC,
Defendant.

CIVIL CASE NO. 1:25-cv-03246-MJM

TUESDAY, FEBRUARY 10, 2026
Courtroom 5C
Baltimore, Maryland

TRANSCRIPT OF PROCEEDINGS
EVIDENTIARY HEARING - VOL. I
BEFORE THE HONORABLE MATTHEW J. MADDOX

For the Plaintiff:

Vincent Levy, Esquire
Charlotte Baigent, Esquire
James Campbell, Esquire
Torrell E. Mills, Esquire
Holwell Shuster & Goldberg, LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017

Kristen Nichole Nesbitt, Esquire
Goodell DeVries Leech and Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202

For the Defendant:

Michael Burshteyn, Esquire
Marcelo Barros, Esquire
Jennifer C. Bartlett, Esquire
Shirin Afsous, Esquire
Brad M. Rostolsky, Esquire
Sydney Parks, Esquire
Greenberg Traurig, P.A.
101 Second Street, Suite 2200
San Francisco, CA 94105

(Computer-aided Transcription of Stenotype Notes)
Reported by: Amanda L. Longmore, RPR, CRR, FCRR
Federal Official Court Reporter

**Q.** And the customers you've lost, do you know that all of those customer losses are due to the dispute with Henry Schein One?

**A.** No, they definitely aren't. We churned customers well before -- I mean, all software companies churn customers. And I think in the Mockingbird tracker, I think somewhere around 130 or so of those accounts specifically reference this. The vast majority of them didn't say anything. No, I'm just canceling. I mean, generally speaking when I call to cancel and someone says, oh, what's going on, I think they're trying to save me, and I say don't worry about it, I'm just canceling, that happens here frequently.

**Q.** Okay. And so 100 customers have told you they're canceling and your system tracked that as related to the dispute and that's since when?

**A.** We started tracking when we -- I believe in March when we first saw the first communication. I think the customers that cited the Dentrix situation specifically was around 150, and then we're tracking all others.

**Q.** And do you think that will be constant so it will be around 150 every 11 months? Is that --

MS. NESBITT: Can I put an objection for speculation at this point? He's estimated about as much as he can, it sounds like.

THE COURT: Sustained.

BY MR. BURSHTEYN:

**Q.** Let me ask you this. Do you know if your team at Vyne is projecting these churn losses going forward?

**A.** Yes. We have a forecast for this year that assumes this will continue.

**Q.** Okay. And so there's some specific number, you may not have it, but it exists at Vyne?

**A.** It's a run-rate number, yeah. So we take the -- you know, call it the trailing three or six months and we run it out, unless we see something that's changing the trajectory of those numbers.

**Q.** And is that something you report up to the board?

**A.** Yes, as part of our monthly financial book.

**Q.** Do you happen to have a sense of that projection as we sit today?

**A.** I do not, no.

**Q.** Okay. And so you testified that when there were security measures implemented, your team at Vyne developed alternative ways to continue servicing Vyne's customers, in your words, right?

**A.** Yes. Yes.

**Q.** And is it fair to say that Vyne will continue to do that, will continue to develop alternative technical measures in response to any additional interruptions in what Vyne is doing now?

A. Yeah. The core of our product offering is the automation of Revenue Cycle Management and that requires interoperability and integration. And so certainly we're going to comply with whatever the Court orders here, but we'll continue to develop methods to add value to our platform.
Q. Let's say the -- putting aside the Court and what the Court might order, just if things just continue, is it true that Vyne would continue to develop its own alternative methods of access to Dentrix?
A. Yes.
Q. Has there been any limitation provided by you to Vyne's team on what those methods can do or be?
A. I don't provide that type of direction to our technology team. I rely on the Chief Technology Officer and those that are experts in technology to make those decisions. Certainly we have to stay in compliance with all of our certifications and the laws of the land.
Q. When you were describing Vyne's interoperations with Dentrix in your testimony earlier, you called it a "printer utility"; is that right?
A. That's -- yeah. Print driver, print capture, print utility, they are different in some respects, but it's probably worth differentiating if you'd like.
Q. So do you understand the phrase "print driver" to be distinct from the phrase "print utility"?

Mr. Levy just said?

MR. BURSHTEYN: That's what we're trying to do. I think I've expressed my prior experiences before.

THE COURT: Yeah.

