**No. 26-2085**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A VYNE DENTAL,

*Plaintiff-Appellant*,

v.

HENRY SCHEIN ONE, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court for the
District of Maryland
No. 1:25-cv-03246-MJM
Hon. Matthew James Maddox

# PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF ITS MOTION FOR STAY PENDING APPEAL

K. Nichole Nesbitt
Derek M. Stikeleather
GOODELL DEVRIES LEECH
& DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
410-783-4000
dstikeleather@gdldlaw.com
knn@gdldlaw.com

Vincent Levy
*Counsel of Record*
Jack L. Millman
Daniel Fahrenthold
Jessica Marder-Spiro
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Ave, 14th Floor
New York, New York
646-837-5151
vlevy@hsgllp.com

*COUNSEL FOR PLAINTIFF-APPELLANT*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ARGUMENT ........................................................................................ 3

I. HSOne Fails to Refute Vyne's Strong Showing on the Merits. ............ 3

A. Vyne did not access any computer without authorization. ......... 3

B. Vyne's sale of software is not unlawful access. ......................... 7

C. Vyne did not damage any unlawfully accessed computer. ......... 9

II. Vyne Will Suffer Irreparable Harm Absent a Stay. ............................... 9

III. The Remaining Equitable Factors Support Vyne. ............................... 11

IV. The Court Should Enter an Immediate Stay or Expedite. ................... 12

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
172 F.4th 361 (4th Cir. 2026) ........................................................ 3

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*,
184 F.4th 1083 (9th Cir. 2026) ........................................................ passim

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ........................................................ 3

*LVRC Holdings LLC v. Brekka,*
581 F.3d 1127 (9th Cir. 2009) ........................................................ 6

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) ........................................................ 6

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
131 F.4th 205 (4th Cir. 2025) ........................................................ 10, 11

*Salomon Ludwin, LLC v. Winters*,
150 F.4th 268 (4th Cir. 2025) ........................................................ 10

*United Transp. Union v. State Bar of Mich.*,
401 U.S. 576 (1971) ........................................................ 8

*Van Buren v. United States*,
593 U.S. 374 (2021) ........................................................ 3, 6

**Statutes**

18 U.S.C. § 1030 ........................................................ 1, 5

## INTRODUCTION

As the district court saw it, applying the Computer Fraud and Abuse Act ("CFAA") to Vyne's conduct presents a "difficult legal question." The CFAA criminalizes "access" to a "protected computer" "without authorization" that causes "damage and loss." 18 U.S.C. § 1030(a)(5)(C). Does that proscription cover the sale and distribution of software to customers who voluntarily use it on their own computers to access their own data there, on the ground that another software publisher controls separate software on those computers that syncs with its cloud servers? *See* Stay-Op. 5.[1] The answer to that question is clearly no, for multiple reasons. There is no "access" to the cloud servers; the CFAA does not impose secondary civil liability for another's "access"; and there is no resulting "damage."

And before this case, the district court acknowledged, no court anywhere in the country had ever found liability on facts remotely resembling these, *id.*—except one, in a case the Ninth Circuit promptly stayed and then reversed. *Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083, 1088, 1094 (9th Cir. 2026). The prospect of this Court splitting with the Ninth Circuit is remote.

Unable to meaningfully defend the district court's novel theory of "access" based on syncing, or to reconcile that theory with *Perplexity*, HSOne resorts to

[1] Defined terms have the same meaning as in Vyne's Motion for a Stay Pending Appeal ("Mot.").

misdirection and obfuscation. HSOne emphasizes the ways that Vyne's software, Vyne Trellis, operates *on local dental practices' computers* and interacts with software licensed by HSOne (Dentrix) *on those same computers*, branding this "hacking." Opposition ("Opp'n") at 1, 3-4, 9. This was not "hacking" of HSOne's servers under the CFAA. None of this alleged conduct occurred on HSOne's cloud servers—the computer that was supposedly "accessed" unlawfully. Nor did the district court find that Vyne hacked *customers'* computers; the CFAA protects computers, not software, and Vyne's customers voluntarily installed Vyne Trellis.

The equities also favor Vyne. It was acknowledged below, and is not seriously contested here, that the injunction will greatly unsettle a five-year-old status quo, harm Vyne's customers, and cost Vyne their business, all to the benefit of HSOne, PI-Op. 91. HSOne's aggressive CFAA claim indeed came in the middle of a campaign to lure Vyne's customers under false pretenses, including by misrepresenting how Vyne Trellis operates. *Id.* at 74-76.

