No. 26-2085 (L)
(consolidated with No. 26-2196)

# United States Court of Appeals
# for the
# Fourth Circuit

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL
*Plaintiff-Appellant/Cross-Appellee*

v.

HENRY SCHEIN ONE, LLC
*Defendant-Appellee/Cross-Appellant*

On Appeal from the United States District Court
for the District of Maryland
No. 1:25-cv-03246-MJM (Hon. Matthew J. Maddox)

**PRINCIPAL AND RESPONSE BRIEF OF**
**HENRY SCHEIN ONE, LLC**

Michael Burshteyn
*Lead Counsel of Record*
Jonathan Williamson
BURSHTEYN POLIN LLP
1212 Broadway Plaza, Suite 2100
Walnut Creek, CA 94596
(925) 238-3119
mike@burshteynpolin.com
jon@burshteynpolin.com

Jennifer Bartlett
GREENBERG TRAURIG, LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 665-3729
Jennifer.Bartlett@gtlaw.com

*Counsel for Henry Schein One, LLC*

# TABLE OF CONTENTS


JURISDICTIONAL STATEMENT ....................................................................1

INTRODUCTION ....................................................................................2

STATEMENT OF ISSUES ........................................................................8

STATEMENT OF THE CASE.....................................................................9

I. FACTUAL BACKGROUND....................................................................9

A. HSOne's Dentrix database is a secured system of record for dental practices nationwide. .......................................................................9

B. Vyne hacks into protected computers that run Dentrix through software that Vyne builds, deploys, and operates. ..........................................11

C. Vyne misappropriates at least four secret codes from the protected computers running Dentrix, without the awareness of its customers, to maintain Vyne's unauthorized access. ..........................................13

D. Vyne's unauthorized access corrupts data, disrupts service, circumvents HSOne's security controls, and imposes significant costs to HSOne. ..........16

E. Vyne refuses to stop its unauthorized hack without court intervention. .......21

II. PROCEDURAL BACKGROUND .........................................................21

A. The district court developed and tested an extensive evidentiary record to determine whether to enjoin Vyne's hacks. ..........................................21

B. After a multi-day hearing, the district court granted HSOne's preliminary injunction against Vyne, stopping Vyne's unauthorized write-back access to Dentrix, while permitting what Vyne falsely described as a printer driver to keep operating..........................................22

C. After the district court found Vyne unlikely to prevail on its appeal, this Court stayed the injunction pending the appeal's determination. ................23

SUMMARY OF ARGUMENT .....................................................................25

STANDARD OF REVIEW ........................................................................28

ARGUMENT ..........................................................................................29

I. The district court correctly enjoined Vyne's unauthorized access because Vyne is violating the CFAA. ........................................................29

A. The record establishes that HSOne is likely to succeed on its CFAA claim.........................................................................................29

1. Vyne is itself violating the CFAA through its own conduct, without its customers' knowledge. ....29

2. Vyne is accessing protected computers at dental offices and in HSOne's cloud without authorization. ....31

a. The record supports a finding that Vyne's access to protected computers at dental offices violates the CFAA....31

b. The district court properly concluded that Vyne's unauthorized access to HSOne's cloud infrastructure likely violates the CFAA. ....33

c. *Perplexity* supports the injunction against Vyne....35

3. Vyne's customers do not consent to Vyne's hacks and cannot shield it from CFAA liability. ....37

4. Vyne's unauthorized access causes HSOne significant statutory damage and loss....39

B. Vyne's escalating hacks irreparably harm HSOne absent an injunction. ....43

C. The balance of equities lean heavily in favor of HSOne's injunction against Vyne on the current record....48

D. As to public interest, the district court correctly found that secure patient records and lawful competition favor an injunction....51

E. HSOne's DMCA and trespass claims independently support the injunction against Vyne. ....52

II. To the extent the district court made any error, it was in issuing an injunction against HSOne that permits some of Vyne's unauthorized access. ....54

A. The district court's injunction against HSOne is not supported by its unfair competition findings, which relate to speech....54

1. Findings related to HSOne's communications do not support an injunction related to Vyne's computer access....55

2. The injunction incorrectly creates a doctrine of squatters' rights for Vyne to access computers without authorization. ....58

3. The injunction against HSOne, as drafted, is too vague. ....59

B. The CFAA-based injunction against Vyne did not go far enough....62

1. Vyne's unauthorized access violates the CFAA, both through reading and writing....63

2. Vyne violates another section of the CFAA, beyond the one the district court considered, which prohibits obtaining information from read-access. .......... 65

3. Vyne's false characterization of a portion of its hacking software as a "printer driver" should not save it from an injunction as to the overall system. .......... 66

C. The district court gave Vyne too much credit for speculative risk to its business from an injunction, which Vyne unlawfully props up through its hacks .......... 68

CONCLUSION .......... 68

STATEMENT REGARDING ORAL ARGUMENT .......... 70

CERTIFICATE OF COMPLIANCE .......... 72

CERTIFICATE OF SERVICE .......... 73

# TABLE OF AUTHORITIES

## Cases

*2311 Racing LLC v. National Association for Stock Car Auto Racing, LLC*, 139 F.4th 404 (4th Cir. 2025) ....................59

*A Helping Hand, LLC v. Baltimore County, MD*, 355 Fed.Appx. 773 (4th Cir. 2009) ....................54

*A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009) ...........42

*Abu v. Dickson*, 107 F.4th 508 (6th Cir. 2024)....................37

*Advanced Resources Intern., Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327 (4th Cir. 1993) ....................45

*Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355 (4th Cir. 2012).........58

*Amazon.com Services, LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026) .................... 4, 5, 7, 14, 24, 25, 35, 37, 69

*AssociationVoice, Inc. v. AtHomeNet, Inc.*, 2011 WL 63508 (D. Colo. Jan. 6, 2011) ....................51

*Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019 (7th Cir. 2017) ................58

*Baltimore Bedding Corp. v. Moses*, 182 Md. 229, 34 A.2d 338 (1943) .................59

*Barber v. Thomas*, 560 U.S. 474 (2010)....................43

*Brightview Group, LP v. Teeters*, 441 F.Supp.3d 115 (D. Md. 2020) ............ 48, 68

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)....................31

*Cisco Systems, Inc. v. Doe I*, 609 U.S. 141 (2026)....................31

*dmarcian, Inc. v. DMARC Advisor BV*, 182 F.4th 289 (4th Cir. 2026)...................60

*dmarcian, Inc. v. dmarcian Europe BV*, 2021 WL 3561182 (W.D.N.C. Aug. 11, 2021) ....................61

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016)................37

*Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075 (7th Cir. 2016)....................40

*Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006) ....................31

*Google LLC v. Starovikov*, 2021 WL 6754263 (S.D.N.Y. Dec. 16, 2021) .............51

*Griggs–Ryan v. Smith*, 904 F.2d 112 (1st Cir.1990) ....................39

*hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180 (9th Cir. 2022) ................37

*In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003)..............................................39

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 1993) ......................................................................................................51

*Jensen v. Md. Cannabis Admin.*, 151 F.4th 169 (4th Cir. 2025) ............................28

*Kentuckians for Commonwealth Inc. v. Rivenburgh*, 317 F.3d 425 (4th Cir. 2003) ......................................................................................................55

*M-Edge Accessories LLC v. Amazon.com Inc.*, 2015 WL 403164 (D. Md. Jan. 29, 2015) ..................................................................................................59

*MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335 (4th Cir. 2001) .......................50

*Nassi v. Hatsis*, 525 P.3d 117 (Utah Ct. App. 2023) ............................................53

*National Wildlife Federation v. National Marine Fisheries Service*, 886 F.3d 803 (9th Cir. 2018)....................................................................................45

*NovelPoster v. Javitch Canfield Group*, 140 F.Supp.3d 954 (N.D. Cal. 2014) ......41

*NRA Group, LLC v. Durenleau*, 154 F.4th 153 (3d Cir. 2025) ..............................37

*Oce North America, Inc. v. MCS Services, Inc.*, 748 F.Supp.2d 481 (D. Md. 2010) ......................................................................................................32

*Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14 (4th Cir. 1997) ......................................................................................................54

*Paroline v. U.S.*, 572 U.S. 434 (2014) ....................................................................40

*PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011) .........55

*Philips Medical Systems Nederland B.V. v. TEC Holdings, Inc.*, 2023 WL 2064201 (W.D.N.C. Feb. 16, 2023) .........................................................32

*Philips Medical Systems Puerto Rico Inc. v. GIS Partners Corp.*, 203 F.Supp.3d 221 (D.P.R. 2016) ................................................................ 32, 63

*Phreesia, Inc. v. Certify Global, Inc.*, 2022 WL 911207 (D. Md. Mar. 29, 2022) ........................................................................................... 37, 38, 64

*Podium Corporation Inc. v. Chekkit Geolocation Services Inc.*, No. 2:20-cv-352-DB, 2020 WL 6940737 (D. Utah Nov. 25, 2020).....................................39

*Real Time Medical Systems, Inc. v. PointClickCare Technologies, Inc.*, 131 F.4th 205 (4th Cir. 2025) ............................................................ 21, 39, 47, 50

*Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268 (4th Cir. 2025).......... 28, 49, 52

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025) ....................31

*Spirits v. Ragghianti*, 2024 WL 3177773 (3d Cir. June 26, 2024) ....................41

*State Analysis, Inc. v. American Financial Services Assoc.*, 621 F.Supp.2d 309 (E.D. Va. 2009) ....................38

*Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F.Supp.3d 1068 (S.D. Cal. 2019) .................... 48, 52, 53, 68

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) .................... 32, 33

*U.S. v. Lanier*, 520 U.S. 259 (1997) ....................43

*U.S. v. Valle*, 807 F.3d 508 (2d Cir. 2015) ....................37

*United States v. Calonge*, 74 F.4th 31 (2d Cir. 2023) ....................41

*United States v. Eddings*, 161 F.4th 199 (3d Cir. 2025) ....................37

*United States v. Umeti*, 167 F.4th 687 (4th Cir. 2026) ....................42

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) ....................28

*Van Buren v. United States*, 593 U.S. 374 (2021) .................... 3, 32, 38, 40, 63, 68

*Vox Marketing Group v. Prodigy Promos*, 556 F.Supp.3d 1280 (D. Utah 2021)...31

*WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012)......38

*West Virginia Rivers Coalition, Inc. v. Chemours Company FC, LLC*, 178 F.4th 102 (4th Cir. 2026) .................... 44, 45

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ....................68

**Statutes**

17 U.S.C. § 1201(a) ....................53

17 U.S.C. § 1201(a)(1)(A) ....................52

17 U.S.C. § 1201(a)(3) ....................52

17 U.S.C. § 1203(b)(1) ....................53

18 U.S.C. § 1030(a)(2)(C) .................... 26, 32, 33, 40, 63, 64, 65, 66, 68

18 U.S.C. § 1030(a)(5)(C) .................... 6, 29, 40, 43, 63, 65

18 U.S.C. § 1030(c)(4)(A)(i)(I) ....................29

18 U.S.C. § 1030(e)(11) .................... 29, 42

18 U.S.C. § 1030(e)(6) ....................................................................................63
18 U.S.C. § 1030(e)(8) ....................................................................................29
18 U.S.C. § 1030(g) .............................................................................. 29, 33, 65
28 U.S.C. § 1292(a)(1) ......................................................................................1
28 U.S.C. § 1331 ..............................................................................................1
28 U.S.C. § 1367(a) ..........................................................................................1

**Other Authorities**

Fed. R. App. P. 10(a)(1) .................................................................................22
Fed. R. Civ. P. 65(d)(1) ...................................................................................59

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 over the federal claims of Henry Schein One, LLC ("HSOne") and National Electronic Attachment, Inc., d/b/a Vyne Dental ("Vyne") and supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related state-law claims.

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because these consolidated appeals challenge an interlocutory order granting in part and denying in part both parties' requests for preliminary injunctive relief.