MR. LEVY: We'll confer about timing.

THE COURT: It'd be great if I could have a witness list. I'm not sure if you have that typed up now, but if you could bring one tomorrow morning for each party, I'd appreciate it.

MR. BURSHTEYN: Absolutely, Your Honor. Thank you.

MR. LEVY: Thank you.

THE COURT: All right. Thank you. I'll see you tomorrow morning.

(The proceedings concluded at 5:06 p.m., to be reconvened at 9:30 a.m. on Wednesday, February 11, 2026.)

CERTIFICATE OF OFFICIAL REPORTER

I, Amanda L. Longmore, Registered Professional Reporter and Federal Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 17th day of February 2026
-S-

AMANDA L. LONGMORE, RPR, CRR, FCRR
FEDERAL OFFICIAL COURT REPORTER

No. 26-2085 (L)
(consolidated with No. 26-2196)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL,
Plaintiff-Appellant/Cross-Appellee,

v.

HENRY SCHEIN ONE, LLC,
Defendant-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**EXHIBIT 8**

HSOne post-hearing memorandum - public redacted version

ECF 187

Title page and original pages 27-31, including the signature page; public redacted version filed June 3, 2026.

**EXCERPTS**
Original page numbers preserved.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL

Plaintiff/Counter-Defendant,

- against –

HENRY SCHEIN ONE, LLC,

Defendant/Counter-Plaintiff.

**Case No. 1:25-cv-03246-MJM**

**HENRY SCHEIN ONE, LLC'S POST-HEARING MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO VYNE'S MOTION FOR PRELIMINARY INJUNCTION**

clearinghouse integration, Vyne needs nothing more. The sticking point is Vyne's desire not to pay commercially reasonable licensing fees and to retain the ability to use Robotic Process Automation and have unfettered database write-back access. (SR 193:15-195:14.) This is not something the Cures Act protects.

To try to save its unfair competition claim, Vyne argues that it can otherwise prevail under Maryland law. HSOne's conduct in trying to secure its software and communicating that to its customers cannot constitute unfair competition. (Opp. to Vyne's PI (ECF 38) 10-24.) HSOne's statements were not even focused on Vyne, which came out in the hearing. (BW 374:18-20; 381:2-24; HSOne 69; PX008.) HSOne's security decisions are not about Vyne—they are about cutting off unauthorized access and securing PHI altogether. (KM 594:15-25; 613:25-614:6; GR 582:3-13; 585:15-21; BW 374:11-20.) Any reasonable security team would take the same action. (DY 507:18-508:6.) HSOne's security updates aimed at stopping hostile printers is in line with HSOne's goal of deprecating all print drivers. (KM 624:17-23; BW 375:8-16.) Contrary to Vyne's claims, HSOne's security protocols are not about competing. (KM 613:1-5; GR 563:12-15.) Regardless, HSOne promoting a competing product that might be better than Vyne's does not amount to unfair competition.

### B. Vyne will not prevail on its tortious interference claims.

Vyne falls short of demonstrating a likelihood of success on its tortious interference with contractual relations claim.[12] (Opp. to Vyne's PI (ECF 38) 24-26; HSOne's MTD (ECF 86) 18-22.) Vyne fails to make a colorable argument that HSOne "intentionally interfered through improper means." *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994). VyneSync,

[12] Vyne seemingly abandons seeking injunctive relief on its interference with prospective relations claim (Vyne's PI (ECF 6-1) 18) and instead relies only on the elements for tortious interference with contractual relations only. (Vyne's PH-Br. 26.)

the agent connecting *directly* to the Dentrix database, operates outside authorized channels and Vyne admits as much. (SR 186:7-25; 105:6-9.) Vyne's CEO also acknowledges that unauthorized direct database connections and API workarounds present real security "risks" and "system performance issues." (SR 223:15-25.) HSOne's alleged actions were, accordingly, justified responses to protect its data and systems. On cross-examination Vyne's CEO admitted every statement he claimed was false (about manual attachment, typing in codes) was actually not false. (PX033; SR 244:24-247:22, 246:14-247:11.)

Vyne's terms merely authorize Vyne to send *requests* for data and interoperability. (SR, 164:1-21 (stating that customer "agree to authorize Vyne to make interoperability requests from third parties," not to hack).) Vyne claims it lost some customers, but only a small portion of those were alleged attributed to HSOne (SR, 181:16-19.) The customer complaints that Vyne points to relate primarily to its own practices (PX300.)