Vyne's injuries are unquestionably irreparable, but a stay will impose no injury upon HSOne. HSOne filed its injunction request some eleven months ago. This Court should take the time to consider the merits of HSOne's request to split with the Ninth Circuit. This Court should stay the injunction pending appeal.

# ARGUMENT

## I. HSOne Fails to Refute Vyne's Strong Showing on the Merits.

When Vyne sought a stay below, HSOne sought to retroactively justify the injunction with new declarations pressing new facts. The district court told HSOne it "can't consider these new affidavits" in addressing the merits of Vyne's appeal. Dkt. 217 at 11:2-5. Nor would they cure the district court's errors, as they address different software functions.

Undeterred, HSOne now asks this Court to consider the new "evidence." *E.g.*, Opp'n 2 nn.4-5, 18-19. But this Court's review on the merits must be based "on the record before the district court when it entered th[e] preliminary injunction." *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 374 (4th Cir. 2026). Stripped of HSOne's misdirection and new factual assertions, HSOne offers no persuasive response to Vyne's strong showing on the merits, and provides no good reason why this Court should split with the Ninth Circuit.

### A. Vyne did not access any computer without authorization.

The CFAA protects computers, not software, and it prohibits "the act of entering a computer system itself." *Van Buren v. United States*, 593 U.S. 374, 388 & n.6 (2021). It criminalizes "forced entry" or "breaking and entering" into a computer. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022).

Vyne licenses Vyne Trellis to dental practices, who install it on their own computers. The district court did *not* find a likely CFAA violation based on "access" to those computers. Instead, it premised liability on "access" to HSOne's cloud servers. But Vyne Trellis was not deployed on HSOne's servers, and there was no finding that Vyne Trellis read data from or wrote data directly to those computers.

The court below still held that Vyne Trellis likely "accessed" HSOne's servers because of a Dentrix background synchronization process that connected HSOne's cloud servers to local Dentrix systems on customer computers. As Vyne explained, Mot. at 11, HSOne controls this synchronization process, not Vyne. PI-Op. 80. And, as is undisputed here, none of the data that Vyne Trellis writes locally is stored on or synchronized to HSOne's cloud servers. Dkt. 163 at 79:16-19 ("[O]ur Cloud doesn't have, like, a copy of every Dentrix database and all the patient records. It is—those stay on prem[ises].").

**1.** HSOne's brief does not meaningfully attempt to defend the district court's syncing theory of access. It does not explain how Vyne Trellis could "access" HSOne's cloud servers when HSOne was the one that controlled communications between its servers and the dentists' computers where Vyne Trellis was installed. Nor does HSOne cite any case in support. There is none.

HSOne now appears to be arguing that its cloud servers and customers' computers collectively form a single computer system, so access to one computer is *ipso*

*facto* access to the other. Opp'n 8 (arguing that "separat[ing] the local database from the cloud ignores the connected system the court found [Vyne] accessed"). No court has ever endorsed such a theory, including the court below; its opinion consistently distinguishes between HSOne's cloud servers and customers' computers. PI-Op. 77-78. And HSOne does not explain how this single-system concept would admit of any limiting principle, as it would seem to make a computer inseparably "connected" to every other computer synchronizing data to or from that computer over the internet. *See* Mot. 13 (explaining that the district court's CFAA theory would sweep in other programs that "synchronize with local installations," including "Microsoft's ubiquitous OneDrive").

Nor does HSOne dispute that its theory is inconsistent with *Perplexity*: Perplexity's Assistant accessed data stored only on Amazon's servers at Perplexity's direction. 184 F.4th at 1091. Even so, there was no "access" to Amazon's servers by Perplexity, because Perplexity communicated only with software licensed to customers and operating on their computers. *Id.*

**2.** Unable to support the district court's decision on its own terms, HSOne pivots to a theory it pressed below but that the district court rejected—that Vyne Trellis unlawfully accessed HSOne's software on customer computers. Opp'n 9-10.

The statute on which the preliminary injunction was premised criminalizes unauthorized access to computers—not software. 18 U.S.C. § 1030(a)(5)(C).