## INTRODUCTION

The premise of Vyne's case is a plea for the courts to license its unauthorized hacking of HSOne's software systems. Vyne's goal is to avoid paying for authorized access, in contrast to dozens of other companies who integrate with and access HSOne's software systems with authorization.[1] Vyne performs its hacks by accessing a multitude of protected computers at dentists' offices and in HSOne's cloud-hosted environment, without authorization, as often as over a million times a day.[2] Vyne achieves this by misappropriating at least four secret credentials, three of which are hidden in HSOne's source code and one of which is unique to each HSOne customer.[3] Vyne then combines those four secrets into an administrative credential (not available to or used by customers) which Vyne uses to bypass HSOne's technical security measures—including HSOne's encryption.[4]

The district court declined Vyne's request to permit its hacking. In so doing, the court below found that Vyne's conduct is "akin to the 'outside hackers'" that the

---

[1] JA1047, JA1228, JA1293.

[2] JA77–81, JA2718–2719, JA2797–2798.

[3] The district court noted that Vyne's Chief Technology Officer, James Nix, "was previously employed by HSOne" and had served there "as a lead developer and chief architect" of technology used to transmit and synchronize data between local Dentrix databases and HSOne's cloud system. JA80. The court further noted that HSOne presented expert testimony that "credibly establishes that Vyne's method of decryption was obtained through either reverse engineering or insider knowledge, such as knowledge of HSOne's source code." JA81. *See also* JA2724–2726, JA2730.

[4] JA81, JA2885–2886.

Supreme Court observed violate the Computer Fraud and Abuse Act in its *Van Buren* decision.[5] Now Vyne asks this Court to bless its hacking and narrow the CFAA. Under Vyne's unprecedented theory, any developer of hacking software—even where they themselves misappropriate multiple hidden secret codes and operate the software from their own command center[6]—can hide behind their customers' purported consent.[7] Vyne's request runs counter to established precedent in this Circuit and every other circuit court that has analyzed the CFAA.

After a three-day hearing with seven witnesses and full briefing, the district court entered a preliminary injunction. The injunction barred Vyne from marketing, selling, distributing, or supporting write-capable software for HSOne-hosted or cloud-connected Dentrix databases, based on likely violations of the CFAA. The injunction also prohibited HSOne from disabling Vyne's software or denying its

---

[5] JA79.

[6] JA789 (Roberts: "Vyne's software applications are hosted applications"; "All of our practices that use these systems are connected to the platform"; local services "connect to the web application. We don't store data locally"); JA725 (Roberts: "It's not driven by the user. It's automated by the system"); JA943–944 (Nix: "we push out this update to all customers"); JA1311 (Clip: VyneSync "runs as a background service" and "interacts with the Practice Management System databases and with Vyne Dental's servers").

[7] Putting aside that the record shows Vyne's customers do not consent and, indeed, they do not understand what it is doing on their protected computers. JA79–81, JA982–983, JA1761.

"printer-driver access" to HSOne's Dentrix databases. Both parties appealed from the grant of injunctive relief.[8]

The injunction against Vyne was properly entered. Vyne's conduct constitutes a straightforward CFAA violation. Vyne's hack created an unauthorized pathway for Vyne itself, through its own cloud-hosted system, to access—and even rewrite—information in HSOne's database of highly sensitive patient medical records. Vyne's unauthorized access corrupts and impairs the functionality of HSOne's database and compromises HSOne's ability to install software updates. It also leaves sensitive patient medical information vulnerable to other hacking attempts.[9]

On appeal, Vyne's principal argument is that its customers are a liability shield. Vyne argues that it cannot be liable merely for "distributing" software to the customers, and that the software it wrote uses the permissions that the customers have to access HSOne's database. So, Vyne contends, this case is like *Perplexity*, where an AI agent used customers' computers to access their Amazon accounts, and the Ninth Circuit held, on that record, that the users—not *Perplexity*—accessed Amazon's servers.[10]

As the district court correctly found, however, the facts of this case are fundamentally different than those in *Perplexity*. The district court made three key

[8] JA15–16, JA71–72, JA96, JA1730, JA1752.
[9] JA82–85, JA562–563; *see* note 6 (JA789, JA1311).
[10] Vyne Br. 24–29; JA1760–1761.

factual findings, none of which are clearly erroneous: (1) the software likely obtained expanded access to Dentrix without the customers' understanding or awareness; (2) these features gave Vyne itself different and additional access, beyond what the customers had; and (3) Vyne obtained its method of decryption through either reverse engineering or insider knowledge of HSOne's source code.[11] In short, this is not a case of Vyne merely piggybacking on its customers' permissions or making an innocent mistake. Rather, Vyne surreptitiously acquired and used multiple secret codes hidden in HSOne's software to obtain unauthorized administrative credential access into protected computers housing HSOne's software, without its customers' understanding of that access. As the district court held, on these facts, "the person using the tool to achieve unauthorized access is not the individual customer; it is Vyne." JA1761. And, unlike *Perplexity*, Vyne's backdoor has damaged HSOne's systems and, unless enjoined, harms HSOne and leaves the patient medical data its systems secure vulnerable to any attacker.

Vyne's 'distribution' theory effectively asks the court to write a large new loophole into the CFAA. According to Vyne, it categorically cannot be liable simply because its software ultimately ran on the customers' computers. As a threshold issue, Vyne's characterization of the record is false. Vyne operates its software from its own centralized cloud system, as admitted in the preliminary injunction hearing.

---

[11] JA81, JA1761.

Vyne itself performs the unauthorized access—as frequently as over a million times in a day.[12] But even if the facts were different, Vyne's theory would allow any hacker to escape liability simply by installing its software on the computer of an unknowing third party. The CFAA does not draw that distinction. The provision at issue asks whether the defendant intentionally accessed a protected computer without authorization and thereby caused damage and loss. 18 U.S.C. § 1030(a)(5)(C). Vyne did.

The court should vacate the restraint against HSOne insofar as it protects the unauthorized access that caused the proven harm. HSOne originally stopped unauthorized printer driver integrations in response to security concerns and technical complaints. These concerns have been dramatically reinforced by Vyne's subsequent behavior. Vyne used confidential HSOne information to hack into HSOne's database and compromise the security of patient records.[13] An injunction compelling ongoing access must fit the wrong it remedies. HSOne should not have to continue giving a hacker reserved administrator access to patient data.

---

[12] Vyne deployed and maintained the intrusion. Its service accessed Dentrix automatically; its engineers helped defeat HSOne's blocking; and its software remained and continued corrupting data after customers tried to uninstall it. JA725, JA949, JA82. Asked whether Vyne would keep developing alternate ways into Dentrix absent a court order, its CEO answered, "Yes." JA803. *See* note 6 (JA725, JA789, JA943–944, JA1311); *see also* JA2797–2798.

[13] JA81–85, JA1217–1218, JA1291.

At a minimum, the court should narrow the scope of the injunction against HSOne. As entered, the injunction is worded broadly to require HSOne to give Vyne "access" to HSOne's database via "any" printer driver.[14] That would require HSOne to continue giving access, even if Vyne changed the printer driver in ways that introduce new security problems. The scope of required "access" is also unclear, which could constrain HSOne from making security updates or improvements. These challenges illustrate the problems with injunctions that require unwilling parties to continue dealing. But, at the very least, the court should confine the injunction to the specified print-output function and make clear that it does not protect Vyne's extraction of secret codes, use of them to give itself administrator access, and alter HSOne's security settings. The Court should also direct an injunction against Vyne's unauthorized read access.

Contrary to Vyne's entreaties to the trial court and now the Fourth Circuit, this is not a close case. It is not in a gray area of the CFAA, as *Perplexity* may have been. Here, Vyne's conduct is a clear-cut instance of computer hacking prohibited by multiple laws.

[14] JA96.

## STATEMENT OF ISSUES

These appeals present the following issues:

1. Whether the district court correctly granted a preliminary injunction against Vyne.

2. Whether the district court erred in granting a preliminary injunction against HSOne.

# STATEMENT OF THE CASE

## I. FACTUAL BACKGROUND

HSOne develops Dentrix, the system dental practices use to maintain patient health records and financial ledgers. JA74. As its Chief Technology Officer, Alan Rencher, explained, "We are the system of record." JA1219. National Electronic Attachment, Inc. d/b/a Vyne Dental ("Vyne") provides a point solution: the Vyne Trellis insurance-claims platform. About 7,500 practices use both products. JA74, JA89.

In spring 2025, HSOne's support center received "a huge influx of calls" reporting data corruption, slow performance, and broken reports. JA1217–1218. Its investigation found unusual unauthorized writing across database tables "at scale in high volume." *Id.* Further investigation showed this unauthorized access stemmed from Vyne and that Vyne had moved well beyond using an unauthorized print driver and had somehow gained access to encrypted administrator-level credentials to directly make changes to the Dentrix database. JA81, JA1036. When HSOne took action to stop the unauthorized write back in April 2025, Vyne "went in and reversed" the block "using their direct database access." JA1291.

### A. HSOne's Dentrix database is a secured system of record for dental practices nationwide.

Dentrix's local installations and HSOne's hosted infrastructure (like Vyne's) operate together. The local system sends information to HSOne's servers, and those

servers distribute updates and upgrades to the practices. JA77–78, JA561–563. HSOne, through its cloud component, monitors, maintains, and secures the system. JA77–78. HSOne controls access to that infrastructure through a complex series of technical barriers, including multiple secret codes hidden in its compiled software. JA78, JA2723–2725.

HSOne's Chief Information Security Officer, Kenton McDaniel, described the system as a whole: information from the local system is synchronized to the cloud, processed for insurers' requirements, and transmitted to a clearinghouse. JA1280–1281. The authorized synchronization platform uses credentials and the application programming interface ("API") developer program. JA1282. Vyne reached that connected system by entering the local database through misappropriating credentials and appearing as if it were a legitimate administrator. The district court expressly found that Vyne's inserted or altered data "was then synchronized and stored in the Dentrix cloud system." JA2805–2806, JA82.

HSOne provides a route for integration which Vyne could leverage as an alternative to its hacking. Vendors sign a commercial agreement, undergo a security assessment, and complete testing to ensure their software will not damage performance or security. JA1228. The API coordinates reads and writes so that database operations do not collide and cause corruption. JA1279–1280. The API also "rate-limits queries to protect performance." JA3331. For ledger transactions, an

integrated clearinghouse returns the transaction through Dentrix's rules engine, which writes it in the correct sequence and preserves the ledger's integrity. JA1216.

The parties discussed commercial and technical alternatives before and during the dispute. HSOne's CEO, Brian Weatherly, testified that HSOne offered a replacement interface for print-driver functions, its standard API program for patient-relationship products, and terms for clearing claims through Dentrix's interface. JA1034–1035. Vyne declined. JA1042. Vyne's own January 2026 term sheet proposed replacing the print-claims function with a simple new interface that "need not provide write access to the Dentrix databases." JA1040–1041. According to Weatherly, the sticking point has been Vyne's demand for "broad-based and not well-defined write-back" and the ability "to do any sort of write-back that they wish." JA1042.[15]

**B. Vyne hacks into protected computers that run Dentrix through software that Vyne builds, deploys, and operates.**

Vyne's hacking consists of a complex system that steals credentials and hides what it is doing. In its representations to the trial court, Vyne claims all it does is

[15] Roberts acknowledged that HSOne proposed expanding its APIs and that API reads could be paired with clearinghouse write-back: "I think we could probably have figured that out." JA810, JA883. Roberts explained the real issue was restrictions on future unauthorized access, including through technology such as Robotic Process Automation: "If there were no limitations there, this would not be a sticking point." JA886. That is why even in the face of commercial solutions that allow Vyne to do everything it needs, Vyne still has refused and instead seeks to rewrite CFAA law to permit its hacking.

deploy a 'printer driver' that works like a print-to-PDF function. This is false. The printer driver is, in fact, a trojan horse designed to occlude Vyne's credential theft and database takeover. Vyne's CTO, James Nix, admitted that Vyne used technology outside of the printer driver to bypass HSOne's access restrictions. JA944. McDaniel also described "a suite of solutions backed by services which interfere with and cause data corruption inside of Dentrix." JA1291. [redacted]

Vyne operates that package as part of its hosted service. Its CEO, Stephen Roberts, testified that "The Vyne Trellis software is a web-based application." JA789. Vyne's print-capture and synchronization services are installed at dental offices and connect to that "web-based application." JA789. This direct unauthorized integration connects to Dentrix's database and extracts information without permission. Roberts was explicit: "It's not driven by the user. It's automated by the system." JA725.