## II. VYNE FAILED TO DEMONSTRATE IRREPARABLE HARM.

Vyne's contention that it faces existential harm is belied by the clear availability of alternative solutions offered by HSOne. Vyne's own admissions confirm that HSOne made available both participation in its API program and a clearinghouse agreement, which would have afforded Vyne back-end write-back access to HSOne's database. (SR 133:8-15, 188:6-12, 193:15-23, 235:1-11; *see also* GR 545:7-16, 590:7-19; BW 386:11-387:5, 402:7-13.) Critically, Vyne retains the ability to facilitate information exchange and avoid manual intervention **without** reliance on the printer driver, further undermining any claim of a "complete business interruption." (SR 101:14-23; BW 389:2-17.) [redacted] but will not agree to one with HSOne, preferring to continue its unfettered access.

Vyne's purported injuries are quantifiable and self-inflicted. Vyne's CEO expressly testified here that the company regularly projects churn losses and maintains "a forecast" for the

current year. (SR 182:2-16.) He further confirmed that the financial impact of losing access to the HSOne systems is readily "calculable." (SR 177:8-13.)

Vyne is a substantial, well-capitalized enterprise with different lines of business beyond claims submission. (PX063; PX064.) Mr. Roberts testified that a $1 billion valuation was "a fair comparable" to Vyne. (SR 210:9-18.) Mr. Roberts admitted that customer attrition happened "well before" the dispute with HSOne. (SR 181:1-12.) Churn is a normal occurrence in the software industry: "all software companies churn customers." (SR 181:4-12.) Although Vyne claims to have lost 500 customers, Mr. Roberts testified that only approximately 150 of those losses were specifically attributed to the dispute with HSOne, while the vast majority of cancellations were unrelated and simply reflected routine churn. (*Id.*)

Vyne alleges that HSOne disseminated false statements, but its CEO could not identify a single false statement made by HSOne; instead, he acknowledged that the statements at issue constituted nothing more than "marketing rhetoric." (SR 246:14-25.) Vyne also can issue any corrective statement it wishes to and has conducted its own marketing campaign against HSOne. There is no reputational harm caused by HSOne, only by Vyne—to HSOne and to itself.

## III. THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH IN FAVOR OF HSONE, NOT VYNE.

Granting Vyne's PI would require HSOne to open its software systems that processes highly confidential, sensitive patient data to any unauthorized access, putting patients, HSOne's customers, and HSOne at extreme risk. Conversely, Vyne has multiple options at its disposal. It can make what it needs clear and join HSOne's API program. (HSOne 256.) It can work with HSOne on a different integration, which HSOne has done with other companies in the past, as a clearinghouse. (GR 590:7-19.) The public interest also weighs heavily in HSOne's favor. Maryland and federal law unequivocally prioritize the protection of PHI, and the Cures Act

expressly contemplates exception where security is at risk. The risk that other developers might adopt similarly reckless approaches to Vyne (misappropriating credentials and bypassing system checks) poses a clear threat to patient privacy and data confidentiality, integrity and availability—particularly where, as here, Vyne is sharing information with them. (JN 325:1-326:14.)

**CONCLUSION**

HSOne's PI request is based on clear undisputed facts of database hacking that creates existential security risk and tangible ongoing database corruption and reputational harm. Vyne's PI request is based on a tortured reading of statutory and case law precedent and factual disputes that widened at the hearing. HSOne is not subject to the Cures Act and, even if it was, its reasonable security measures and willingness to deal with Vyne defeats Vyne's claim. HSOne has done nothing but protect its software systems, its customers, and their patients by taking reasonable security measures and trying to help Vyne integrate lawfully. Vyne has shown that its true goal is unfettered read and write access to HSOne's software systems by any means necessary to avoid payment. Absent Court intervention, Vyne will continue escalating its campaign of unauthorized access while the case proceeds.

Dated: March 3, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Michael Burshteyn*

Michael Burshteyn *(pro hac vice)*
Marcelo Barros *(pro hac vice)*
Jennifer Bartlett *(pro hac vice)*
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Defendant/Counter-Plaintiff Henry Schein One, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of March, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael Burshteyn*
Michael Burshteyn