"[W]ithout authorization" refers to "outside hackers" who "access a computer without any permission at all." *Van Buren*, 593 U.S. at 389-90 (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)). The person accessing a computer must have "no rights, limited or otherwise, to access the computer in question." *Brekka*, 581 F.3d at 1133. Presumably, that is the reason why the district court did not endorse HSOne's theory: Vyne's customers voluntarily install and operate Vyne Trellis on their own computers, and, through Vyne's terms of service, customers "grant[] Vyne access" to "data stored on platforms and systems provided by a third party but controlled by a customer," PI-Op. 79—*i.e.*, their local Dentrix databases on their own computers.

For the same reason, there is no substance to HSOne's assertion that Vyne Trellis purportedly "extract[ed]" "concealed administrator credentials" on local customer computers. Opp'n 10 (citing Stay-Op. 5). This is a description of how Vyne Trellis interfaces with software that customers install and use on their computers. Again, Congress did not protect software, or base liability on the "breach of a technological barrier"; Congress required showing unauthorized "access" to a computer. *E.g.*, *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 830-32 (N.D. Cal. 2014) (explaining that the CFAA does not require technical circumvention and collecting cases). And there was no finding of unauthorized access to dentists' computers where Vyne Trellis did all the reading and writing of data.

In short, HSOne was required to show unauthorized "access." The district court did not find that access to dentists' computers was unauthorized, and its theory of access to HSOne's cloud fails, because it is not enough to say that HSOne deployed a synchronization process to permit "Dentrix databases [on dentists' computers to] receive updates from HSOne and share information to HSOne." Opp'n 8-9.

**B. Vyne's sale of software is not unlawful access.**

As Vyne explained, Mot. 13-16, the district court's CFAA-liability finding fails for the additional reason that it is premised on (and enjoins) the *sale* and *distribution* of Vyne's software, rather than "access" under the CFAA. The CFAA "contemplates access by a person," not a software program, and it does not impose secondary liability; thus, selling software is not criminalized, and only the person using software (if anyone) can "access" a computer. *Perplexity*, 184 F.4th at 1091.

There is no difference between what the court below deemed criminal and what *Perplexity* held was inadequate. Arguing otherwise, HSOne misreads *Perplexity* in the same way the district court did, Opp'n 13; the software there *did* take instruction from Perplexity, and Perplexity exercised *more* control over the software it licensed than Vyne does. Mot. 15-16. And no case parts with *Perplexity*.

In the stay order, the district court stated that it "did not find that Vyne's selling of software constitutes 'access' within the meaning of the CFAA."[2] Stay-Op. 3. Vyne did nothing but sell and distribute software to customers. Plainly that is what the district court deemed to be "access" (*i.e.*, what it called "intentional deployment" in its stay decision, Stay-Op. 3). And if the enjoined sales are *not* unlawful "access," that would be a basis to reverse too. *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 584 (1971) ("An injunction can issue only after the plaintiff has established that the conduct sought to be enjoined is illegal.").

The district court also justified enjoining the sale of software on the ground that, although "[t]he individual customer may install the software," Vyne's "software enables a level of access beyond what the customer is capable of through use of her own [Dentrix] credentials." Stay-Op. 4. The fact that Vyne sold a product that allowed customers to do things they otherwise could not do is irrelevant. This will be true of any software, including the Assistant in *Perplexity*; why else would customers buy software? The point remains that the district court's injunction is based on the secondary-liability theory that *Perplexity* rejected: that "help[ing]" customers "to carry out specific acts" on their computers, or even the server of a third party, is not criminal "access" under the CFAA. 184 F.4th at 1091.

[2] At the same time, the district court said that it "found that Vyne accesses the Dentrix system through intentional deployment of software functions," Stay-Op. 3, which would seem to mean software sales.

### C. Vyne did not damage any unlawfully accessed computer.

Lastly, Vyne explained that the district court's finding of likely damage to a protected computer failed to support the injunction because the only "damage" found below related to access to local computers, not to HSOne's servers. Mot. 16-17.

Again, HSOne attempts to conflate its servers with customer computers, asserting that Vyne accessed a "connected architecture" that the district court never found existed. Opp'n 11-12. What the district court did find was that "Vyne likely impaired the integrity and availability of data stored *in the Dentrix system*," *i.e.*, on customers' computers. PI-Op. 82. And any damage the court found was premised on "Vyne's practice of writing back to the ledger *in the Dentrix database*," *id.* 82-83, which occurs on local computers. Nothing connects the data that was supposedly transferred to HSOne's cloud servers (which was never identified) to any statutory "damages." HSOne's only (non-)answer is to insist that the "causal sequence" that is not explained in the district court's opinion was "technical." Opp'n 12.