First, the connection begins when Vyne decrypts Dentrix's encrypted configuration file. Vyne's software processes the file with "an algorithm that Vyne has," (based on the multiple secrets it recombines from HSOne's source code), builds a connection, and enters the database. JA912. Once it has the extracted

credential, Vyne's software can read and write directly, as if it was HSOne's. JA1253.

Vyne's hack is sloppy and creates additional avenues of attack. For instance, Vyne stored the HSOne credential that it misappropriated in the open. [redacted]

Vyne controls the code that obtains and uses its access. When HSOne's update displayed an unauthorized-access notice to customers, Vyne's engineers worked to circumvent the changed settings. JA949. Nix described how Vyne develops and deploys workarounds. JA943–944.

Vyne uses its software to defeat HSOne's technical controls. After an April 2025 HSOne security update, Vyne "went in and reversed" the change "using their direct database access." JA1291; JA944.

### C. Vyne misappropriates at least four secret codes from the protected computers running Dentrix, without the awareness of its customers, to maintain Vyne's unauthorized access.

Only Vyne, not dental offices, can perform its unauthorized access. Dentrix keeps its database's superuser credential, not available to or used by customers, in an encrypted configuration file. JA2722–2725, JA2885–2886. Decrypting that file

is very complex. There are three secret fragments hidden in HSOne's source code. These are known as an initialization vector, an offset, and a default-password value—types of secrets that make up a decryption key. [redacted] A fourth input is what is known as a "salt" [redacted]. Vyne's software extracts and combines ***all*** of these inputs through a reverse-engineered version of HSOne's decryption algorithm. It then decrypts the configuration file and makes Vyne itself a Dentrix superuser. JA2726, JA2730.

[redacted] The secrets lived inside HSOne's compiled applications, where an ordinary user could not read them. JA2723–2725, JA2730. [redacted]

Although Nix portrayed Vyne's access as the use of customers' own credentials, HSOne's witnesses disproved that the next day: Vyne could not perform the observed access without obtaining multiple secrets from Dentrix's code.[16] Nix

[16] Nix attempted to describe its access method as simply "customers' own log-in credentials, not any proprietary or copyrighted HS One material." JA483. At the hearing, he acknowledged "a proprietary algorithm that Vyne has" but disclaimed

also admitted that dental offices would not understand the technical details of the integration: "We had a hard time explaining it here." JA982.

Vyne's customer materials do not disclose the concealed administrator credential or the business rules its direct writes bypassed. JA81, JA2101–2102, JA1213–1216. The district court found that Vyne, through a utility it calls VyneSync, "decrypts, extracts, and uses secret administrator-level credentials to gain a greater degree of access to the Dentrix system than what customers are permitted or equipped to achieve through their own credentials." JA81. The resulting access let Vyne alter the local database and access the connected cloud system. JA81–82.

Dentrix customers do not have permission to cross that boundary themselves, so they cannot grant that access to Vyne. JA79, JA81. And Vyne's customer agreement does not supply that permission. Roberts conceded that the agreement did not state that Vyne could input data into the customer's Dentrix database: "I don't

---

knowledge of all the decryption details. JA959, JA963, JA2573, JA2578. The next day, Nix's prior testimony was shown to be flatly untrue. HSOne's expert explained, in detail, why customer credentials could not decrypt the file without HSOne's secret inputs. JA2723–2730. [redacted] Nix's professed lack of knowledge is difficult to reconcile with his prior work as a lead developer and chief architect of HSOne's eSync platform and his acknowledged review of Vyne's source-code repository, which included Vyne's code that decrypted HSOne's encryption. JA958–959, JA990, JA1282.

see that here, no." JA783. For systems controlled by a third-party vendor, the agreement at most authorizes Vyne to send written data-access and interoperability requests. JA783. The district court accordingly found a clear likelihood that the customer authorization on which Vyne relied "did not—and could not—include authorization to access to the Dentrix cloud system HSOne controls." JA79.

Vyne knew where its operations would lead. Nix admitted that Dentrix sends copies of claims and billing statements to the cloud and receives software updates from it. JA989. Indeed, before joining Vyne, Nix himself architected the HSOne synchronization software (eSync), "a framework to send up data and call commands back down." JA990, JA1282. That knowledge, together with Vyne's intended reads and writes, supported the district court's finding that Vyne intentionally accessed HSOne's connected cloud system. JA81–82.

### D. Vyne's unauthorized access corrupts data, disrupts service, circumvents HSOne's security controls, and imposes significant costs to HSOne.

HSOne traced a surge in support calls beginning in spring 2025 to Vyne's uncoordinated database writes. JA1217–1218. Those writes diverted engineers to build cleanup tools and support staff to repair customer systems. JA1214, JA1216, JA83–84. Weatherly testified that the call center could document "a thousand Vyne-related complaints" involving performance problems, failed upgrades, and configuration-file corruption. JA1027.

Rencher explained why unsequenced writes corrupt the ledger instead of merely populating it. A single visit produces a structured chain of transactions: the patient's copayment, the insurer's payment, and a later payment of the remaining balance. Dentrix applies proprietary business rules governing each transaction's timing, order, and categorization so the running balance stays correct. JA1215. Writing to that ledger directly, out of sequence and outside those rules, created what is known in software development terms as "race conditions." These race conditions altered patient balances and left orphaned transactions that reports could no longer retrieve. HSOne had to reconstruct what happened and build dedicated tools to surface the orphaned entries. JA1214–1216. Because the writes bypassed HSOne's controls, HSOne cannot vouch for the ledger's integrity if a practice is audited, damaging HSOne's reputation. JA1216.

Rencher explained consequences for the wider database. Related tables depend on data arriving in the expected condition and order. Breaking those relationships can overwrite a health record or leave a record that the expected report cannot retrieve. JA1213–1214. The retrieval failure was a condition HSOne saw commonly. JA1214. The defect concerned the system's ability to return a usable record as well as the accuracy of the balance it reported.

One concrete example was Vyne's writing the number "911911911" in Dentrix configuration fields. Nix admitted that a Vyne engineer selected the value

to re-route billing statements. JA928–929. This field is used by HSOne for other products. Rencher explained the result: the overwritten configuration disabled customers' QuickBill accounts. JA1231–1232. Youssef identified VyneApiService.exe as the process altering the QuickBill configuration. JA3055. Addressing HSOne's security-patch allegation, Nix stated: "If this is accurate, neither I nor anyone I am aware of at Vyne had knowledge of it before it was alleged in the Complaint, nor was I aware that HS One relied on the eTrans password and username information to authenticate a connection between HS One and its customers' systems for purposes of 'deploy[ing] security patches.'" JA273 ¶ 18. These QuickBill changes generated roughly 750 HSOne support calls and chats, averaging 25–30 minutes each. JA3062. Eighty unique dental-office customers opened related tickets in October 2025 alone. JA3073. The district court consequently found that Vyne's changes interfered with QuickBill for shared customers. JA83.

Vyne's unauthorized access was so pernicious that it persisted even after customers tried to remove Vyne. A January 2026 customer support entry reported: "They don't have Vyne anymore, took off the computer, took off the server, it's still coming back." JA1233. The remaining software continued holding database connections open and obstructing upgrades. JA1233–1234. This caused even routine HSOne system upgrades to fail midstream because Vyne reopened files HSOne had

closed: "Some of the pieces have been swapped, some not, and then it doesn't run." JA1027. The district court found that Vyne software left behind after attempted uninstallation continued accessing Dentrix and causing corruption. JA82.

There are real consequences to patients. If the files needed for an upgrade cannot be replaced, the practice is left with a system of record that will not run and unavailable medical records. JA1027–1028. HSOne had to expend resources to attempt to restore its system and respond to its customers' complaints. JA1214, JA1216–1217.

The issue is not just Vyne's write-back. Its excessive database *reads* also interfere with Dentrix's operation. They consume database connections that legitimate processes need. JA1213. Rencher explained that excessive reads can prevent another operation from obtaining a connection and completing its write, producing corruption. JA1251. [redacted]

Vyne deployed its unauthorized access *en masse* at scale. In one twenty-four-hour period, HSOne's telemetry recorded over one million VyneSync interactions. JA2720–2721; JA2797–2798. Rencher explained that the log counted the service loading Dentrix files to extract credentials. JA1209–1211. McDaniel confirmed that

this access required multiple secrets hidden in Dentrix code. JA2885, JA2798–2799.[17]

HSOne incurred its own loss responding to the intrusion. It investigated the failures, assessed the damage, built cleanup tools, and repaired customer systems. JA1214, JA1216–1218. The district court found that the resulting costs exceeded $5,000 within one year. JA84. It also found that Vyne's decryption and circumvention had left Dentrix vulnerable and substantially increased the risk that malicious actors would breach sensitive patient information. JA84–85.

The continuing injury was HSOne's loss of control over the system it is tasked with securing by its customers. The district court found "the impairment and loss of HSOne's ability to monitor, control, and secure the Dentrix system" independently sufficient to establish irreparable harm. JA86. Customer failures also threatened HSOne's goodwill. JA85–86. Weatherly explained why: customers seeing these

[17] Faced with these facts, Vyne's rebuttal expert claimed he had not formed an opinion on the configuration-file decryption. JA1334. He did not inspect Vyne's source or decompiled software and had no independent basis beyond the documents and testimony to say the decryption components were no longer installed. JA1330–1331, JA1335–1336. [redacted] The court credited HSOne's evidence of database access and its effects. JA83, JA91 n.13. HSOne's telemetry showed broader database access than Vyne's claims as well. *Compare* JA806–807 *with* JA1207, JA1270–1271. *See* JA3287 (estimating use of optional write-back packages).

failures do not blame an unseen Vyne process; "They say Dentrix has failed. They blame us." JA1028.

### E. Vyne refuses to stop its unauthorized hack without court intervention.

Vyne changed parts of its installation during the litigation while preserving the direct-access service. Nix testified that billing statements had moved toward print capture, but customers remained in transition—older libraries remained installed though he maintained they no longer ran, and Vyne would retain VyneSync as a separate installation. JA929–930, JA940, JA942–944; *see also* JA1311. Roberts acknowledged that, absent an injunction, Vyne would continue developing alternative ways to access Dentrix. JA803. The district court found Vyne "persistent and adaptive" in defeating HSOne's controls and concluded that it could not rely on Vyne to stop without an injunction. JA86.

## II. PROCEDURAL BACKGROUND

### A. The district court developed and tested an extensive evidentiary record to determine whether to enjoin Vyne's hacks.

Vyne raced to the District of Maryland[18] and filed this action in September 2025, seeking emergency relief; HSOne counterclaimed (alleging violations of the

---

[18] HSOne has withdrawn its transfer motion without prejudice, but reserves its claim that Vyne forum-shopped to this Circuit to attempt to avail itself of the *Real Time* case. JA1630, JA1632. Vyne was unable to show that HSOne met the Cures Act's definition of Health Information Network and Health Information Exchange, based on the record. JA1450–1452. Now, Vyne has abandoned on appeal the Cures Act

CFAA, DMCA, common law trespass, and other causes of action) and sought an injunction of its own. JA15–17.

After denying both parties' requests for TROs, the court heard three days of testimony in February 2026 on the preliminary injunction cross-motions, received extensive post-hearing briefing, held further hearings in March and April, and solicited submissions on the injunction terms, feasibility, and timing. JA16, JA71–72, JA92–93.[19]

### B. After a multi-day hearing, the district court granted HSOne's preliminary injunction against Vyne, stopping Vyne's unauthorized write-back access to Dentrix, while permitting what Vyne falsely described as a printer driver to keep operating.