## II. Vyne Will Suffer Irreparable Harm Absent a Stay.

Vyne explained that a stay is required because it will be impossible to return Vyne to the pre-injunction status quo. Mot. 17-19. Even if Vyne obtains an eventual reversal, Vyne will have suffered significant harm to its customer base and reputation. The district court acknowledged this, recognizing the injunction would require Vyne to discontinue services it offered to customers for years, and that this may

"harm . . . Vyne's legitimate business." PI-Op. 91. There are approximately 1,400 dental practices across the country that would be affected by the injunction, and if these customers lose the services Vyne Trellis provides, they are likely to go elsewhere—namely to Vyne's primary competitor, HSOne. Mot. 18.

HSOne responds with classic whataboutism, pointing out the court enjoined HSOne from attacking Vyne's printer driver. Opp'n 15-16. All its customers use this print-driver function, but it is distinct from the database-integration methods at issue in Vyne's appeal. *See* PI-Op. 91 n.13 (recognizing that "Vyne's printer driver functions independently" from the Vyne software the court enjoined). That the court below protected this printer-driver function says nothing about the effect of the injunction on the 1,400 customers who rely on separate enjoined functions. Opp'n 15-16.

Nor is Vyne required to show "loss of its business." Opp'n 16. The erosion of Vyne's customer base, especially to a competitor, is irreparable harm, as is the harm to Vyne's reputation and goodwill. *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 239 (4th Cir. 2025). These harms are irreparable *because* they cannot be fully ascertained or compensated. *Salomon Ludwin, LLC v. Winters*, 150 F.4th 268, 278 n.7 (4th Cir. 2025).

### III. The Remaining Equitable Factors Support Vyne.

HSOne asserts it stands to suffer a "catastrophic data breach" absent an injunction. Opp'n 17. This Court need not accept such unsubstantiated scare tactics. *Real Time*, 131 F.4th at 240; *Perplexity*, 184 F.4th at 1093. HSOne indeed does not dispute that eleven months passed since HSOne moved for a preliminary injunction, or that Vyne's software has functioned in essentially the same way for five years. Mot. 19-20. In that time, there has been "no evidence that Vyne suffered or caused any data security breach[.]" PI-Op. 75. The district court took time to consider the injunction against Vyne, and so should this Court.

HSOne next asserts the public is harmed by "hacking." Opp'n 20. But the "hacking" claim here deviates far from what Congress proscribed, and HSOne ignores the strong federal policy supporting dental practices' access to their own data, reflected in the Cures Act. Mot. 20. HSOne also ignores that the injunction will disrupt workflows of 1,400 dental practices, likely because HSOne hopes to capture their business. Nor does HSOne acknowledge that the injunction would eliminate customer choice and accomplish precisely the aim of HSOne's campaign—to "interfer[e] with Vyne's 'ability to compete on the merits of its product.'" PI-Op. 75 (alterations accepted).

## IV. The Court Should Enter an Immediate Stay or Expedite.

Lastly, HSOne does not seriously rebut Vyne's request for an immediate administrative stay for this Court to consider the parties' submissions before September 24 (should the Court need the time). And HSOne's opposition to expedition makes no sense: Vyne has consistently been willing to expedite the appeal to limit the duration of any stay, *contra* Opp'n 21-22, though Vyne thinks HSOne's concerns are unfounded. HSOne has categorically opposed any expedition.

Date: September 22, 2026

Respectfully submitted,

*/s/ Vincent Levy*

K. Nichole Nesbitt
Derek M. Stikeleather
GOODELL DEVRIES LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
410-783-4000
dstikeleather@gdldlaw.com
knn@gdldlaw.com

Vincent Levy
*Counsel of Record*
Jack L. Millman
Daniel Fahrenthold
Jessica Marder-Spiro
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Ave, 14th Floor
New York, New York
646-837-5151
vlevy@hsgllp.com

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,600 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

DATED: New York, New York
September 22, 2026

By: */s/ Vincent Levy*

Vincent Levy