On July 31, 2026, the district court granted each preliminary-injunction motion in part. JA95–96. It found HSOne likely to succeed under its CFAA cause of action because Vyne intentionally accessed HSOne's protected cloud system without authorization and caused damage and loss. JA77–84. It found irreparable

---

theory it pressed below, JA141–143, and pivoted to attempt to narrow the CFAA and introduce the loophole that it asks this Circuit to adopt.

[19] The March ruling excluded post-hearing expert opinions, not the hearing testimony or uncontested evidence of continuing access. JA16, JA1427–1430. Excluding the newly discovered circumvention evidence was error: prospective relief required assessing Vyne's evolving conduct. JA1425–1429, JA3215–3217. The filed proffer remains part of the record for review of that exclusion. Fed. R. App. P. 10(a)(1). Admitted hearing evidence independently establishes the grounds for an injunction. JA77–86.

injury from the compromised system, lost security control, and threatened goodwill. JA84–86.

The court separately declined to enjoin what Vyne had (falsely) described as its standalone printer driver, while enjoining Vyne's write-capable software. JA91, JA96.[20]

Paragraph 8(a) in the court below's Order prohibits Vyne from marketing, selling, distributing, or supporting "software capable of write access" to Dentrix databases hosted on HSOne's servers or cloud system, or on practice computers connected to that infrastructure. JA96.[21] Paragraph 8(b) directs that HSOne "SHALL NOT disable any printer driver employed by Vyne Dental software operating on dental practices' computers and SHALL NOT deny Vyne Dental software printer-driver access" to Dentrix. JA96.

### C. After the district court found Vyne unlikely to prevail on its appeal, this Court stayed the injunction pending the appeal's determination.

Vyne appealed on August 6, 2026, and HSOne cross-appealed on August 28. JA1730–1731, JA1752–1753. This Court consolidated the appeals on September 1. CA4 ECF Nos. 13–14.

---

[20] The breadth and consequences of that distinction are central to HSOne's cross-appeal.

[21] It found no acquiescence in the newly discovered circumvention and damaging writes, and found the conduct sufficiently extraordinary to justify relief even under the heightened standard for a mandatory injunction. JA90 & n.12.

On September 8, the district court denied Vyne's request for a stay pending appeal, finding that "Vyne fails to make a 'strong showing' it is likely to succeed on the merits of its appeal." JA1759. Judge Maddox described the application of the CFAA as "straightforward" and distinguished *Perplexity*: "the person using the tool to achieve unauthorized access is not the individual customer; it is Vyne." JA1759–1761. The court below also reaffirmed its findings of damage, impaired control, and threats to patient information. JA1762–1763. On October 7, this Court granted Vyne's motion for a stay pending appeal. CA4 ECF No. 30.

Vyne requested a [redacted] bond. JA3304. After a September hearing, the district court required HSOne to post [redacted]—more than [redacted] below Vyne's request—and required Vyne to post [redacted]. JA1766, JA1768.

## SUMMARY OF ARGUMENT

Vyne accesses protected computers without authorization to hack HSOne's software systems. Vyne's hack reaches protected computers at dental offices as well as those hosted by HSOne in its cloud environment. To perform its hacks, Vyne uses multiple secrets from HSOne's compiled source code to recover an administrative database credential (not available to or used by customers) and used that credential in an automated service that read and overwrote fields in Dentrix databases. JA81, JA725, JA2724–2730, JA2885–2886. After thoroughly testing both sides' evidence, the district court enjoined Vyne's write-back based on findings of intentional unauthorized access, damage, loss, and continuing irreparable injury sufficient to demonstrate HSOne's likely success on its CFAA claim. JA77–86. The statute and record require affirmance of that injunction.

First, Vyne itself operated the intrusion. It deployed the code, maintained and operated the integration from its own cloud command center, circumvented HSOne's attempts to secure its platform, and controlled the updates sent to customer installations. JA943–944, JA949. In distinguishing *Perplexity*, which Vyne overreads, the court found that "the person using the tool to achieve unauthorized access is not the individual customer; it is Vyne." JA1761; citing 184 F.4th at 1091. Recasting its conduct as software distribution, as if Vyne did nothing more than sell

a CD-ROM (which is not accurate in any event), does not shield Vyne from liability for its own intrusion.

Second, Vyne's intrusion reached protected computers at dental offices and in HSOne's cloud. Vyne entered the restricted database on the dentists' machines and altered data in the connected system. JA81–82. Its CTO knew the architecture that sent data to the cloud and commands back down; the court found he likely knew Vyne's operations would reach HSOne's cloud. JA82, JA989–990. Vyne had no customer permission to do any of this—indeed, its customers were not even aware of what was going on. JA79, JA81. Regardless, obtaining information through access beyond the customer's permissions supports relief under § 1030(a)(2)(C) as to the local machines, independent of HSOne's cloud-based claims. While the court issued a narrow ruling, the record supports restraint on Vyne based on HSOne's preserved DMCA and trespass claims as well. JA48–61, JA1694–1696.

Third, Vyne's access caused concrete damage and loss: corrupted ledgers, disrupted upgrades, impaired security control, and more than $5,000 in response and remediation costs within a year. JA82–84. The court credited HSOne's evidence over Vyne's contrary account. JA83. Vyne's appeals to the rule of lenity are inapposite, as this rule simply resolves grievous statutory ambiguity—it does not exempt Vyne's deliberate intrusion from the statute's clear terms.

The equities likewise merit stopping Vyne's intrusion. Vyne's hacks prevent HSOne from securing its software. Customer complaints threaten injury to its goodwill, built up through enormous investments over years. JA85–86. The court found Vyne "persistent and adaptive" and unwilling to stop. JA86. Vyne's speculative hardship does not outweigh that continuing injury, particularly given the lawful integration paths HSOne offered. Vyne should not be credited with harm to the business it built on unlawful conduct. JA878, JA1034–1042. As to the public interest, it weighs in favor of stopping unauthorized hacks of patient record systems.

The merits of the injunction against HSOne flow the other way: its broad terms reach beyond the narrow findings that underpin it. The unfair-competition ruling primarily addressed marketing statements. JA74–76. Yet Paragraph 8(b) of the order broadly stops HSOne from interference with "any printer driver" and enshrines undefined "printer-driver access" to Dentrix databases, for free, through the duration of the case. JA96. On the court's own observations of the record, the injunction should not protect the hacking system Vyne bundles with its purported printer driver (or every later iteration of Vyne's hacking system). JA91 & n.13, JA943–944. There are no squatters' rights in CFAA jurisprudence.

The Court should affirm paragraph 8(a)'s existing restraints on Vyne and direct the district court to expand that injunction to prohibit Vyne's unauthorized read access as well as write. It should narrow or vacate paragraph 8(b) to remove

protection for that access and security restraints exceeding the unfair-competition findings. Turning off writing alone permits Vyne to continue violating the CFAA millions of times during the pendency of this litigation.

## STANDARD OF REVIEW

This Court reviews preliminary injunctive relief for abuse of discretion, legal conclusions de novo, and factual findings for clear error. *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 274 (4th Cir. 2025). A finding is clearly erroneous when the entire record leaves a "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). The preliminary-injunction standard requires a clear showing that HSOne is likely to prevail on its CFAA claims at trial. It does not require certainty. *Jensen v. Md. Cannabis Admin.*, 151 F.4th 169, 175 (4th Cir. 2025).

# ARGUMENT

## I. The district court correctly enjoined Vyne's unauthorized access because Vyne is violating the CFAA.

### A. The record establishes that HSOne is likely to succeed on its CFAA claim.

18 U.S.C. § 1030(a)(5)(C) prohibits intentionally accessing a protected computer without authorization and thereby causing damage and loss. Damage includes "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Loss includes the reasonable costs of responding to the offense, assessing the damage, and restoring the affected system. *Id.* § 1030(e)(11).[22] The court's findings easily satisfy each element. JA77–84.

The court found that HSOne satisfied § 1030(c)(4)(A)(i)(I)'s threshold requirement through more than $5,000 in response and remediation costs within a one-year period. JA83–84.

#### 1. Vyne is itself violating the CFAA through its own conduct, without its customers' knowledge.

Vyne obtained unauthorized access to myriad protected computers through software it deploys, maintains, and operates itself daily. Its hosted platform communicates with the installed hacking software and performs automated database operations that exceed a customer's own access. JA81, JA725, JA789. When faced

[22] Section 1030(g) allows injunctive relief when a violation causing damage or loss involves a specified statutory factor.

with HSOne's technical controls to stop its hacking, Vyne's engineers develop new workarounds, and Vyne sends code updates to its local installations remotely. JA943–944, JA949. On this record, the district court found "intentional deployment of software functions that decrypt, extract, and use secret administrator-level credentials and write back to the database." JA1760. Those are Vyne's acts—not its customers'. Vyne's objection that the order restrains sales mistakes the remedy for the violation (and falsely equates Vyne's sophisticated hacking system with decades-old concepts of software distribution on disk, before network and cloud connectivity). The injunction properly prevents Vyne from continuing its intrusion by distributing and supporting the write-capable software used to carry out that access. JA96, JA1760.

Vyne intended the consequences of its unauthorized access and had intimate knowledge of the impacted systems. Its CEO and CTO both worked at HSOne prior to Vyne. JA81. Nix admitted that he had architected HSOne's framework for sending data to the cloud and commands down to its locally installed software. JA989–990. The court credited that knowledge in finding that Vyne's CTO likely knew its operations would access and affect HSOne's cloud system. JA82.

Vyne argues that holding it liable would impose civil aiding-and-abetting liability for supplying software to customers. Vyne Br. 26–27. Not so. Vyne is no bystander. Its customers lacked the credentials Vyne uses and would not understand

the integration's technical operation, as Nix admitted. JA81, JA982. Vyne itself gathered the hidden secrets that obtained the credential and controlled the functions using it from its own cloud systems. JA912, JA943–944. Its hacks are so pernicious that Vyne's software even continued accessing and corrupting Dentrix after customers tried to remove it. JA82. As the district court put it, "the person using the tool to achieve unauthorized access is not the individual customer; it is Vyne." JA1761.[23]

### 2. Vyne is accessing protected computers at dental offices and in HSOne's cloud without authorization.

#### a. The record supports a finding that Vyne's access to protected computers at dental offices violates the CFAA.

Vyne, in its own claims, pleaded that its customers' systems are protected computers. JA515; *see Vox Marketing Group v. Prodigy Promos*, 556 F.Supp.3d 1280, 1284 (D. Utah 2021). To access these protected computers, Vyne decrypted

---

[23] Even under Vyne's own mischaracterizations, the secondary-liability cases preserve liability for the defendant's own acts. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994). *Cisco Systems, Inc. v. Doe I*, 609 U.S. 141, 157 & n.4 (2026), distinguishes persons engaged in prohibited conduct from persons assisting it. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1005–06 (9th Cir. 2006), concerned defendants who were not subject to the direct prohibition. *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291–300 (2025), addressed an expressly secondary theory based on others' unlawful sales. Here the court found Vyne itself controlled the unauthorized access. JA1761.

and used secret administrator credentials to gain a greater degree of access than even HSOne customers were permitted (or equipped) to achieve. JA81.

It is well established that a person injured by a CFAA violation need not own the affected computer. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004).

Section 1030(a)(2)(C) supports this as well, because it circumscribes obtaining information by exceeding authorized access to a computer's restricted area, just as Vyne does here. *Van Buren v. United States*, 593 U.S. 374, 378, 388–90, 396 (2021). In *Philips Medical Systems Nederland B.V. v. TEC Holdings, Inc.*, 2023 WL 2064201, at *15–16 (W.D.N.C. Feb. 16, 2023), the court granted summary judgment because permission to service customer-owned medical equipment did not authorize bypassing controls to obtain information from restricted software levels. The same distinction supports relief here: customer control of the hardware does not confer the administrator access Vyne obtained. JA81. This is a CFAA violation independent of the cloud synchronization, and supported by the record, even though the trial court did not need to reach this. *See* Part II.B, infra.[24]

Various cases involving medical equipment provide helpful analogies. In *Philips Medical Systems Puerto Rico Inc. v. GIS Partners Corp.*, 203 F.Supp.3d 221, 235–37 (D.P.R. 2016), circumventing controls to reach a restricted software tool

---

[24] *See also Oce North America, Inc. v. MCS Services, Inc.*, 748 F.Supp.2d 481, 487 (D. Md. 2010) (ownership unnecessary; complaint dismissed for failure to allege unauthorized or excessive access).

likely exceeded any customer authorization. HSOne's local-computer claim follows the second route, under subsection (a)(2)(C). The contract discussed in the district court's opinion at footnote 9 does nothing to negate the finding that Vyne's recovered administrator credential gave it access beyond the customers' own permissions. JA81 & n.9.

*Theofel* likewise rejected an ownership bar where the accessed emails sat on a service provider's computers. Section 1030(g) identifies the person injured, not the hardware's owner.

HSOne also presented evidence of its own qualifying loss. Its own engineers investigated the failures, built cleanup tools, and rebuilt corrupted systems. JA1214, JA1216–1217. HSOne paid for that work, and the district court found its response and remediation costs exceeded $5,000 within one year. JA84. A rule requiring HSOne to own the practice's computer would run counter to well-trodden CFAA precedent and enshrine a loophole in the CFAA permitting any hacker to distribute software to a third party, while continuing to operate it, and evade liability. This is not the law.

**b. The district court properly concluded that Vyne's unauthorized access to HSOne's cloud infrastructure likely violates the CFAA.**

Vyne also violated the CFAA by accessing the protected computers HSOne operates in the cloud without authorization. The district court found that the data Vyne inserted or altered "was then synchronized and stored in the Dentrix cloud

system—a protected computer controlled by HSOne that HSOne did not authorize Vyne to access." JA82.

None of this could occur had Vyne not misappropriated multiple hidden secrets to derive the administrator credential that allowed it to take over the local Dentrix software. Its access depended on first obtaining HSOne's secrets and entering the local database with the misappropriated administrator credential. JA81–82, JA2885. [redacted]

McDaniel traced Vyne's changes from the local database to HSOne's servers, where they affected information used for upgrades and security; local interference also blocked updates. JA561–563.[25] Vyne's ordinary software analogies omit the conduct the court found and are divorced from this record. All of Vyne's hypothesizing about how cloud synchronization works in general should be discarded. Vyne also omits the key factual findings the district court observed here. An authorized user editing a document does not steal secrets to decrypt an administrator credential, circumvent security controls, leave access running after attempted removal, or corrupt the connected system. JA81–83, JA944. The district

[25] Nix knew the architecture sent data to the cloud and commands down, supporting the finding that Vyne likely knew its operations would reach HSOne's cloud. JA82, JA989–990.

court made that point: Vyne's hypotheticals "omit the critical elements of intent and damage that this Court found likely to be present in Vyne's conduct." JA1762.

Nor did HSOne concede that its cloud receives no customer data. The statement at JA1499 distinguished the actual system from a complete cloud copy of every local database and patient record. In the same answer, counsel identified telemetry and logs traveling to the cloud and updates traveling down—and expressly identified both local computers and HSOne's hosted servers as protected computers. JA1498–1500. This supports the CFAA violation as to the cloud intrusion. JA1280–1282, JA82.

**c. *Perplexity* supports the injunction against Vyne.**

*Amazon.com Services, LLC v. Perplexity AI, Inc.*, 184 F.4th 1083, 1091–92 (9th Cir. 2026) supports the injunction against Vyne. The Ninth Circuit held on the record before it that receiving browser screenshots and communicating instructions to a user's Assistant did not, by themselves, show that the provider entered Amazon's servers. It expressly reserved whether, on a ***different*** record, the provider exercised control over its software "in such a way as to gain entry to Amazon's servers." *Id.* at 1091. That is exactly what happened here.

*Perplexity* treated the Assistant as "a tool, not a person" and reserved whether, "on a different record or new facts," its provider could "exercise control over the Assistant in such a way as to gain entry to Amazon's servers." 184 F.4th at 1091.

Here, Vyne deliberately obtained the credential from multiple secrets hidden in HSOne's compiled applications, intended the read-and-write operation, and maintained and operated the mechanism crossing the barrier—even after customers tried to uninstall its software. JA81–83, JA86, JA2724–2730; JA789 (Roberts: "Vyne's software applications are hosted applications"); JA725 (Roberts: "It's not driven by the user. It's automated by the system"); JA943–944 (Nix: "we push out this update to all customers").

Its engineers helped circumvent technical access restrictions, and its automated operations corrupted data and obstructed upgrades. JA83, JA949. The court credited HSOne's expert's observation that Vyne's hacking is so severe that it falls into the highest quartile of sophisticated attacks that he observed over nearly twenty years of cybersecurity experience, based on severity, duration, persistence, and customer impact. JA90 n.12; JA2743–2744. The observed "indicators and attack patterns," he testified, "are consistent with the more advanced persistent actors." JA2745.

The rule Vyne proposes has no end. On its reading, a company may deploy software that extracts another company's administrator credentials, install it on a third party's computer, operate it automatically, maintain it against the victim's countermeasures, keep it running after the host tries to remove it, and build a product tier on the data it takes—and never "access" anything, because the host clicked

"install" (which is not even what happened here). Vyne Br. 19, 26–28. The CFAA would then reach the unknowing user at the keyboard but not the hacker who automates the keyboard from their command center. Nothing in the statute draws that line, nor would it.

The CFAA is straightforward: it reaches whoever intentionally accesses a protected computer without authorization and causes damage and loss. Far from adopting Vyne's wishful exemption, *Perplexity* expressly reserved that, in another case with more straightforward hacking, there could be a CFAA violation. 184 F.4th at 1091. That is this case. JA1761.

**3. Vyne's customers do not consent to Vyne's hacks and cannot shield it from CFAA liability.**

Vyne extracts and uses administrator credentials to obtain access beyond any permission its customers could possibly provide. JA81–82.[26] Courts routinely reject customer permission relieving a hacker of liability. *Phreesia, Inc. v. Certify Global,*

[26] *Abu v. Dickson*, 107 F.4th 508, 514–18 (6th Cir. 2024), concerned an administrator using valid credentials without notice that the access was forbidden. *United States v. Eddings*, 161 F.4th 199, 205–07 (3d Cir. 2025), concerned permission the employer had not withdrawn. *U.S. v. Valle*, 807 F.3d 508, 524–28 (2d Cir. 2015), and *NRA Group, LLC v. Durenleau*, 154 F.4th 153, 167–70 (3d Cir. 2025), rejected theories based on misuse of information the actor was allowed to retrieve. *hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180, 1198–1201 (9th Cir. 2022), concerned public profiles. None permitted using concealed credentials to cross a reserved boundary. Compare *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067–69 (9th Cir. 2016) (users' wishes did not authorize the aggregator's continued access after permission was withdrawn).

*Inc.*, No. DLB-21-678, 2022 WL 911207, at *2-3, 6 (D. Md. Mar. 29, 2022); *State Analysis, Inc. v. American Financial Services Assoc.*, 621 F.Supp.2d 309, 316 (E.D. Va. 2009).

In *WEC*, which Vyne cites, the employees were authorized to access the relevant components of the computers at issue but restricted from certain use and manner of downloading. 687 F.3d at 204–07. Here, nobody was authorized to access the Dentrix database administrative credentials or decrypt the configuration file except HSOne. Not customers, and certainly not Vyne. Indeed, ordinary customer credentials could not even supply the administrator access Vyne obtained by decryption. JA81; JA2730. *Van Buren* draws a line between misusing available information and obtaining information from an off-limits area. 593 U.S. at 388–90, 396. Vyne does the latter. There were clear technical gates here: three secret inputs in HSOne's compiled application, machine-specific values, an encrypted configuration file, and the database credential. JA2723–2730.[27]

Vyne's customer contract does nothing to change the analysis. JA2157. For third-party systems, it at most authorizes written access requests and cooperation with the vendor's requirements for granting access. *Id.* Permission to request access is not permission to bypass a rejection of the request. JA81, JA982. The court did

[27] This case therefore does not require deciding whether contract or policy restrictions alone suffice. 593 U.S. at 390 n.8.

not err on this point. It properly found Vyne's customer authorization "did not—and could not—include authorization to access to the Dentrix cloud system HSOne controls." JA79. HSOne expressly refused authorization in August 2025. *Id.*

As to *Real Time*, that case involved customer-provided logins under the platform's agreement allowing facilities to assign database users. 131 F.4th at 214. This is a completely different situation. Here, ordinary customer credentials could not decrypt the configuration file; HSOne's other secrets were essential to obtaining the superuser credential. JA2730. Vyne's own terms did not authorize writing, as Roberts admitted. JA783; JA81 n.9. Nor does installing a service silently authorize concealed credential extraction. *Cf. In re Pharmatrak, Inc.*, 329 F.3d 9, 20 (1st Cir. 2003) (consent "should not casually be inferred" (quoting *Griggs–Ryan v. Smith*, 904 F.2d 112, 117–18 (1st Cir. 1990))); *Podium Corporation Inc. v. Chekkit Geolocation Services Inc.*, No. 2:20-cv-352-DB, 2020 WL 6940737, at *2 (D. Utah Nov. 25, 2020) ("[A]ccess to a computer is 'unauthorized' or 'without authorization' where access is obtained via fraud, misrepresentation, or other deceptive means."). Vyne itself admitted dental offices would not understand the integration's technical operation, let alone consent to it. JA982.

#### 4. Vyne's unauthorized access causes HSOne significant statutory damage and loss.

The court found more than enough damage and loss to establish a likely CFAA violation. Vyne's access likely impaired Dentrix's integrity and availability.

JA82–83. It corrupted ledger balances and configuration data, broke links among database records, consumed connections needed for legitimate work, and obstructed upgrades. JA82–83, JA1213–1216. These were failures of the system itself, and the court credited HSOne's evidence of them over Vyne's contrary unsupported assertions. JA83. HSOne incurred its own loss investigating and repairing those failures. JA84. These are precisely the sort of "technological harms"—including file corruption—on which the CFAA's damage-and-loss definitions focus. *Van Buren*, 593 U.S. at 391–92.

Vyne's proposed separation of local damage from cloud access, once again, ignores the nature of the whole system. Unauthorized changes flowed from the local database to HSOne's servers, and interference at the local nodes obstructed the upgrades HSOne delivered through its cloud infrastructure. JA561–563, JA1280–1282. Weatherly described the result of a disrupted upgrade: only some components were replaced, leaving the system unable to run. JA1027. The court found damage to the connected system and impairment of HSOne's ability to monitor, control, and secure it. JA82–86, JA1762. The local acts were the means of the unauthorized cloud access on which the court rested its subsection (a)(5)(C) ruling. JA82. The separate local-access ground proceeds under subsection (a)(2)(C).[28]

---

[28] Unlike in *Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1084–85 (7th Cir. 2016), here there were corrupted records and disrupted operations. JA82–84. *Paroline v. U.S.*, 572 U.S. 434, 444–45 (2014) is satisfied

Vyne's other cases do not help. *NovelPoster v. Javitch Canfield Group*, 140 F.Supp.3d 954, 961–63 (N.D. Cal. 2014), recognized that impaired availability can constitute damage without physical destruction. *Spirits v. Ragghianti*, 2024 WL 3177773, at *3 (3d Cir. June 26, 2024) rejected a complaint that never plausibly connected computer access to the claimed losses. The findings here identify both the technical impairment and the resulting response costs. JA82–84.

Vyne's intrusion operated at a scale that imposed a severe burden. Youssef identified over one million VyneSync database interactions during one twenty-four-hour period. JA2721, JA2797–2798. [redacted] Rencher's investigation likewise found uncoordinated writes across many database tables at high volume, following a surge of corruption, slow-performance, and broken-report complaints. JA1217–1218. This was sustained interference with the system's work. Even Roberts, Vyne's CEO, acknowledged that 1,000 instances of data corruption would be "moderate-to-high." JA873.

HSOne proved its response costs. Rencher described the cleanup tools its engineers built and the work required to repair corrupted systems. JA1214, JA1216.

---

based on disrupted upgrades and response costs. JA82–84, JA561–563. In affirming venue for CFAA offenses, *United States v. Calonge*, 74 F.4th 31, 36–37 (2d Cir. 2023), held that deleting remotely stored data damaged a computer from which the victim could no longer access it. The data's physical location did not defeat the proved impairment.

Asked whether rebuilding cost "more than $5,000," he answered, "Yes." JA1217. The court found by a preponderance that response and remediation costs exceeded that amount within a year. JA84. Those costs qualify under § 1030(e)(11), as opposed to the lack of established costs in *United States v. Umeti*, 167 F.4th 687, 697–99 (4th Cir. 2026); JA1217.

This Court has recognized investigation costs. *See A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 645–46 (4th Cir. 2009) (investigation after a student used a university password without entitlement). *Vanderhye* remanded to assess reasonableness, proof, and causation. *Id.* HSOne supplied each here in droves: its engineers built cleanup tools and rebuilt corrupted systems, which the court properly credited. JA1214, JA1216–1217, JA84.

Vyne cannot avoid that evidence by taking Rencher's statement that reading does not itself change data out of context. He further testified that excessive reads can exhaust available connections, prevent a legitimate operation from completing, and cause corruption. JA1249–1251. [redacted] Even Roberts agreed that "asking for too much information too often" "can cause system performance issues." JA871. And Roberts admitted that turning off write-back leaves Vyne able to read through the same integration. JA806. A read-only setting

therefore does not eliminate the unauthorized connection or the operational harm it can cause.

The rule of lenity does not save Vyne. It applies only when the usual tools of statutory interpretation leave grievous ambiguity. *Barber v. Thomas*, 560 U.S. 474, 488 (2010). Section 1030(a)(5)(C) expressly prohibits intentional unauthorized access causing damage and loss. The court found each element: secret-credential decryption, deliberate access to a connected system, and resulting corruption and remediation costs. JA81–84; JA1759–1761. Vyne's hypotheticals about users editing synchronized OneDrive or Google Drive files (completely divorced from this record) omit those facts. Vyne Br. 46–48; JA1762. Its warning about customer prosecutions also ignores who controlled the intrusion: its customers did not know about the additional access; Vyne made sure of that. JA1761. The injunction reaches that deliberate circumvention and harm.[29]

**B. Vyne's escalating hacks irreparably harm HSOne absent an injunction.**

HSOne's injury is ongoing. The district court found an existing impairment of its "ability to monitor, control, and secure the Dentrix system" and explained that "[i]t would be difficult, if not impossible, to quantify such a loss of effective control

[29] A prior decision involving fundamentally identical facts is not required for fair warning. *U.S. v. Lanier*, 520 U.S. 259, 268–71 (1997). The question remains whether the statutory prohibition gave notice of the deliberate unauthorized access found here.

and security in an award of damages." JA86. Failures also reach HSOne's reputation: "They say Dentrix has failed. They blame us." JA1028. As Rencher explained, when patient files are damaged, "the customer calls us and we have to be accountable to fix them." JA1219. Vyne's unsupported attempts to wave away risk of a future breach do not separately confront this independently sufficient finding of existing lost control. *Compare* Vyne Br. 49–54, *with* JA86. Under Vyne's theory, all risk of cybersecurity incidents would be acceptable, until the catastrophic incident itself occurred.

Here the injuries run directly to HSOne. Its secret codes are exposed, its ability to control and secure Dentrix is impaired, and failures attributed to Dentrix threaten its goodwill. JA81, JA84–86. These findings satisfy *West Virginia Rivers Coalition, Inc. v. Chemours Company FC, LLC*, 178 F.4th 102, 114–15 (4th Cir. 2026), because they substantiate harm to HSOne rather than generalized harm to the public. JA87–88.

*Rivers Coalition* does not change the result. The expert there linked exposure to increased risk but could not show that the member at issue was more likely than not to suffer harm because she did not drink or cook with the water. 178 F.4th at 116–19. Here the injury already materialized in HSOne's system: corruption, impaired operation, lost control, and threatened goodwill. JA82–86. Vyne's persistent defeat of security controls made voluntary cessation unreliable. JA86. The

likelihood of continuing injury thus provides the evidentiary connection missing in *Rivers Coalition*.

The court found that failures from Vyne's uncoordinated integration threatened further loss of HSOne's goodwill. JA85–86. Weatherly explained what a failed upgrade means to a practice deprived of its records: "They say Dentrix has failed. They blame us." JA1027–1028. Youssef explained that "once trust in the system's security is broken, it cannot be fully restored through monetary damages or post hoc remediation." JA3072.[30]

Vyne's own customer messaging sharpened that problem. One Vyne communication portrayed HSOne as blocking customer choice while "couching it in a general statement of 'security, performance and reliability' concerns," and urged them to ***call HSOne's support line*** to object. JA2151. A Vyne communication dated August 11, 2025, framed HSOne's restrictions as a possible move to consolidate claims traffic and assured customers that Vyne was developing additional ways to work with Dentrix. JA2152–2153. Those messages aimed customer dissatisfaction

---

[30] *Advanced Resources Intern., Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 336 (4th Cir. 1993), rejected reputational injury dependent on future contingencies. Existing failures and current customer blame suffice here. Nor is harm irrelevant because customers experience it too. *National Wildlife Federation v. National Marine Fisheries Service*, 886 F.3d 803, 822–23 (9th Cir. 2018), recognized injury to plaintiffs' own interests through harm to the resource they used. Here interrupted use of Dentrix directly harms HSOne's reputation and customer relationships. JA85–86, JA1027–1028.

at HSOne while the records, balances, and updates in the system remained HSOne's responsibility. The practice that hit a broken system would turn to HSOne to restore it, even as Vyne falsely cast the very controls meant to protect that system as the problem.

The record also establishes that the injury will continue without relief. Vyne's software remained after attempted uninstallations, Vyne retained the direct-access service during its announced migration, and Roberts acknowledged that Vyne would continue pursuing alternate access methods absent an injunction. JA82, JA803, JA943–944. The court found Vyne "persistent and adaptive" and correctly concluded: "The Court cannot rely upon Vyne to cease its injurious conduct without an injunction." JA86.

Vyne's tools also exposed a route into the protected data to other actors. The district court found that Vyne had placed Dentrix in a vulnerable state and substantially increased the risk of a third party exploiting Vyne's slipshod backdoor. JA84. [redacted] Youssef identified "the DLLs and the techniques and the effects of what has been done by Vyne" as that opportunity. JA2747. Vyne's reverse engineering left breadcrumbs that could enable a "nation-state actor or other sophisticated threat

group to replicate these methods and exfiltrate electronic protected health information (ePHI) at scale." JA3055. The court properly weighed Vyne's introduction of such a vulnerability alongside established corruption and lost control without awaiting a catastrophic breach. JA84–86.

An undiscovered breach does not counsel against an injunction. Sophisticated intruders who would use Vyne's backdoor are the sort that seek to retain access quietly. They may persist for long periods before their presence becomes known. JA2811–2812. The court was right to decline to make HSOne suffer a catastrophic breach before obtaining relief against conduct already placing data security at substantial risk. JA85.[31]

*Real Time Medical Systems, Inc. v. PointClickCare Technologies, Inc.*, 131 F.4th 205, 236–40 (4th Cir. 2025) does not change the outcome. There, this Court required evidence for the asserted security justification, which is present here in spades. The court heard technical testimony and found unauthorized administrator access, data corruption, upgrade interference, and impaired security control. JA77–86.[32]

---

[31] Youssef further explained that, in healthcare, "the integrity and availability of data is equally critical and a loss of availability or integrity is considered a cybersecurity incident just as the loss of confidentiality." JA3062.

[32] Vyne invoked the Cures Act below, JA141–143, but does not renew that statutory argument on appeal. Its reliance on *Real Time* does not turn patient access into immunity for the method used to obtain it. Here HSOne clearly falls outside the Cures Act, based on the record, which is likely why Vyne abandoned its arguments

### C. The balance of equities lean heavily in favor of HSOne's injunction against Vyne on the current record.

That Vyne wishes to maintain its business model of profiting from unauthorized access to Dentrix[33] gives it no entitlement to continue the intrusion under the balance of equities analysis. Courts discount hardship when it is attributable to the very misconduct an injunction restrains. *Brightview Group, LP v. Teeters*, 441 F.Supp.3d 115, 142 (D. Md. 2020); *Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F.Supp.3d 1068, 1074–75 (S.D. Cal. 2019); *see also* JA1566, JA1728.

Even under Vyne's theory, the equitable balance leans heavily towards maintaining the injunction against it. HSOne is tasked by its customers to maintain and secure the system on which the customers rely. Vyne's access corrupts records, disrupts upgrades, and defeats HSOne's security controls—harming its own customers in the process. JA81–86. Vyne itself claimed that it could move billing statements to a different workflow and admitted that it could reasonably remove code through updates. JA929–930, JA943–944.

---

on this front in its appeal. JA87–88 & n.11. *See also* JA1706–1707 (HSOne's post-hearing memorandum explaining why HSOne is not an HIE/HIN).

[33] Which not only permits Vyne to unfairly compete with HSOne, but Vyne's other competitors as well. *See* JA1696 (HSOne's post-hearing memorandum); JA1035–1036 (Weatherly explaining Vyne's price and functional advantages over competitors that pay for authorized access).

Vyne's usage figures do not establish predicted customer losses. The court found the affected patient-engagement services served a minority and were not Vyne's core business. JA91. Vyne pressed the same customer-loss theory in seeking a [redacted] bond. JA93. After the bond hearing, the court set the bond more than [redacted] below Vyne's request. JA1766. [redacted]

The record identifies many alternative access means that would mitigate any harm to Vyne from an injunction. HSOne offered a replacement interface for print functions, its API program for patient-engagement products, and terms for claims processing through Dentrix's interface. JA1034–1035. Vyne's own term sheet proposed an interface that would not require database write access. JA1040–1041. The obstacle is not an inability to do what Vyne claims it needs to do, but rather Vyne's unjustified demand for continued broad, undefined write-back authority in perpetuity. JA1042. And Roberts acknowledged that the costs of maintaining Vyne's own integrations and paying API fees were generally similar. JA878. Consequently, even paying for API access would not create a net hardship on Vyne.

The customer-loss cases Vyne cites require concrete evidence and a comparison of the affected interests. *Salomon & Ludwin, LLC* , 150 F.4th at 278–79

& n.7, addressed documented lost accounts and transfers; *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339–40 & n.3 (4th Cir. 2001), distinguished specific evidence from general assertions like those Vyne makes. Here, Vyne's service-related concerns did not require the court to leave HSOne exposed to the ongoing corruption, failed upgrades, and lost security control found below. JA87–91. The court also found that the harm from complying with the restraint on write-capable software "is likely compensable" and "is not likely to" irreparably injure Vyne. JA1763.

*Real Time* is distinct as well. There, the record showed no immediately viable substitute: hiring 450 people to replace automated access would take time, risk contractual breaches, and cost more than the business earned from its customers. 131 F.4th at 239–40. Here, the evidence identifies authorized technical alternatives and comparable overall integration costs. JA878, JA1034–1042.

Vyne's arguments about the injunction being mandatory are unavailing. The restraint here prohibits marketing, selling, distributing, or supporting write-capable software for the specified Dentrix databases; the parties' years of shared customers do not make it mandatory. Vyne relies on operations "since at least 2021," Br. 53, 55, but Nix dated the options-table bypass to May 2025, after the April block. JA924. He could not say whether the decryption code was created in 2021 or not. JA958. The district court found that HSOne did not discover the damage caused by Vyne's

unauthorized access until around March and April 2025, and found no evidence that HSOne had failed to contest the challenged circumvention and write-back. JA90. It also found the conduct extraordinary enough to justify relief even under the heightened standard for a mandatory injunction, crediting Youssef's assessment of its severity, duration, persistence, and customer impact. JA90 n.12, JA2743–2744. Under any balance of equities frame, the injunction against Vyne should stand.

### D. As to public interest, the district court correctly found that secure patient records and lawful competition favor an injunction.

Dentrix holds sensitive patient health and financial information that merits protection. JA84–85, JA87–88. Enforcing the CFAA protects the controls on which those records depend. *See AssociationVoice, Inc. v. AtHomeNet, Inc.*, 2011 WL 63508, at *13 (D. Colo. Jan. 6, 2011); *Google LLC v. Starovikov*, 2021 WL 6754263, at *4 (S.D.N.Y. Dec. 16, 2021).

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 826–27 (9th Cir. 1993), which Vyne cites, does not alter the public interest. Its consumer-choice conclusion followed its determination that the movant had not shown likely confusion. Here, the court found likely unlawful access and resulting harm. JA77–86. As to competition, there is nothing unfair about HSOne's conduct and it certainly does not require a court to preserve a competitor's unlawful means of access. The overriding public interest in securing health care data outweighs Vyne's inapposite claims about data access.

### E. HSOne's DMCA and trespass claims independently support the injunction against Vyne.

This Court may affirm a preliminary injunction on any ground supported by the record even when the district court relied on another theory. *Salomon & Ludwin, LLC* , 150 F.4th at 277–78. HSOne preserved its claims under the DMCA and for trespass to chattels. JA53–56, JA59–61, JA1694–1696. The evidence of decryption, alteration, and resulting injury supports both.

The DMCA prohibits circumventing a technological measure controlling access to a copyrighted work and expressly includes unauthorized decryption. 17 U.S.C. § 1201(a)(1)(A), (a)(3). Here, Vyne misappropriated secrets from HSOne's compiled copyrighted source code, derived the key, and decrypted Dentrix's protected configuration file to recover the reserved database credential. JA2724–2730. The district court recognized at the pleading stage that the claim concerns Dentrix's protected software and components. JA53–56. The hearing evidence established the circumvention mechanism. In *Synopsys*, 401 F.Supp.3d at 1072–75, a preliminary injunction stopped use of counterfeit keys to defeat software access controls. A purported license supplied by a business partner did not authorize that circumvention. All the same problems with Vyne's customer permission argument apply to the DMCA and do not provide a defense to the claim.

Customer ownership of patient information does not impact the DMCA claim. The protected works are Dentrix's software and components. At the pleading stage,

the trial court properly rejected the patient-data argument and explained that § 1201(a) requires no additional showing of copyright infringement. JA53–56. *Synopsys* likewise held that even a valid third-party license would not authorize counterfeit keys defeating the owner's protection. 401 F.Supp.3d at 1072–73. The hearing supplied the circumvention proof: Youssef identified the secret codes and reverse-engineered algorithm needed to decrypt the configuration file and explained why ordinary user credentials were insufficient. JA2724–2730.

The DMCA expressly authorizes injunctions to prevent or restrain the violation. 17 U.S.C. § 1203(b)(1). Here the circumvention enables the recurring interference and loss of security control the court found irreparable. JA82–86. The DMCA, just like the CFAA, consequently justifies stopping Vyne's hacking.

The record also supports trespass to chattels. The tort reaches intentional use of or intermeddling with another's chattel. *Nassi v. Hatsis*, 525 P.3d 117, 122 (Utah Ct. App. 2023). The district court sustained that theory as applied to Dentrix. JA59–61; *see also* JA1723 n.8. The hearing then established actual interference: altered configurations, corrupted records, obstructed upgrades, and impaired security controls. JA81–86.

Both the DMCA and trespass theories support a restraint on Vyne, independent of its CFAA violations.

## II. To the extent the district court made any error, it was in issuing an injunction against HSOne that permits some of Vyne's unauthorized access.

To the extent there is any legal error in the district court's analysis, it was in restraining HSOne's ability to secure its systems and not making the injunction against Vyne broad enough.

### A. The district court's injunction against HSOne is not supported by its unfair competition findings, which relate to speech.

An injunction must closely tie to remedying the wrong that supports it. *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16–17 (4th Cir. 1997). Paragraph 8(b) of the court's order does not comport with that requirement. Here, the thrust of the district court's unfair competition findings rests in purportedly misleading promotions of HSOne's competing services. JA74–76. Putting aside that there is nothing unlawful about HSOne competing with Vyne, the court did not go so far as to find that every security measure affecting a Vyne component was unfair. Yet the order bars HSOne from disabling "any printer driver employed by Vyne Dental software" and from denying Vyne "printer-driver access to Dentrix databases." JA96. That language extends beyond the identified wrong and into HSOne's ability to secure its own system. Relief must prevent likely future injury, not punish or compensate for past wrongs. *A Helping Hand, LLC v. Baltimore County, MD*, 355 Fed.Appx. 773, 776 (4th Cir. 2009). Past marketing statements cannot justify perpetual immunity for a different, harmful access method.

**1. Findings related to HSOne's communications do not support an injunction related to Vyne's computer access.**

Even if the marketing statements at issue justified an injunction, the remedy should be limited to preventing future misleading representations. It should not grant every current or future Vyne hack that it labels a printer driver immunity from security measures, much less guarantee the misappropriated credential access that Vyne packages with what it falsely describes as a printer driver. Injunctions should be no broader than necessary to provide complete relief. *Kentuckians for Commonwealth Inc. v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir. 2003).

This Court's false-advertising cases illustrate the issue. In *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 127–28 (4th Cir. 2011), the injunction addressed the specific claims found false, including their repetition in future advertisements. The relief followed the wrong. Here paragraph 8(b) instead protects access through broadly described software, rather than focusing on marketing statements.

*PBM Products* permitted relief against future advertisements repeating the specific false claims because limiting relief to the original mailer would allow evasion. 639 F.3d at 127–28. But relief remained tied to that wrong and was no broader than necessary, following *Kentuckians*, which vacated restraints reaching permits and injuries beyond the plaintiff's case. *Id.* at 128; 317 F.3d at 436. Those principles permit prevention of recurrence, while requiring a connection before relief

reaches different conduct. Paragraph 8(b) does not remedy the communications while the shutdown requires preserving a privileged database connection that injures HSOne and creates significant security risks.

Further, the court recognized this issue and explained that the constraint it was seeking to craft was narrow. When HSOne asked whether the proposed order would protect large-scale reading beyond the print driver, the court's initial response was that it would not protect those functions or enjoin HSOne's response, "[e]xcept for the print driver." JA1606–1607. Later discussion addressed the complete shutdown the court meant to prevent; Vyne's counsel agreed with the court's limiting explanation of "disable." JA1626–1627. This, however, is not reflected in the order as written. The written injunction should draw that distinction rather than turn a restraint on the identified shutdown into a veto over HSOne's security measures.

At the April 14 hearing, HSOne raised a specific scenario: a security control that stops a newly discovered Vyne function without shutting the software down altogether. The court emphasized that a complete shutdown was "the harm that was presented at the hearing" and the harm it was trying to address. JA1626. When HSOne explained the need to separate that shutdown from a control aimed at a different security risk, the court read "disable" to carry that limitation (Vyne's counsel agreed). JA1627. The written terms of the order, however, do not carry the same limit. The opinion itself set out to preserve HSOne's ability to maintain

accurate data, deliver upgrades, and implement effective security controls while protecting the printing function, JA89. As written, the court locked in every access mechanism bundled with printing, defeating the discussed balance.[34]

HSOne's communications themselves also defeat Vyne's effort to recast the entire security response as a campaign of deception. The notice that began the PX002 email chain warned of unauthorized integrations, explained that they could compromise Dentrix and its data, and gave customers four weeks to remove them before new security controls took effect. JA1780. PX008 likewise warned of security vulnerabilities and interference with claims, billing, scheduling, and patient communications; it named no particular competitor. JA1796. Those warnings correspond to the corruption, failed upgrades, and lost security control the court itself found. JA82–86. Weatherly confirmed that the controls affected other vendors as well—they did not target Vyne—and that HSOne was working to retire its own printer-driver technology (as was Microsoft itself). JA1006, JA1022–1023. The proven security problem cannot be dismissed as a pretext for competing with Vyne.

[34] Vyne improperly treats HSOne's request for judicial relief as part of the supposed wrong, asserting that its "legal strategy mirrored" a tortious commercial campaign. Vyne Br. 12. But the court heard the evidence and sustained HSOne's request to enjoin unlawful access. JA77–86. Its unfair-competition findings addressed customer communications and access restrictions, not the filing of a meritorious statutory claim. JA74–76. Seeking judicial protection against the intrusion does not show that the intrusion or its harms were invented.

The product-comparison evidence was narrower than Vyne suggests as well. Roberts acknowledged that Vyne offered workflows in which customers manually attached images and typed claim codes and even noted that the "crossing your fingers" language was consistent with typical "marketing rhetoric." JA894. Regardless, this marketing rhetoric does not negate the independently established Vyne hack or support compelling HSOne to preserve every current and future access method that Vyne places inside something it labels a printer driver—especially when Vyne has a pattern of occluding its hacking through the printer driver misdirection.

**2. The injunction incorrectly creates a doctrine of squatters' rights for Vyne to access computers without authorization.**

The relevant status quo is the parties' last uncontested relationship, which is prior to Vyne's unauthorized access. *See, e.g.*, *Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 378 (4th Cir. 2012). Vyne's prior access creates no squatters' rights. In *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1025–27 (7th Cir. 2017), the court rejected an injunction imposing a new access arrangement rather than remedying the unfair conduct alleged. Here, too, Vyne's purported business concerns cannot substitute for the necessary connection between the wrong and the access the order protects. Even if HSOne had permitted some printer driver-related integrations, it is also permitted to deprecate those. Just as a restaurant can remove items from the menu, so can HSOne change the permitted integrations into its systems. Especially when the industry, as a whole, is moving

away from printer drivers due to valid security concerns. JA1006, JA1219–1220. Regardless, here the court found "no evidence that HSOne ever failed to contest" Vyne's software that circumvented security, obtained unrestricted access, wrote without authorization, and caused damage and loss. JA90. That access was never an uncontested relationship the court needed to preserve.[35]

Maryland law reinforces that an injunction should tie to the conduct that makes competition unfair. *Baltimore Bedding Corp. v. Moses*, 182 Md. 229, 237, 245–46, 34 A.2d 338 (1943), preserves freedom of fair competition while condemning unfair methods. *M-Edge Accessories LLC v. Amazon.com Inc.*, 2015 WL 403164, at *4–6 (D. Md. Jan. 29, 2015), rejected the particular unfair-competition theory in light of legitimate product-program reasons and the plaintiff's choice not to participate. Here too, deprecation of a prior integration does not suffice to demonstrate that HSOne's legitimate security restrictions were unlawful.

**3. The injunction against HSOne, as drafted, is too vague.**

Rule 65(d)(1) requires specific terms and a reasonably detailed description of the restrained acts. Here, Paragraph 8(b) leaves the central obligation impermissibly vague: it is not clear whether "printer-driver access to Dentrix databases" requires

[35] *2311 Racing LLC v. National Association for Stock Car Auto Racing, LLC*, 139 F.4th 404, 408–10 (4th Cir. 2025), likewise requires a sound substantive basis for mandatory relief altering the parties' arrangement. Historical access alone cannot supply the underlying entitlement.

only a defined print-output function or requires HSOne to maintain the direct database connection without which Vyne's overall hacking harness, including its purported print driver, would not work. JA96. It likewise leaves HSOne to guess whether a neutral security update "disable[s]" a driver when it closes the credential-based route on which the package depends. (Which is imperative, as otherwise Vyne paves a backdoor that others can use to attack HSOne's systems.)[36]

The practical approach in *dmarcian* does not save paragraph 8(b). Although relief need only approximately match the violation, the approved injunction identified there was sufficiently specific as to make the obligation intelligible. 182 F.4th at 305–06. Not so here. Paragraph 8(b) does not identify which functions within Vyne's package HSOne must preserve. Protecting printing need not protect decryption, administrator access, or security-setting changes. It would be appropriate for the court, on remand, to more closely match the decree to the adjudicated wrong.

Further, to the extent the Court considers retaining protection for printing, Vyne's own assurance defeats any claim that this requires preserving database access. Asked whether enjoining read-write capabilities would affect the driver, Vyne's counsel answered, "It would not affect the printer driver." JA1436. The court

[36] Even *dmarcian, Inc. v. DMARC Advisor BV*, 182 F.4th 289, 305–06 (4th Cir. 2026), which reads an injunction in context and permits general terms, requires that those terms give fair notice. Here there is too much uncertainty with the injunction against HSOne as worded, as illustrated by the parties' discussion with the court at one of the post-trial hearings. JA1611–1613, JA1626–1627.

responded, "I'm going to take you at your word," and counsel confirmed "it's technically feasible." JA1437. *Cf. dmarcian, Inc. v. dmarcian Europe BV*, 2021 WL 3561182, at *6 (W.D.N.C. Aug. 11, 2021) (rejecting hardship from a restraint the defendant itself proposed). Vyne cannot obtain protection for printing on that assurance and then deny the corresponding restraint is feasible.

That limited alternative also follows Vyne's account. Vyne's expert described a user selecting a claim for printing, Dentrix sending it through the Windows print spooler, and Vyne converting and uploading that output. JA1310. He separated that user-directed process from VyneSync's background database access. JA1311–1312.

HSOne's April 24 technical submission proposed a tightly confined output-transfer exception. McDaniel illustrated the print selection and spooler transfer and proposed permitting only "receipt of a print payload transmitted through the Windows print spooler from a user-initiated print action," while barring Vyne code from reading, writing, or interacting with the database, configuration files, binaries, registry keys, and stored secrets. JA1660–1662.

What the current injunction asks HSOne to do affects HSOne's required security controls. HSOne cannot preserve access selectively: it has no record of Vyne's generated keys, their locations, or the workarounds left behind. JA1660. A more appropriate injunction, as proposed, would protect defined output transfer

while leaving HSOne free to secure the credential, database, and other components that Vyne has compromised.

Any retained restraint should be confined to the user-initiated transfer of claim output from Dentrix through the print spooler described in the record. JA1310–1311. It could expressly provide something to the effect of the following: “Nothing in this paragraph requires HSOne to permit extraction or use of its reserved administrator credentials, direct database connections obtained through those credentials, or alteration of its security settings. Nor does this paragraph restrain neutral security controls directed at those functions merely because a Vyne package bundles them with printing.” That limit gives effect to the distinction the court noted at the hearing between a complete shutdown and controls directed at separate access functions. JA1606–1607, JA1626–1627. Because paragraph 8(b) cannot bear that construction as drafted, the Court should vacate it to that extent and remand for a decree tied to the conduct and injury actually found.

**B. The CFAA-based injunction against Vyne did not go far enough.**

The district court found that Vyne likely violated the CFAA because, among other things, it extracted secret administrator credentials, obtained greater access than customers could achieve, and impaired HSOne’s ability to control and secure Dentrix. JA81–86. Its injunction nevertheless focuses on write-back access only. Such a distinction between reading and writing is not supported in the CFAA.

**1. Vyne's unauthorized access violates the CFAA, both through reading and writing.**

The CFAA's prohibitions on unauthorized access reach unauthorized reading the same as writing. Section 1030(a)(5)(C), for instance, requires intentional access to a protected computer without authorization that causes damage and loss; it does not require a write operation. Section 1030(a)(2)(C) similarly reaches anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." An actor exceeds authorized access by obtaining information from an area the actor's permission does not reach. 18 U.S.C. § 1030(e)(6). *Van Buren* identifies the precise situation: obtaining information from "particular areas in the computer—such as files, folders, or ***databases***—to which their computer access does not extend." 593 U.S. at 378; see *id.* at 388–90, 396 (emphasis added).

Vyne here obtained HSOne's secret codes, used them with machine-specific information to decrypt the configuration file and obtain the administrator credential, then used that credential to enter the restricted database. JA2723–2730; JA81. Turning off writing does not stop the CFAA violation, which continues through Vyne's unauthorized read access.[37]

---

[37] *Philips Medical Systems Puerto Rico Inc. v. GIS Partners Corp.*, 203 F.Supp.3d 221, 235–37 (D.P.R. 2016), found likely excess of authorized access where hardware owners permitted computer use but lacked access to the protected service program that defendants reached by circumventing security controls.

Indeed, Roberts admitted customers can disable writing and "still just read the data." JA806. McDaniel explained that Vyne's read access depends on a prior unauthorized write registering a key and creating a local user. Decryption itself generates database records, so every read is premised on an unauthorized write that the court below found should be enjoined. JA1659–1660. Those antecedent writes are not undone by disabling business-data writes. JA81, JA912.[38]

The retained connection also has harmful operational consequences. Excessive reads exhaust available database connections and prevent legitimate transactions from completing. JA1251. [redacted] Turning off a write command does not cure those effects or restore HSOne's control of the access.

HSOne's developer API coordinates competing operations and accounts for changes to the underlying tables. Vyne's direct access bypasses those protections. JA1279–1280. The resulting interference can corrupt data. JA1213. The injunction should reach that unauthorized channel under both subsections (a)(5)(C) and (a)(2)(C), rather than stop only its write operations.

---

[38] The distinction between obtaining information and damaging a system also appears in *Phreesia, Inc. v. Certify Global, Inc.*, 2022 WL 911207, at *10 & n.6 (D. Md. Mar. 29, 2022): allegations insufficient to establish statutory damage could still state a claim under subsection (a)(2)(C) because unauthorized access obtained information.

### 2. Vyne violates another section of the CFAA, beyond the one the district court considered, which prohibits obtaining information from read-access.

HSOne pleaded § 1030(a)(2)(C), defended the claim successfully at the pleading stage, and pressed it in seeking preliminary relief. JA48–50, JA344–346, JA1685, JA1687–1688. The court resolved the motion under § 1030(a)(5)(C). JA77–86. It did not decide whether the same credential access, including access that only obtains information, independently warranted relief under subsection (a)(2)(C).

The court did, however, find response costs exceeding $5,000 within a year and irreparable loss of monitoring, control, and security. JA84–86. Those findings support enjoining the retained unauthorized access under § 1030(g).

The two statutory routes remain distinct. Subsection (a)(5)(C) addresses damage and loss from unauthorized access; subsection (a)(2)(C) addresses obtaining information through access without or exceeding authorization. HSOne therefore need not recast every unauthorized read as a damaging write (even though Vyne's read access necessarily begins with an unauthorized write-back). JA1660, JA1685, JA1687–1688.

The partial injunction against write-back only creates a situation where Vyne's retained read-access unauthorized connection undermines HSOne's efforts to secure Dentrix. As HSOne explained, it has no record of the unauthorized keys Vyne generated, the systems they were deployed on, or other workarounds Vyne left

behind. JA1660. Preserving those paths would require HSOne to discover and accommodate the details of an integration it never authorized, while ordinary security maintenance continued on a system that keeps changing. JA1660–1661. That maintenance cannot pause while the parties litigate which unapproved component depends on which setting. An order that stops specified writes does not resolve whether the retained connection perpetuates the loss of control the court found irreparable, JA86, and the separately pleaded claim supplies an additional basis for enjoining that connection. Otherwise the injunction halts one use of the elevated privilege while compelling HSOne to tolerate another. The CFAA prohibits both.

The Court should direct expanding paragraph 8(a) to prohibit Vyne's unauthorized read access, including under § 1030(a)(2)(C), and narrow or vacate paragraph 8(b) to remove protection for that access.

**3. Vyne's false characterization of a portion of its hacking software as a "printer driver" should not save it from an injunction as to the overall system.**

Vyne cannot avoid an injunction against read access by isolating its printer driver from the system that obtains access. Nix admitted that the Vyne Dental Plugin (which purportedly houses what Vyne falsely describes as the printer driver) used VyneSync technology to remove itself from Dentrix's hostile-printer table. JA944. Vyne's hacking consists of "a suite of solutions backed by services which interfere

with and cause data corruption inside of Dentrix." JA1291. [redacted] The label Vyne attaches to one component as a means of occluding its true nature does not save it from violating the law.

The court credited Vyne's false account of the printer driver. JA91 & n.13. The record belies that isolation. JA1270 (McDaniel describing "all one suite of services"). Even on the court's premise, the injunction should still prohibit the prerequisite credential extraction and direct database access its other findings condemned.

[redacted] There is, in short, no such thing as a standalone printer driver. It is simply a component of Vyne's unauthorized access system—the component that Vyne uses to obfuscate what it is really doing from its customers, from HSOne, and from the courts.

### C. The district court gave Vyne too much credit for speculative risk to its business from an injunction, which Vyne unlawfully props up through its hacks.

The same principle enjoining write access should stop Vyne's read access. As noted above, hardship attributable to ending likely unlawful conduct does not entitle Vyne to a decree preserving it. *Brightview Group*, 441 F.Supp.3d at 142; *Synopsys*, 401 F.Supp.3d at 1074–75. Yet the court hedged its injunction order such that Vyne could continue to read while it was prevented from writing. This constitutes an erroneous application of the CFAA's restriction on unauthorized access and is not a proper application of the equitable balance standard in *Winter*.

HSOne remains responsible to its customers for security and performance. The court found that Vyne's access compromised these responsibilities and deprived HSOne of control in a way money could not repair. JA82–86.

## CONCLUSION

The Court should affirm paragraph 8(a)'s existing restraints on Vyne and direct the district court to expand that injunction to prohibit Vyne's unauthorized read access as well as write-back, including under 18 U.S.C. § 1030(a)(2)(C). Paragraph 8(b) should be narrowed or vacated to remove protection for Vyne's unauthorized access.

Vyne's conduct is the sort of straightforward database hacking that *Van Buren* found squarely violates the CFAA. It is far from the close call the Ninth Circuit

reviewed in *Perplexity*. Here, Vyne performs its hack through unauthorized access to protected computers at dental offices as well as those hosted by HSOne's cloud infrastructure. It is Vyne itself that performs the hack. It does so by misappropriating HSOne's secrets, hidden in its source code, and recombining them with unique customer values to decrypt HSOne's configuration file. Vyne then uses its unauthorized access to read and write to HSOne's Dentrix database *en masse*. This violates the CFAA, DMCA, and law of trespass. It has already caused corruption of HSOne's databases, damaged HSOne's customer goodwill, and cost HSOne well in excess of $5,000, including in harm to its systems and its remediation efforts. Vyne should receive no credit for profiting from this unlawful conduct, and the public's interest in securing sensitive data merits a durable injunction against Vyne.

The Court should decline Vyne's invitation to split from the Supreme Court and every other circuit analyzing the CFAA and stop Vyne from continuing its escalating hacks.

## STATEMENT REGARDING ORAL ARGUMENT

HSOne requests oral argument. These consolidated appeals present questions about unauthorized access under the CFAA and the scope of preliminary relief governing a connected healthcare software system. Oral argument would assist the Court in examining how the statutory access boundary applies to the developed technical record and to the restraints imposed on each party.

Respectfully submitted,

Dated: November 3, 2026

*/s/ Michael Burshteyn*
Michael Burshteyn
BURSHTEYN POLIN LLP
1212 Broadway Plaza, Suite 2100
Walnut Creek, CA 94596
(925) 238-3119
mike@burshteynpolin.com

Jennifer Bartlett
GREENBERG TRAURIG, LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 665-3729
Jennifer.Bartlett@gtlaw.com

Counsel for Henry Schein One, LLC

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(B)(i) because it contains 15,255 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in Microsoft Word using a proportionally spaced, 14-point Times New Roman typeface.

Date: November 3, 2026

*/s/ Michael Burshteyn*
Michael Burshteyn
Counsel for Henry Schein One, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2026, the foregoing brief was filed with the Clerk of Court using the CM/ECF system, which sent notification of the filing to all counsel of record appearing in this matter.

Date: November 3, 2026

*/s/ Michael Burshteyn*
Michael Burshteyn
Counsel for Henry Schein One, LLC